# EXHIBIT A

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X
JOHN KOGUT,
                             : CV-06-6695
        Plaintiff,

                             : US Courthouse
    -against-                    Central Islip, NY
                             :

THE COUNTY OF NASSAU, et al,
                             : September 19.2008
        Defendants.          2:00 p.m.
--------------------------------X
JOHN RESTIVO, et al,
                             : CV-06-6720
        Plaintiffs,

                             : US Courthouse
    -against-                    Central Islip, NY
                             :

THE COUNTY OF NASSAU, et al,
                             : September 19.2008
        Defendants.          2:00 p.m.
--------------------------------X

TRANSCRIPT OF STATUS CONFERENCE
BEFORE THE HONORABLE JOANNA SEYBERT
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For Plf Kogut:              ANTHONY GRANDINETTE, ESQ.
                           114 Old Country Road
                           Mineola, New York 11501
                               and
                           PAUL CASTELEIRO, ESQ.
                           200 Washington Street, 5th Floor
                           Hoboken, New Jersey 07030

For Plf Halstead:          COCHRAN, NEUFIELD & SCHECK,LLP
                           99 Hudson Street, 8th Floor
                           New York, New York 10013
                           BY:  BARRY SCHECK, ESQ.
                                 DEBI CORNWALL, ESQ.
                                 ANNA HOFFMANN, ESQ.

2

```
 1   For Defendants:         LIORA M. BEN-SOREK, ESQ.
                             Deputy Bureau Chief
 2                           Office of the Nassau County Attorney
                             One West Street
 3                           Mineola, New York 11501
                                   and
 4                           ESTHER D. MILLER, ESQ.

 5

 6

 7   Official Court Reporter:    Ellen S. Combs, CSR
                                 100 Federal Plaza - Suite 1180
 8                               Central Islip, New York 11722
                                 (631) 712-6107
 9

10

11             Proceedings recorded by mechanical stenography
                    Transcript produced by Computer
12

13

14                  *              *              *

15        (The following took place at 2:11 p.m.)

16        THE CLERK:  For status conference, Kogut vs

17   Nassau County, and Restivo vs Nassau County.

18        Your appearances, please?

19        MR. GRANDINETTE:  Good morning, Judge.

20   Anthony Grandinette for Mr. Kogut.

21        MR. CASTELEIRO:  Paul Casteleiro for John Kogut.

22        MR. SCHECK:  Barry Scheck on behalf of John

23   Restivo and Dennis Halstead.

24        MS. CORNWALL:  Debi Cornwall on behalf of John

25   Restivo and Dennis Halstead.
```

3

1          MS. HOFFMANN:  Anna Hoffmann on behalf of

2     Restivo and Halstead.

3          THE COURT:  And for defendants?

4          MS. MILLER:  Esther Miller for the Nassau County

5     defendants.

6          MS. BEN-SOREK:  Liora Ben-Sorek also for the

7     Nassau County defendants.

8          THE COURT:  I have had an opportunity to review

9     the decision and the transcript that resulted in a hearing

10    before Judge Wall on August 15, 2008.  And frankly, I was

11    rather surprised that this motion proceeded in the fashion

12    that it did.

13          First of all, parts of the motion seeking to

14    appeal Judge Wall's ruling did not even include a

15    transcript of the underlying proceeding.  In any event, I

16    noticed that one was not ordered.  And we were able to get

17    that particular transcript earlier this afternoon.

18          Additionally, it appeared that everything had

19    been agreed to primarily with regard to what I think is

20    the central issue here.  And that is the deposition of

21    retired Detective Joseph Volpe.

22          It appears that certainly defendant Volpe's

23    health is somewhat precarious.  There was discussion

24    between the parties as to various arrangements that could

25    be entered into to expedite the deposition, to streamline

4

1    it, and also to conclude it in a fashion that would not

2    further endanger or jeopardize Mr. Volpe's health.

3         I also note that the condition of Mr. Volpe,

4    while it is apparent that he does have some cardiac

5    condition and is on oxygen -- we have a letter from a

6    doctor, but there is no particular specifics.  For

7    example; whether or not the oxygen feed is continuous;

8    whether or not equipment could be brought in for

9    videotaping of the deposition.

10        And after having what appears to be an

11   agreement, I was rather surprised that the County then

12   moved to appeal Judge Wall's order.  And once again, it

13   seems to be that it might be a delay on the part of the

14   defendants.  It is 15 months that the County waited,

15   essentially, to turn over discovery.  That is

16   unacceptable.  This case arises out of events in 1985.

17        I'll hear any additional arguments.  But I think

18   when one submits papers to the Court citing a 50 year old

19   case on discovery, and not backing it up with anything

20   more substantial, speaks volumes as to the bona fides of

21   this motion.

22        So, let me ask the simple question:  Has

23   anything else occurred since this notice of appeal was

24   served?  Has there been any further discussion, or any

25   attempt to resolve these issues?

5

1          MS. MILLER:  No, your Honor.

2          THE COURT:  Unfortunately the motion really

3     discloses that type of reasoning, if you will.  There is

4     really nothing that would cause this Court to set aside,

5     at this point, Judge Wall's rulings.  Because you don't

6     present anything new.  You don't give any other

7     indication.  And Judge Wall seems to be more than

8     reasonable.  This is not going to be a de novo review,

9     where we start all over again.

10          So, anything else that the defendants would like

11     to add?

12          MS. BEN-SOREK:  Your Honor, we would just like

13     to address with regard to the 12th hour --

14          THE COURT:  Ms. Ben-Sorek, let me get this

15     straight.  Because you did appear at this proceeding

16     before Judge Wall.  And a reading of this transcript --

17     have you read the transcript?

18          CASTELEIRO:  I have not read the transcript,

19     your Honor.

20          THE COURT:  Well that is unfortunate.  Because

21     when you come to court and certain agreements and

22     representations are made and not objected to at that time,

23     it certainly seems that everyone is on the same page.

24          You needed to go on vacation for three weeks.

25     And representations were made that you would be available

6

1  for a deposition upon your return.  There was no

2  indication that there was going to be a motion to vacate

3  Judge Wall's order.  There was no indication that you were

4  moving for dismissal.

5           I mean this is not the way one engages in

6  meaningful discovery.  And there has been no attempt,

7  since you decided to file this notice of appeal, to engage

8  in some compromise here.  And that is very unfortunate.

9           But are you now saying that you have no further

10  argument with regard to the deposition of Detective Volpe,

11  other than the time frame?

12           MS. BEN-SOREK:  Your Honor, I do believe -- I

13  will order a transcript -- and I do believe from my

14  recollection objecting and taking exception to Judge

15  Wall's ruling.

16           THE COURT:  This is the deposition.

17           "The Court:  Okay, what's the story with

18  Mr. Volpe?  It's Detective Volpe or --

19           "Ms. Ben-Sorek:  Yes.  He he's retired,

20  Detective Volpe.  I don't know how long he has been

21  retired.

22           "The Court:  I saw his doctor's letter.  I mean

23  I see what is going on."

24           And then you go on to talk about his condition.

25  And you have indicated that you requested and tried

1  speaking with Ms. Cornwall.

2        "And obviously her response is similar to that

3  which she said in her letter.  It is very different having

4  a person responding in writing to actually have the

5  opportunity to see them and know that from prior

6  discussions with plaintiffs' counsel."

7        And then you go on to say:  "I understand that

8  he is not able to to be in one place for more than 20

9  minutes to a half hour."

10        And then the Court goes on to offer various

11  alternatives.  And it does not appear that you make any

12  particular objection.  It's just as to the length of the

13  deposition.  There is nothing to indicate that you were

14  not going to depose him under any circumstances.  And you

15  seem to acquiesce, Ms. Ben-Sorek.

16        And certainly, this is, at this proceeding you

17  didn't indicate until the filing of the motion, that you

18  weren't going to go forward with it.

19        And at the very end:  "But we do note our

20  objection to your Honor's ruling on the record regarding

21  Mr. Volpe."

22        But that seems to refer to a comment that you

23  made, which is really, I thought, taken out of context.

24        "Judge, I just want to clarify.  When I said I

25  agree, just a few moments ago, I was agreeing to a night

8

1  Daytona Beach-type situation.

2      MS. BEN-SOREK:  There was colloquy, your Honor.

3      THE COURT:  No.  I read about Daytona Beach, and

4  Judge Wall was able to do at Daytona Beach while the

5  deposition was done for an expert witness.

6      MS. BEN-SOREK:  We believe that we had made an

7  objection on the record to the deposition of Mr. Volpe.

8  It wasn't with regard to the length of time as to

9  Detective Volpe.  We believe that the sua sponte decision

10  to extend it almost 60 percent longer, without a showing

11  or finding that, an actual finding that it is not a

12  sufficient time within the statutory 7 hours, is

13  premature.

14      THE COURT:  But each of the plaintiffs has the

15  right to take a separate deposition, if they choose to do

16  so.  So we're talking about a minimum of 14 hours.

17      MS. BEN-SOREK:  Except, your Honor, in other

18  cases it is -- I don't know if it was your Honor or

19  another Judge within the Eastern District, ruled to the

20  contrary -- and the cases are joined for discovery, and

21  essentially have the same issues and allegations.

22      THE COURT:  And what is a reasonable time as far

23  as you're concerned, since this is a document case, and

24  there are finally, the documents have been produced.  It

25  took about a little over a year to get that together.  And

9

1    now that the documents are produced, and you're

2    maintaining that Detective Volpe is in extremis, and

3    you're very concerned about his health -- what do you

4    think a reasonable time would be if you had a videotaped

5    deposition with an hour or less a day?

6         MS. BEN-SOREK:  Well, the point is that

7    statutorily there are 7 hours, unless there is a showing

8    that it is insufficient.  And we don't know how much the

9    plaintiffs who acknowledged on that transcript, say they

10   don't intend to keep this man longer than necessary,

11   knowing that that is -- assures that they will be

12   cognizant of his condition.  We don't mow how long the

13   deposition will last, except that unless there is a

14   showing that it can be done in the 7 hours, then it should

15   not be extended.

16        THE COURT:  Mr. Grandinette?

17        MR. GRANDINETTE:  Judge, very briefly.  I would

18   like to just point out to your Honor that given Magistrate

19   Wall's familiarity with this case, and other cases like

20   this stemming from the Nassau County Homicide Bureau,

21   including the trial of John Lee case, that was referred to

22   you by him for trial -- he is fully aware of the fact that

23   we're talking about a deposition covering four homicides

24   at a minimum with Detective Volpe being the key witness.

25        He recognized that Detective Volpe is the key

10

1   witness predicated upon his two day interrogation of John

2   Kogut, which is the crux of both parties' claims.  He

3   recognized that at a minimum we would need approximately

4   an extension of the 7 hour time limit.

5        I think that that is based upon years of

6   experience and common sense, and $35,000 and four murder

7   trials.  It is logical that it is a waste of everybody's

8   time to come back.

9        We expressed our concern for Detective Volpe's

10  health.  We offered, at the time of the conference, that

11  we would go step by step, an hour a day or less, if

12  necessary.  And paramount to our concern would be this

13  man's health and well-being.

14       But I think Magistrate Wall expressed it best,

15  Judge, when he said:  I would imagine that the County

16  having your lead and key witness in your defense, would

17  want a preservation deposition taken at this time.  And we

18  were all in accord with it..  I think it was --

19       THE COURT:  Mr. Grandinette, it is obvious they

20  don't want a preservation deposition.

21       Is that accurate, Ms. Ben-Sorek?

22       MS. BEN-SOREK:  No, your Honor.  It is obvious

23  that we want to protect and preserve the man's health.

24       THE COURT:  All right.  So, Mr. Grandinette can

25  you get everything done in 7 hours at this point in time.

1    And if you can't, make application to Judge Wall.  And the

2    application will be made on the phone.  And you can do it

3    that way.

4            MR. GRANDINETTE:  Judge, absolutely.  I'll

5    follow your direction.

6            THE COURT:  Now in terms of a formal ruling.

7    Let me go through the various motions that have been made,

8    unless there are any additional argument that was not

9    included in these papers.

10           With respect to the defendant's appeal of

11   Magistrate Judge Wall's August 15th order denying

12   defendants's motion for a protective order for Mr. Volpe's

13   oral deposition, and extending the 7 hour time limit for

14   Volpe's and Dempsey's deposition to 12 hours to be spread

15   out; I deny that portion of the motion that extends the 7

16   hour time limit, but include in there a provision for an

17   expedited finding by Judge Wall for him to review any

18   additional requests by phone, should it be necessary to go

19   beyond the 7 hours.  And I frankly think it will be.

20   However, hopefully that particular aspect will be

21   resolved.

22           Additionally, I'm denying the motion for a stay

23   of discovery with respect to Detective Volpe's deposition.

24           And, as far as the 12(c) motion and briefing

25   schedule, I don't have any documents that were included

1  there, or referenced, or made part of the material, part

2  of the complaint.  So I'm not going to consider the 12(c)T

3  motion until you get the right paperwork in on that.

4        MS. MILLER:  Your Honor, everything has been

5  filed in that.

6        THE COURT:  Everything has been filed.  But in

7  terms of briefs, what date do you need to give your

8  response?

9        MR. GRANDINETTE:  Judge, would you entertain any

10  additional argument with respect to reconsidering the

11  12(c) motion?  We truly feel with respect to at least the

12  plaintiff John Kogut, that it really is a summary judgment

13  motion guised (sic) as a 12(c) motion.  This might have

14  been appropriate at the  conclusion of the discovery.

15        And Judge, I would ask for the opportunity for

16  you to consider that argument, that you preclude the 12(c)

17  motion.  We believe it too, like the appeal of Magistrate

18  Wall's order, is brought for the purpose of delaying the

19  proceedings.

20        We feel strongly that the arguments lack merit.

21  And that if they are to be considered, they are arguments

22  outside the four corners of the pleadings which were filed

23  18 months after the issues joined.  And for those various

24  reasons, we think that this Court should either; A,

25  convert it to a Rule 56 motion, which is within your sound

13

1  discretion to do.  Which would require a conference and a

2  discussion of the merits of those papers.

3           One example, Judge -- I would just point out to

4  you -- is that in essence, the defense claims that the

5  plaintiffs failed to stay a course of action for our

6  malicious prosecution claims.  The thrust of our argument

7  being, that there was a false confession taken by Volpe,

8  and then utilized for the prosecution of all three men,

9  who were later exonerated, clearly by the findings of the

10 DNA evidence.

11          After the retrial of Mr. Kogut in 2005, Judge

12 Ort concluded as part of his findings, that the factual

13 content of the confession was inaccurate and false.  The

14 thrust of our claim is contained in our pleadings.

15          Taking the plaintiffs' pleadings as true, the

16 Court would not dismiss that claim as a matter of law.

17 There is also other arguments, Judge, such as; that the

18 malicious prosecution falls outside the guidelines of the

19 Statute of Limitations.

20          THE COURT:  No, I have reviewed the cases on the

21 Statute of Limitations.

22          MR. GRANDINETTE:  And Judge, what I would

23 suggest to you genuinely -- I would not make this

24 application to you lightly, if I thought that there was

25 merit.  I think this is clearly a summary judgment motion.

14

1    There is qualified immunity arguments raised.  Qualified

2    immunity is so factually intense.  We're talking about a

3    case involving 35,000 documents, and three or four trials,

4    appeals, writs -- that it is inappropriate venue for a

5    12(c) motion.  Period.

6              And I believe that it is improper.  It's

7    untimely.  And for those reasons it should be denied.

8              That being said, of course, if your Honor would

9    like us to submit a brief, we would be more than happy to

10   do so.  I would ask, based upon our current trial

11   schedules, that perhaps four weeks.  And I would then,

12   Judge, grant -- and I say that for the following reason:

13   I don't want you to think I'm crazy.  But I asked to come

14   in here and have this conference.  As long as you deny the

15   stay of discovery, then the briefing schedule is not as

16   significant.

17             If you had granted the stay, well then of course

18   I would rush to get the papers in.  It is just that

19   Mr. Casteleiro and I now have adjusted our schedules,

20   because we do not perceive that Mr. Volpe's deposition

21   would be taking place on September 24th and 25th, as

22   previously discussed.  And we both have pending matters

23   coming up for trial.

24             So, my first request is; A, I would ask you to

25   deny their 12(c) application in its entirety, or at least

1  discuss it further with a Rule 56 motion, which would be

2  appropriately brought in conclusion of the discovery.  And

3  alternatively, since the discovery stated, at least with

4  respect to Volpe -- I think it should be left, Judge, with

5  respect to all of the issues moving forward with the

6  depositions, quite frankly.

7          The basis that they seek the stay, Judge, is

8  they say that it is of monetary concern, grave monetary

9  concern that we may be wasting the public's finances if we

10 go forward with this extensive discovery.

11         All we're trying to do is do some depositions.

12 It is not going to be all that expensive.  And it is not

13 going to be all that time-consuming.  And it is certainly

14 not necessary.  This is not a situation where the county

15 and the public is going to spend $100,000 for discovery to

16 move forward in this case.  It is silly.

17         And that is, and I quote:  The basis is -- in

18 public monies to go forward with extensive discovery.

19         And I think that you understand that the reason

20 that they want the stay is, they don't want the deposition

21 of Volpe and the other named defendants, which should be

22 unacceptable.

23         THE COURT:  I am not making that conclusion at

24 this point.  However, if you have something you want to

25 say with the 12(c) motion, I haven't ruled on that.

16

1        Yes?

2        MS. MILLER:  Well, I just wanted to respond to

3  what Mr. Grandinetti said.

4        I believe that we already had a briefing

5  schedule.  That in the Restive/Halstead case, they have

6  already responded to our motion.  And Mr. Grandinette has

7  already requested two weeks for his response, which is

8  this on Friday, the 26th.  And our reply then to both

9  motions on October 6th.  I thought that was already a

10  briefing schedule.

11        As far as our motion --

12        THE COURT:  Yes.  There is a briefing schedule.

13  You're correct.

14        MS. MILLER:  And as far as our motion, we are

15  not --  we did not file this motion as a delaying tactic.

16  We absolutely believe that our motion is meritorious.

17  That it is within the four corners of the complaint.

18        THE COURT:  If you think it is in the four

19  corners of the complaint, even though there has been

20  reference to materials outside the four corners of the

21  complaint --

22        MS. MILLER:  The records, the materials outside

23  are referred to, consist of the complaint.  There are

24  Court decisions and orders which the Court may take

25  judicial notice of in a 12(c) motion.  So we do not

17

1  believe that our motion should be one for summary

2  judgment.

3           THE COURT:  But it took you 19 months to get it

4  together.

5           MS. MILLER:  Well actually, what happened was,

6  it was a very complicated case.  Like you said, 35,000

7  documents that we were just were able get together only a

8  few months ago.  It is not a motion that we took lightly.

9           We had to -- we're not the district attorney.

10  Both district attorneys who prosecuted the cases back in

11  1985 and in 2003 no longer work for the District

12  Attorney's Office.  It was just not an easy case to get a

13  handle on.

14           And we were not about to file a 12(c) motion

15  prematurely, and one that we did not really thoroughly

16  feel had merit.  That was the reason it took so long.  Not

17  for delay, your Honor.  Honestly.

18           And as far as Volpe; we tried to suggest

19  questions.  We are truly concerned with his health.  Your

20  Honor wants us to schedule a deposition for him, we will

21  do so.  We will interview him.  We will prepare him.  And

22  we'll do the best we can, given the state of his health.

23           THE COURT:  And when will you schedule the

24  deposition?

25           MS. MILLER:  We will have to notify him and find

18

1   out what his availability is. And we'll do it as soon as

2   we can, hopefully within the next couple of weeks. Right

3   now --

4           THE COURT: Let me ask you some basic questions.

5           Is he currently on Long Island?

6           MS. MILLER: He is somewhere in New York State.

7   We don't know where. We have not been able to speak with

8   him. We have been speaking, doing all of these

9   arrangements through the police legal bureau. We have

10  actually, have not had direct contact with him.

11          MR. GRANDINETTE: Judge, if I may interject?

12          Detective Volpe, I have known for years. He

13  lives in Massapequa. And he is still around there.

14          MS. MILLER: Well, I didn't know that. That is

15  fine.

16          MR. GRANDINETTE: And Judge, and may I just --

17  I'm sorry, Judge, if I may just briefly respond? I think

18  this is significant to the understanding.

19          The 12(c) application is unique, in that it

20  states as a matter of law -- the plaintiff does not, as a

21  matter of law, the plaintiff does not stay the cause of

22  action. So the discussion of the factual discovery that

23  was necessary to review, is really not appropriate here.

24          The reality is that these are published

25  decisions of a murder trial, an affirmation, and then a

19

1   joint stipulation to vacate the conviction and a retrial.

2   That was known by all.

3        It is also known by all that there was, without

4   question, a dismissal of Mr. Kogut's criminal conviction

5   on the merits, which would entitle him to bring a claim

6   for malicious prosecution.

7        None of us are here for the first time on the

8   first malicious prosecution case.  So when the defense

9   suggests to you that they needed all this time to review

10  all this documentation, and track down Fred Klein or Bob

11  Biancavilla, who is working for Major Offense down in

12  Riverhead, and you can reach him in two minutes by

13  telephone -- I have to suggest that it is a little bit

14  unnerving to the plaintiffs, who wish to move forward to

15  protect their clients' rights.  Especially when we're

16  talking about defendants who are deceased in the caption,

17  as we sit here today.

18       And we have Detective Volpe who, you know,

19  according to the plaintiffs, he is ill.  We need to start

20  moving forward with depositions -- that we are in this

21  position because it took them 18 months to get us the

22  paperwork.

23       Now we're in this position because they are

24  filing objections based upon his health.  And now we're

25  going to be further prejudiced because they didn't look at

20

1    the arguments on the merits under 12(c) 18 months ago.

2              They don't need to look at any of these factual

3    arguments.  Those factual arguments are relevant to the

4    qualified immunity discussions in their summary judgment

5    applications at the conclusion of this case.  And you know

6    that.

7              But a lot of these arguments, I'm sure they have

8    been made, and completely lack any merit.  And I point out

9    the most obvious to you.

10             To argue that John Kogut is precluded from

11   bringing a 1983 malicious prosecution claim on a Statute

12   of Limitations, your Honor, is outrageous, in light of the

13   fact that the statute hasn't run yet.  He can file the

14   claim on December 16th this year.  It hasn't run yet.

15             And we have to brief that argument, and be

16   delayed in moving forward in these depositions.  And if

17   something should happen to these defendants, not only will

18   John Kogut, John Restivo and their families be prejudiced,

19   but all Monell claims, which is so significant -- because

20   as your Honor knows, you have dealt with them at least on

21   five or six false arrest cases.  You have dealt in this.

22   You know Robert Moore, Volpe was involved in, which he has

23   been before this Court.

24             Shanard Lee, which your Honor was assigned to,

25   has been before this Court.  And the list goes on, Judge.

21

1    There are five or six defendants who -- with identical

2    scenarios.  And I believe this case too significant to go

3    through the same routines of the dilatory behavior and

4    stuff that we have seen in those cases, and now in this

5    case.

6              So I would implore you to seriously consider our

7    argument.  It is not that we don't want to respond to the

8    motion.

9              THE COURT:  Well then I think you should respond

10   to it in writing.  You have a briefing schedule.  Why

11   don't you get it in even sooner.

12             MR. GRANDINETTE:  Well, Judge, unfortunately, I

13   would ask that we have a little time based upon these

14   trials.  And we'll submit it as long as these guys gave us

15   the stuff.

16             THE COURT:  I'm not staying discovery.  You can

17   go forward on the deposition of Detective Volpe.  I want

18   that ready to go forward within two weeks.  I'm not giving

19   you any more extensions on that.

20             MR. GRANDINETTE:  Judge, could I just have an

21   extra week?

22             THE COURT:  Any other depositions.  Let's get a

23   schedule right now on those before you leave the building.

24             MR. GRANDINETTE:  Judge, could I just have one

25   other week, please?  I think my motion is due next Friday,

22

1   the following week.

2           THE COURT:  You got such a clear case,

3   Mr. Grandinette.  I wouldn't think you would need more

4   than a couple of paragraphs to respond.

5           MR. GRANDINETTE:  I have a crystal clear case.

6   But I have -- our calendars are full next week.  As a

7   courtesy, Judge, I would appreciate it.

8           THE COURT:  Two weeks?

9           MR. GRANDINETTE:  Thank you, Judge.

10          THE COURT:  And now I have to get another

11  request for an extension?

12          MS. CORNWALL:  No.  I just have two minor

13  matters.  And they are -- to -- that distinguish our case

14  from that of Mr. Kogut.

15          We have already filed our response to the 12(c)

16  motion.  We join in Mr. Grandinette's comments about the

17  lack of any basis for these motions, and the lack of any

18  basis for a stay.

19          The difference is that is -- first of all, there

20  were not extraneous materials attached to the Restivo and

21  Halstead motion.  We're ready for the Court to make a

22  decision on the 12(c), as soon as a reply is filed.

23          We have questions, but it may be more in the

24  nature of a housekeeping matter.  There was a reference

25  earlier by Ms. Miller about not wanting to have filed the

1   motion prematurely.  Well a Rule 12(c) motion for judgment

2   on the pleadings requires that the pleadings be closed.

3         We realize after filing our response, that

4   Exhibit B to the Restivo 12(c) motion, which purports to

5   be an answer to the complaint, has in fact never been

6   filed with the Court.  So there is no concern to our

7   amended complaint on record, based on my review of the

8   docket.  It seems as though it would be appropriate to

9   actually have filed as an answer, rather than as an

10  exhibit to make the motion prepared.

11        THE COURT:  Do you have any indication when you

12  had filed it?

13        MS. BEN-SOREK:  I don't know when it was filed,

14  your Honor.  But I just, before I came to court this

15  afternoon --

16        THE COURT:  We can check it.  It is deemed

17  filed.

18        MS. MILLER:  Your Honor, just a question,

19  clarifying something.  Mr. Grandinette's papers are due

20  then October 4th, instead of September 26th?  Is that what

21  you said?

22        THE COURT:  Yes.

23        MS. MILLER:  And then our papers would be due

24  then the week after that?

25        THE COURT:  Yes, for your reply.

24

1        MS. MILLER:  A week after it is due?

2        THE COURT:  Yes.  Actually it is the 3rd, it is

3   not the 4th.

4        MS. MILLER:  You're correct, the 4th is a

5   Saturday.  I stand corrected.  Thank you.

6        THE COURT:  All right, any other questions?

7        MR. GRANDINETTE:  Only the scheduling of the

8   additional discovery.

9        THE COURT:  How many depositions are you seeking

10  after Detective Volpe?

11        Do you want to do them in between, perhaps you

12  can get folks in if you're only going to be doing an hour

13  or so with Detective Volpe, you could get the others in

14  between and move it along.

15        MR. GRANDINETTE:  Great.  I'm sure we can work

16  that out.

17        THE COURT:  Are you sure?  Is everyone in

18  agreement?  I'm not going to get an application a couple

19  of weeks later?

20        MS. MILLER:  I'm sure, your Honor, we can work

21  it out.

22        THE COURT:  And I'm sure that Judge Wall will

23  continue to work with you on any of these issues.

24        MS. MILLER:  Because in addition to the Volpe

25  deposition, I believe Ms. Ben-Sorek had indicated dates in

25

1    October and November to Ms. Cornwall when she was talking

2    to her.  So I'm sure we can get a deposition schedule set

3    up.

4              THE COURT:  Just one second.

5              (There was a pause in the proceedings.)

6              THE COURT:  In terms of your response,

7    Mr. Grandinette; you do have to specifically refer to

8    which documents you believe -- and there have been

9    documents included in the plaintiffs 12(c) motion -- which

10   documents you believe have not been referenced or made a

11   material part of the complaint.  And therefore, would

12   require the Court to take judicial notice of that issue,

13   and not consider those specific documents in deciding the

14   motion.

15             So the burden is on you to identify.  All right?

16             MR. GRANDINETTE:  Got you.

17             THE COURT:  All right.

18             (The proceedings were concluded at 2:46 p.m.)

19

20

21

22

23

24

25