# EXHIBIT A

COCHRAN NEUFELD & SCHECK, LLP
99 Hudson Street
New York, New York 10013

Tel: 212-965-9081
Fax: 212-965-9084

Peter J. Neufeld
Barry C. Scheck
Nick J. Brustin
Debi Cornwall

Jennifer E. Laurin
Monica R. Shah
Anna Benvenutti Hoffmann

Johnnie L. Cochran, Jr.
(1937-2005)

March 28, 2008

**VIA ECF & First-Class Mail**
The Honorable William D. Wall
United States District Court
Long Island Courthouse
100 Federal Plaza
Central Islip, NY 11722-4438

**Re: Restivo et al. v. Nassau County et al., 06 Civ. 6720 (JS)(WDW)**

Dear Judge Wall,

On behalf of the Restivo and Halstead plaintiffs, I submit this letter-motion to compel production of certain grand jury transcripts, which I personally reviewed and identified for copying from the Nassau County DA's file in December of last year, but which have yet to be produced.

## I. Background

On May 7, 2007, almost a year ago, plaintiffs served their first set of document requests upon the County. The requests included a specific demand for any and all documents in the DA's file related to the Fusco rape and murder investigation. Despite our repeated inquiries, by the December 7, 2007 status conference, the County had failed to disclose or assert any privileges for any documents in the DA file.[1] The Court ordered that the file be produced by the next status conference on February 15, 2008, but granted the County's request to have plaintiffs' counsel review and copy the relevant portions of the file at the County's office.

In mid-December, I and counsel for Mr. Kogut, Anthony Grandinette, went to the County

[1] Indeed, at that point—over six months after plaintiffs served our requests—the County had not even disclosed the police homicide file. Since then, plaintiffs have received what the County represents is the complete homicide file although the County has yet to respond to a number of other concerns we raised about that production.

Attorney's office to inspect and copy documents from the DA's file.[2] We repeatedly asked and were repeatedly assured by both Ms. Ben-Sorek and her paralegal that all privileged documents had been removed from the 33 boxes provided for our review. We designated for copying all documents in DA's file that were responsive to our requests, specifically including all grand jury transcripts.

After reviewing the copies when they arrived almost two months later, I informed Ms. Ben-Sorek that the County failed to produce, among other things, the complete set of grand jury transcripts, and that any claim of privilege had been waived. (*See* Ex. A, Shah 3/21/08 Letter.) When reached this morning, Ms. Ben-Sorek reported that the County would produce many of the missing documents and portions of the grand jury transcripts by April 4, 2008, but also stated that the remaining grand jury transcripts would not be produced based on state law privilege grounds. (*See* Ex. B, Shah 3/28/08 Letter.) As a result we are compelled to file this letter motion.

## II. Argument

### A. The County Has Waived Any Claim of Privilege for the Grand Jury Transcripts

The County belatedly claims privilege pursuant to N.Y. CPL § 190.25 as to over 400 pages of grand jury testimony counsel specifically requested. Yet any such claim was waived, since the County disclosed the complete DA's file to use and affirmatively represented that we could inspect all 33 boxes because none of those materials – including the grand jury transcripts – was privileged. *See U.S. v. Rigas*, 281 F. Supp.2d 733, 737 (S.D.N.Y. 2003) ("As a general rule, the voluntary production of a privileged document waives any claim of privilege with respect to that document."). Disclosure should now be compelled.[3]

### B. Federal Law Trumps State-Law Confidentiality Rules in this § 1983 Action

Even if the County's belated claim were sufficient to invoke a state-law privilege, "it should be emphasized that New York State law does not govern discoverability and confidentiality in federal civil rights actions." *Cruz v. Kennedy*, No. 97 Civ. 4001(KMW), 1997 WL 839483, at *1 (S.D.N.Y. Dec. 19, 1997). State privileges may never be permitted to "frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983." *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988). Thus, local courts recognize that "although New York preserves the secrecy of

[2] Although an assistant joined us to copy the documents on-site, Ms. Ben-Sorek informed us we could not use the County's copier or use an outside service, so we relied on the County to copy every document we identified.

[3] Even if the County's repeated assurances to us that none of those 33 boxes contained privileged materials could be deemed inadvertent, its carelessness in protecting the privilege waived it. *See, e.g., Lambert v. Chase Manhattan Bank*, No. 93 Civ. 5298, 1996 WL 944011, at *5-6 (S.D.N.Y. Dec. 19, 1996) (finding waiver where attorney placed privileged materials in a separate unmarked envelope and instructed paralegal not to disclose materials, yet documents nonetheless were produced); *Liz Claiborne v. Mademoiselle Knitware, Inc.*, No. 96 Civ. 2064 (RWS), 1996 WL 668862, at *4-6 (S.D.N.Y. Nov. 19, 1996) (finding waiver where attorney failed to thoroughly review investigator's notes before producing them).

its grand jury by statute, that statute does not control in [federal] action[s]." *See Scheiner v. Wallace*, No. 93 Civ. 0062 (RWS), 1995 WL 753931, at *4 (S.D.N.Y. Dec. 19, 1995). While federal courts at times defer to state courts on this issue because "supervisory courts may be best positioned to evaluate the need for secrecy, courts where related civil cases are pending and in which grand jury testimony is sought to be discovered are 'armed with . . . special knowledge of the status of the civil actions.'" *Id.* at * 5 (quoting *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 232 (1979)). As the grand jury convened 23 years ago, this Court is much better situated than the state court to evaluate plaintiffs' need for these materials against any continued need for secrecy. And the Court has the authority to compel production since the transcripts are in the County's possession. *Cf. Cruz*, 1997 WL 839483, at *2 & n.2 (holding federal court had power to enforce subpoena to district attorney for grand jury transcripts).

**C. Even If Privilege Applied, Plaintiffs' Need Outweighs the Minimal Need for Secrecy**

A party seeking disclosure of grand jury material in federal court must show a particularized need. *See Douglas Oil*, 441 U.S. at 222–23; *see also Palmer v. Estate of Stuart*, No. 02 Civ.4076 LTS GWG, 2004 WL 2429806, at *3 (S.D.N.Y. Nov. 1, 2004) (applying same test to request for state grand jury materials); *Scheiner*, 1995 WL 753931 at *5-10 (same). Thus, we "must show that 'the material they seek is needed to avoid a possible injustice ..., that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed.'" *Palmer*, 2004 WL 2429806, at *3 (citation omitted).

The Amended Complaint alleges that County officers violated plaintiffs' constitutional rights to due process and to be free from malicious prosecution by coercing witnesses into giving false inculpatory statements, and that the County is liable for its indifference to this pattern of misconduct. Grand jury transcripts of witnesses who did not testify at trial are critical to proving these claims for at least three reasons: First, the testimony at issue is precisely what led the grand jury to indict, and therefore is critical proof regarding the existence of probable cause, an element of our malicious prosecution claim. Second, the transcripts are likely to expose evidence of promises, inducements, threats and other pressure by County defendants against witnesses. For example, when I reviewed these transcripts at the County Attorney's Office I saw that at least one grand jury witness, Kenneth Cockeral, was charged with perjury after he claimed under oath that he had given false inculpatory statements against Mr. Restivo only after hours of coercive interrogation by County detectives; those charges were dropped only after he recanted.[4] Given this evidence of police coercion, we have a good-faith basis to believe that other transcripts will reveal additional evidence supporting our claims; indeed, these witnesses may not have been called at trial precisely because they recanted or exposed coercive police tactics during their grand jury testimony. Third, these transcripts are impeachment material for depositions and trial. The Supreme Court has noted that "the typical showing of particularized need arises when a litigant seeks to use 'the grand jury transcript at the trial to impeach a witness, to refresh his recollection, to test his credibility and the like.' Such use is necessary to avoid misleading the trier of fact." *Douglas Oil*, 441 U.S. at 222 n.12 (quoting *U.S.*

[4] Plaintiffs have some of that transcript but not the critical portions reflecting the perjury charges.

*v. Procter & Gamble Co.*, 356 U.S. 677, 683 (1958)). If the County Attorney has these materials available to prepare to examine these witnesses,[5] plaintiffs have a right to them as well.

Finally, this request is narrowly tailored: plaintiffs only seek the transcripts of witnesses who did not testify at trial and which are not already in plaintiffs' possession. Thus, plaintiffs only request the transcripts of V. Halstead, L. Diguiseppe, C. Lampasona, G. Cole, D. Cockeral, K. Cockeral, P. Lampasona, D. Skellington, M. Corbett, L. Miller, S. Schneider, and D. Schneider. The County has articulated no compelling need for continued secrecy in its log, and cannot do so given that the grand jury met more than two decades ago, that plaintiffs have been conclusively exonerated of the crime, and there is no evidence of any active or ongoing investigation of the murder. For the foregoing reasons, plaintiffs respectfully request an order compelling production of these grand jury transcripts or, in the alternative, that the Court review them *in camera*.

Sincerely,

Monica R. Shah

cc: Liora Ben-Sorek
Paul Casteleiro
Anthony Grandinetti

---

[5] Notably, the state grand jury statute the County invokes should have barred the DA's Office from transferring them to the County Attorney's Office in the first place.

# EXHIBIT A

COCHRAN NEUFELD & SCHECK, LLP
99 Hudson Street
New York, New York 10013

Tel: 212-965-9081
Fax: 212-965-9084

Peter J. Neufeld
Barry C. Scheck
Nick J. Brustin
Debi Cornwall

Jennifer E. Laurin
Monica R. Shah
Anna Benvenutti Hoffmann

Johnnie L. Cochran, Jr.
(1937-2005)

March 21, 2008

**By Electronic Mail and US Mail**

Ms. Liora Ben-Sorek
Deputy County Attorney
Nassau County Attorney's Office
One West St.
Mineola, NY 11501-4820

**Re: Restivo and Halstead, et al. v. Nassau County, et al. No. CV-06-6720 (JS)(WDW)**

Dear Ms. Ben-Sorek:

As per our phone conversation yesterday, I write to follow up about the numerous non-privileged documents from the District Attorney's file that we identified for copying but have not received.

As you recall, pursuant to your request and the Court's order of December 7th, 2008, Mr. Grandinette and I came to your office on December 17th and again on December 20th to review and copy the approximately thirty-three boxes of non-privileged documents comprising the District Attorney's file in connection with the Fusco rape and murder investigation. Prior to reviewing the documents, I specifically asked you whether privileged documents, including attorney work product, had been removed from the boxes of materials. In response to my inquiry, you confirmed that all privileged materials had been set aside and explained that a privilege log of those materials would be provided to us with the copies of the documents we identified for copying. During my inspection of the documents, I repeatedly asked your paralegal Rosalie, who was monitoring the review process, whether all the documents in those

thirty-three boxes were non-privileged, and she repeatedly confirmed that they were. As a result of these assurances, Mr. Grandinette and I designated for copying any and all documents in the thirty-three boxes that were relevant and responsive to our discovery requests. I maintained a detailed list of all the documents we designated for copying and catalogued them by marking each box with a letter designation (from "Defs A" to "Defs FF"), as the boxes were not marked in any logical or coherent way.

We were told that your office would promptly Bates-stamp and copy the documents and then send them to us on a rolling basis beginning on December 20th. However, despite repeated inquiries, we did not receive any documents from the District Attorney's file until January 31, 2008—six weeks after completing our inspection and setting aside the documents for copying. On January 31st, we received one small box and one larger box of documents, and the following day we received another larger box of documents. On February 15th, over two months after the review process, we received what you represented as the last box of documents we had designated for copying. In addition, you also provided us with a privilege log, which, based on my understanding, should have been a log of privilege documents you had pulled prior to my review and inspection of the District Attorney's file in December.

Now that we have had the opportunity to review the files you copied and produced against my list of documents designated for copying, it appears that your office failed to produce the complete set of documents we designated for copying. Given your office's repeated assurances regarding the non-privileged nature of the documents and the fact that you permitted me and Mr. Grandinette to thoroughly inspect all thirty-three boxes of materials in detail over a two-day period of time and identify any documents from those boxes for copying, it was and is still my understanding that none of those documents contain protected work product or otherwise privileged materials. In any event, even if the materials you have withheld are arguably protected by the work-product doctrine, your disclosure of these documents constitutes an actual waiver to us under these circumstances. *See Bowne of New York City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 479 (S.D.N.Y. 1993) (explaining that work-product protection is waived "if the party has voluntarily disclosed the work-product in such a manner that it is likely to be revealed to his adversary"). Moreover, while you have identified as privileged some of the withheld documents, a number of withheld documents do not appear on the privilege log. Thus, you have waived privilege as to all those documents as well. *See, e.g., Morisseau v. DLA Piper*, No. 06 Civ. 13255 (LAK), 2007 WL 4292030, at *1 (S.D.N.Y. Dec. 03, 2007) (holding that all claims of privilege not identified on privilege log have been waived).

For these reasons, I request that you review the enclosed list of the boxes of documents you produced for inspection. The list specifies the documents I requested for copying, the documents we received, the documents we did not receive, and the documents that do not appear to be on your privilege log (to the extent that it could be determined given the vagueness of your log). Please produce all the documents that you withheld, which you previously assured us are not privileged. Should you refuse to produce the withheld documents on privilege grounds, I ask that you explain the basis for the privilege and the reasons for which you previously failed to assert privilege for these documents despite my repeated inquiries.

In addition, please produce the grand jury transcripts I had requested to be copied. In December, I inspected and requested copies of the grand jury transcripts in the District Attorney's file, which included the testimony of the following witnesses: Volpe, V. Halstead, L. Diguiseppe, B. Skellington, C. Lampasona, J. Egington, G. Cole, T. Allen, D. Cockeral, P. Lampasona, D. Skellington, W. Rapp, M. Corbett, L. Klein, C. Fraas, C. Pozzini, S. Bonasia, E. Bonasia, M. Cockeral, L. Miller, K. Cockeral, S. Schneider, D. Schneider, C. O'Hanlon, B. O'Hanlon, H. Smyle, and D. McCarthy. Despite my request, none of these transcripts were produced to us and, instead, there appears to be an entry on the privilege log of over 400 pages of grand jury testimony. As explained above, any claim of privilege has already been waived given your prior disclosure of the transcripts. In any event, even if a state privilege arguably applies, "it should be emphasized that New York State law does not govern discoverability and confidentiality in federal civil rights actions." *Cruz v. Kennedy*, No. 97 Civ. 4001(KMW), 1997 WL 839483, at *1 (S.D.N.Y. Dec. 19, 1997) (citing *King v. Conde*, 121 F.R.D. 180, 187 (E.D.N.Y. 1988)). It is well-settled that state privileges should never be permitted to "frustrate the important federal interests in broad discovery and truth-seeking and the interest in vindicating important federal substantive policy such as that embodied in section 1983." *King*, 121 F.R.D. at 187. Thus, even with respect to grand jury testimony, federal courts have found that the "federal interests embodied in section 1983 militate in favor of compelling disclosure." *Cruz*, 1997 WL 839483 at *2. Consequently, we will move to compel the production of the complete grand jury transcripts should you refuse to produce them.

If I do not receive a response from you on or before close of business on Monday, March 24, 2008, I will proceed to file a motion to compel these materials.

Sincerely,

Monica R. Shah

cc: Paul Casteleiro
Anthony Grandinetti

**Restivo/Halstead/Kogut – DA Files**

| **Defs Index Letter** | **Markings on Box** | **Actual Contents** | **Requested to be copied** | **Received** |
|---|---|---|---|---|
| Unmarked | Rosario Material from Kogut 2005 Trial | Rosario Materials | Yes, full box | Yes |
| A | Kogut Trial (Biancavilla) | Kogut 1st trial, Restivo/Halstead trial transcripts | No | N/A |
| B | False Confession Research | Kogut 1st trial pretrial hearing transcripts, excerpts Halstead/Restivo trial transcript | No | N/A |
| C | Restivo, Kogut, Halstead | Various documents | Yes, specifically requested a number of documents including but not limited to: Committee on Interrogations document, indemnification documents, documents re: Edwards, polygraphs (incl. one of John Fusco) | No, received no copies from this box |

| | | | | |
|---|---|---|---|---|
| D | Kogut Trial Dr. Norton Forensic Pathologist | GJ testimony (Volpe, V. Halstead, L. Diguiseppe, B. Skellington, C. Lampasona, J. Egington, G. Cole, T. Allen, D. Cockeral, P. Lampasona, D. Skellington, W. Rapp, M. Corbett, L. Klein, C. Fraas, C. Pozzini, S. Bonasia, E. Bonasia, M. Cockeral, L. Miller, K. Cockeral, S. Schneider, D. Schneider, C. O'Hanlon, B. O'Hanlon, H. Smyle, D. McCarthy); articles on hair and custodial interrogations; Kuhn & O'Leary notes; correspondence; DNA results | Yes, specifically requested a number of documents including but not limited to: all GJ testimony, articles, correspondence, Kuhn & O'Leary notes, DNA results | No, received no copies from this box |
| E | Kogut, Halstead, Restivo Legal Research & Misc. Materials | Various documents | Yes, specifically requested "Documents from unknown origin" and affidavits and Cvs | No, received no copies from this box |
| F | Halstead/Restivo GJ & Trial Minutes, Box 2 of | Restivo/Halstead trial transcript; legal memoranda; notes; news articles | Yes, specifically requested notes and news articles | Yes, received news articles (unclear if notes are on privilege log) |
| G | Fred Klein's File | Pretrial motions; DNA reports, FBI check; news articles; K. Cockeral GJ testimony; exhibit envelopes; correspondence; photographs | Yes, specifically requested DNA reports, FBI check; news articles; K. Cockeral GJ testimony; exhibit envelopes; correspondence; photographs | No, received no copies from this box |
| H | Trial Docs Witness Statements | Witness statements | Yes, full box | Yes |

| I | Halstead/Restivo Wiretaps/Eaves-dropping | Eavesdropping warrants | Yes, selected documents | Yes |
|---|---|---|---|---|
| J | Kogut, Halstead, Restivo Trial Documents, Box 4 of | Various documents | Yes, full box | Partially - received everything except "Prosecution Memorandum" (does not appear to be on privilege log) |
| K | Polygraph | Various documents | Yes, requested selected documents including without limitation the results of the mtDNA testing in the Morrissey case, the Kassin Report, the list of items taken from vehicle on 10/2/85, and the press file on Fusco | Partially - did not receive mtDNA test results in Morrissey case or list of items take from vehicle (does not appear to be on privilege log) |
| L | Kogut Trial (Biancavilla) | Various documents | Yes, requested selected documents | Yes |
| M | Kogut Trial | Various items, including tape of Kogut confession | Yes, requested selected documents | Partially - received everything except bound materials labeled "Details of missing girls who seem to be similar" |
| N | Kogut Trial (Biancavilla) | Various documents re: forensic evidence | Yes, requested selected documents | Yes |

| | | | | |
|---|---|---|---|---|
| O | Trial Transcript Kogut | Kogut trial transcript | No | N/A |
| P | Trial Transcript Restivo/Halstead and Kogut | Restivo/Halstead and Kogut trial transcripts | No | N/A |
| Q | Kogut Trial Minutes 2005 | Kogut 2nd trial transcript | No | N/A |
| R | Halstead Habeas, Box 12 of | Halstead habeas materials | No | N/A |
| S | Kogut Habeas, Box 11 of | Kogut habeas materials | No | N/A |
| T | Restivo Habeas, Box 11 of | Restivo habeas materials | No | N/A |
| U | Kogut, Halstead, Restivo 440 motion papers, Box 7 of | 440 materials | No | N/A |
| V | Direct Appeals, Kogut, Halstead, and Restivo, Box 9 of | Appellate materials | No | N/A |
| W | Hearing and trial minutes, GJ and videotaped confession | Kogut 2nd trial hearing transcripts, hair banding exhibits, photos | Yes, Requested photos | Yes |
| X | 440 Kogut, Restivo, Halstead | 440 materials | No | N/A |

| | | | | |
|---|---|---|---|---|
| Y | False Confession Research | Kogut 2nd trial pretrial hearing transcripts | No | N/A |
| Z | FOIL requests/responses | FOIL requests/responses | No | N/A |
| AA | Kogut Trial | Correspondence, media, supplemental reports, indictment, Campbell affidavit, pretrial and trial transcripts | Yes, requested selected materials | Yes |
| BB | Kogut et al, McCormack's files | Notes, correspondence, memoranda | Yes, requested selected material | No, received no copies from this box (does not appear to be on privilege log) |
| CC | Kogut Trial | Various documents | Yes, requested selected materials | Yes |
| DD | Kogut Trial Evidence (hair) | Various documents | Yes, requested selected materials | Yes |
| EE | Fred Klein's Papers | Various documents | Yes, requested selected materials | Yes |
| FF | Kogut Trial (Biancavilla) | Correspondence, trial testimony, documents re: jailhouse informants | Yes, requested selected materials | Yes |
| | | | | |

# EXHIBIT B

COCHRAN NEUFELD & SCHECK, LLP
99 Hudson Street
New York, New York 10013

Tel: 212-965-9081
Fax: 212-965-9084

Peter J. Neufeld
Barry C. Scheck
Nick J. Brustin
Debi Cornwall

Jennifer E. Laurin
Monica R. Shah
Anna Benvenutti Hoffmann

Johnnie L. Cochran, Jr.
(1937-2005)

March 28, 2008

**By Electronic Mail and US Mail**

Ms. Liora Ben-Sorek
Deputy County Attorney
Nassau County Attorney's Office
One West St.
Mineola, NY 11501-4820

**Re: Restivo and Halstead, et al. v. Nassau County, et al. No. CV-06-6720 (JS)(WDW)**

Dear Ms. Ben-Sorek:

This letter confirms our telephone conversation of this morning regarding your response to my letter of March 21, 2008 about your failure to produce the complete set of documents from the DA's file personally reviewed at your office and identified for copying by plaintiffs in December of last year.

Based on our conversation, it is my understanding that you reviewed our list of missing documents with a representative of the DA's Office this week and determined that most of the documents, with the exception of some handwritten notes and grand jury transcripts, are not privileged and should have been disclosed to plaintiffs as requested. In response to our inquiry, you also stated that the County will not disclose the full set of grand jury transcripts, which you allowed myself and Mr. Grandinette to review in December and which we requested for copying. However, you stated that you will produce the transcripts of all the witnesses who testified at trial. As such, we expect to receive the complete transcripts of the grand jury testimony of each of the following witnesses: J. Egington (who testified at trial as J. Nitti), T. Allen, L. Klein, C.

Fraas, C. Pozzini, M. Cockeral, C. O'Hanlon, B. O'Hanlon, H. Smyle, and D. McCarthy. We expect to receive the documents you determined are not privileged and the foregoing grand jury transcripts no later than Friday, April 4th. Should you fail to produce all of these documents by Friday, April 4th, we will have no choice but to raise this matter with the Court in advance of our status conference on April 11th.

As we discussed, since you are maintaining the position that the grand jury transcripts of witnesses who did not testify at trial are privileged under state law, plaintiffs will plan to file a letter motion to compel the remaining grand jury transcripts based on the grounds described in my letter of March 21st.

Sincerely,

Monica R. Shah

cc: Paul Casteleiro
Anthony Grandinetti