# EXHIBIT A

```
 1
 2  UNITED STATES DISTRICT COURT NEW YORK
    FOR THE EASTERN DISTRICT OF NEW YORK
 3  ------------------------------------------X
    JOHN RESTIVO, DENNIS HALSTEAD, MELISSA
 4  LULLO, JASON HALSTEAD and TAYLOR HALSTEAD,
 5              Plaintiffs,
 6      -against-        No. CV-06-6720
 7  NASSAU COUNTY, JOSEPH VOLPE, in his
    individual capacity, ROBERT DEMPSEY, in his
 8  individual capacity, FRANK SIRIANNI, in his
    individual capacity, MILTON GRUBER, in his
 9  individual capacity, HARRY WALTMAN, in his
    individual capacity, ALBERT MARTINO, in his
10  individual capacity, CHARLIE FRAAS, in his
    individual capacity, THOMAS ALLEN, in his
11  individual capacity, RICHARD BRUSA, in his
    individual capacity, VINCENT DONNELLY, in
12  his individual capacity, MICHAEL
    CONNAUGHTON, in his individual capacity,
13  WAYNE BIRDSALL, in his individual capacity,
    WILLIAM DIEHL, in his individual capacity,
14  JACK SHARKEY, in his individual capacity,
    DANIEL PERRINO, in his individual capacity,
15  ANTHONY KOZIER, in his individual capacity,
    DETECTIVE SERGEANT CAMPBELL (SHIELD #48), in
16  his individual capacity, ROBERT EDWARDS, in
    his individual capacity, SEAN SPILLANE, in
17  his individual capacity, JOHN DOE OFFICERS
    AND DETECTIVES #1-10, in their individual
18  capacities, and RICHARD ROE SUPERVISORS
    #1-10, in their individual capacities.
19
                Defendants.
20  ------------------------------------------X
    JOHN KOGUT,
21
                Plaintiff,
22
        -against-        No. CV-06-6695
23
    THE COUNTY OF NASSAU, Police Commissioner
24  DONALD KANE, Police Commissioner WILLIAM J.
    WILLETT (2005), Police Commissioner JAMES
25  LAWRENCE, Detective SEAN SPILLANE (Head of
```

```
 1
 2  (Head of Homicide 2005), Detective JOSEPH
    VOLPE, Detective ROBERT DEMPSEY, Detective
 3  ALBERT MARTINO, Detective WAYNE BIRDSALL,
    Detective MILTON G. GRUBER, Detective
 4  CHARLES FRAAS, Detective FRANK SIRIANNI,
    Detective HENRY WALTMAN, P.O. MICHAEL
 5  CONNAUGHTON, P.O. WILLIAM DIEHL and JOHN
    DOES 1-5,
 6
                    Defendants.
 7  ----------------------------------------X
 8              One West Street
                Mineola, New York
 9
                February 13, 2009
10              10:09 a.m.
11
12          VIDEOTAPED DEPOSITION of
13  ROBERT DEMPSEY, a Defendant herein,
14  taken by the Plaintiffs, held at the
15  above-noted time and place before a
16  Notary Public of the State of New York.
17
18
19
20
21
22
23
24
25
```

112

1     Robert Dempsey
2  one of the videotaped deposition of
3  Robert Dempsey.
4     (Whereupon, a conference call
5  was had with Justice Seybert's
6  chambers.)
7     MR. FERGUSON: Good afternoon.
8     JUDGE SEYBERT: Good afternoon.
9  Is this the Nassau County Attorney's
10 Office?
11    MR. FERGUSON: Yes, it is.
12    JUDGE SEYBERT: Who's on the
13 line?
14    MR. FERGUSON: This is Michael
15 Ferguson, I'm Deputy County Attorney.
16    JUDGE SEYBERT: All right.
17 Mr. Ferguson, I understand that there's
18 been discovery disputes and you asked
19 for the court's intervention.
20    MR. FERGUSON: That is correct.
21 I regret the inconvenience.
22    JUDGE SEYBERT: Is the reporter
23 there?
24    MR. FERGUSON: The reporter's
25 there and also a videotape is here.

113

Robert Dempsey

MS. CORNWALL: Yes.

JUDGE SEYBERT: So we're all set. The court reporter is maintaining a transcript of this proceeding and you have the video running on it?

MS. CORNWALL: The video's not currently running. This is Deborah Cornwall representing John Restivo and the Halstead plaintiffs. Goods afternoon, Your Honor.

JUDGE SEYBERT: Good afternoon. Let me summarize what I've been advised are the issues. The defendants, Mr. Ferguson, you're claiming that the current inquiry is not relevant since plaintiffs' counsel is attempting to go through every murder case in the witness's career and that the witness in question is Mr. Dempsey, correct.

MR. FERGUSON: Yes, Your Honor that is correct. And in detail about the murder cases and his opinions about the evidence and et cetera, et cetera, yes.

114

Robert Dempsey

2  JUDGE SEYBERT: And she is
3  starting with approximately 1976?
4  MR. FERGUSON: '79, Your Honor,
5  when he first became a homicide
6  detective.
7  JUDGE SEYBERT: All right. And
8  how many murders are involved here?
9  MR. FERGUSON: Well, we don't
10  know. Counsel for the plaintiff has
11  been asking him in sequential order
12  every homicide case beginning with
13  1979. The first one of 1979 in detail
14  and then the second homicide case of
15  1979 in detail and then the third
16  homicide case in 1979 in detail and I
17  asked her at that point if she intends
18  to continue to do this -- and to ask
19  him as to why the case went an a
20  certain way and what the evidence was
21  and whether there was any forensic
22  evidence and et cetera, et cetera, and
23  when I asked counsel if she intends to
24  go through every case that this
25  detective who, you know, has been a

115

Robert Dempsey

1  
2  detective for many, many years and is
3  here as an out-of-state witness for
4  this deposition if she intends to
5  continue to do this she ignored my
6  inquiry and continued to question him
7  about the specific details and whether
8  there was any suspects and whether the
9  case was solved and what the name of
10 the victim was and what type of
11 physical evidence they recovered,
12 et cetera, et cetera. And we've gotten
13 up to the fourth case so far in 1979
14 and I said that I'm going to have to
15 seek a ruling from the court and that's
16 when we first attempted to reach
17 Magistrate Wall and that's where we're
18 at.
19         JUDGE SEYBERT: All right. So
20 now you have the district court judge
21 assigned to this case. I understand,
22 Ms. Cornwall, that you need to have,
23 Ms. Cornwall, this information is based
24 on relevancy to your Monel claim as to
25 practice and training and that there is

116

1  Robert Dempsey
2  an indication that the witness claimed
3  at some point to have perfect recall as
4  to the investigation in the underlying
5  action here even without notes and that
6  so you wanted to explore his recall on
7  other cases.
8  　　　　MS. CORNWALL: Yes, Your Honor.
9  In addition to being highly relevant to
10 the County's notice of any custom
11 unconstitutional custom and practice
12 and with regard to questioning
13 witnesses or suspects.
14 　　　　JUDGE SEYBERT: All right. Let
15 me ask you this, Ms. Cornwall, do you
16 know that you have seven hours and
17 possible additional time if necessary.
18 The Pukes investigation was what, 1986?
19 　　　　MR. FERGUSON: '84 to '85.
20 　　　　JUDGE SEYBERT: '84 to '85,
21 okay.
22 　　　　MR. FERGUSON: Your Honor, this
23 was the Fusco case and the murder was
24 in December -- November.
25 　　　　JUDGE SEYBERT: Who's talking

1          Robert Dempsey
2   now?
3          MR. FERGUSON: This is
4   Mr. Ferguson.
5          JUDGE SEYBERT: Okay.
6          MR. FERGUSON: The Fusco case
7   the murder was in November 1984. This
8   detective did not become involved until
9   March 1985 when he was present for a
10  statement taken from defendant Restivo
11  and the confession of defendant Kogut.
12         JUDGE SEYBERT: Well, perfect
13  recall. Where was that statement
14  before made?
15         MR. FERGUSON: He never said he
16  had perfect recall.
17         JUDGE SEYBERT: I didn't ask
18  you. I said Ms. Cornwall.
19         MS. CORNWALL: Sorry, Your
20  Honor. The question again?
21         JUDGE SEYBERT: The question is
22  where did Mr. Dempsey make the
23  representation that he had perfect
24  recall in the Fusco investigation?
25         MS. CORNWALL: Yes, that's my

1   Robert Dempsey
2   characterization of his testimony in
3   John Kogut's 2005 retrial in which
4   without any prompting he testified as
5   to four versions of a confession he
6   elicited from John Kogut during which
7   time he took no notes back from
8   March 25th of 1985. And I would like
9   to clarify, for the record, my actual
10  inquiry was not every homicide case
11  that the detective had worked on but
12  rather each case in which he was the
13  carrying or lead detective and my focus
14  is intended to be on admissions and
15  confessions which is precisely the
16  Monel question at issue in this case.
17          JUDGE SEYBERT: Ms. Cornwall,
18  how many do you have?
19          MS. CORNWALL: We've started
20  with three and we've gotten up to -- I
21  believe we're starting with 1980. He's
22  testified that Nassau County had up to
23  several homicides per year but
24  sometimes less. The entire line of
25  questions, before it was interrupted by

119

1  Robert Dempsey
2  the first call to the judge, took less
3  than 10 minutes. And I'm not asking
4  highly detailed questions, I'm asking
5  generally what was the nature of the
6  crime, was there an arrest, was there a
7  confession, was there evidence
8  corroborating the confession, was there
9  a conviction, was the confession
10 introduced in court, if not why not and
11 then moving on to the next one so that
12 we can form the predicate for argument
13 that there was in fact a custom and
14 practice of improper and
15 unconstitutional questioning and
16 interrogation of which the county
17 itself was on notice.
18         JUDGE SEYBERT: All right. And
19 that took approximately 10 minutes
20 before you put the call in?
21         MS. CORNWALL: Yes, Your Honor.
22         MR. FERGUSON: Your Honor, this
23 is Mr. Ferguson. I disagree with that
24 statement, Your Honor, and also what we
25 got up to was not 1980 but to Easter

ALLIANCE REPORTING SERVICE, INC. (516) 741-7585

1     Robert Dempsey
2     1979 a murder in Lake Success which the
3     detective said was not solved and then
4     he started to be questioned about what
5     suspects there were in this murder that
6     was never solved at Easter in Lake
7     Success in 1979 and that was the fourth
8     homicide case so far we've got to in
9     sequential order beginning in 1979.
10    And counsel's statement that she's only
11    asked about confessions and so forth is
12    not accurate.  He was questioned about
13    an earlier homicide that year where the
14    brick was recovered and he was
15    questioned about recovering forensic
16    evidence off that brick and, of course,
17    this is in early 1979 and the witness,
18    of course, has been retired since 2001,
19    this is 30 years ago, and I objected on
20    the grounds of relevance of this line
21    of questioning.  Also I think we should
22    keep in mind that this is a witness
23    appearing from out of state.
24         JUDGE SEYBERT:  I understand.
25    Rather than waste the witness's time

121

1  Robert Dempsey
2  and the court's time what I propose to
3  do, if I'm ruling that the material is
4  relevant, provided it's limited too
5  homicides in which this particular
6  detective was the carrying detective
7  and that the facts you attempt to
8  elicit deal with confessions and the
9  results of their investigation.  That
10 concludes the hearing.  And if you need
11 any additional time I think it's going
12 to be problematic, Ms. Cornwall,
13 because we're talking about a long
14 holiday weekend and most likely it
15 would be Tuesday.  So I would work
16 efficiently now.  You've had, what is
17 it, a two and a half hour break because
18 of my sentencing schedule and court
19 proceedings that I had to attend to so
20 on that note please restart this
21 deposition, the witness is directed to
22 answer the questions that I've outlined
23 and I hope I don't get any more calls.
24     MS. CORNWALL:  Thank you, Judge.
25     JUDGE SEYBERT:  All right.

122

1        Robert Dempsey
2        MR. FERGUSON: Thank you, Your
3   Honor.
4        JUDGE SEYBERT: Have a good day.
5        MS. CORNWALL: You, too.
6        (Whereupon, the conference call
7   with Judge Seybert ended.)
8        THE VIDEOGRAPHER: This is tape
9   number two of the videotaped deposition
10  of Robert Dempsey. The time is now
11  12:54 p.m. we're back on the record.
12       Q    Sir, from the time that you
13  walked into the small room off homicide
14  around 10 to midnight on the evening of
15  March 5, 1985 to the time that you left at
16  the end of your involvement in that
17  interview how long had you been in there?
18       A    Well, I took time to go to the
19  men's room, there was a period of time where
20  I had something to eat, I rested and it went
21  into the next day until I believe it was
22  about 4:20 or 4:30 the following afternoon.
23       Q    So is it fair to say that with
24  the exception of bathroom breaks and eating
25  something out of the room on a few

C E R T I F I C A T E

STATE OF NEW YORK   )
                    ) ss:
COUNTY OF NASSAU    )

I, Caroline Mandato, a Shorthand Reporter and Notary Public in and for the State of New York, do hereby certify:

That the testimony of ROBERT DEMPSEY was held before me at the aforesaid time and place.

That said witness was duly sworn before the commencement of the testimony and that the testimony was taken stenographically by me and is a true and accurate transcription of my stenographic notes.

I further certify that I am not related to any of the parties to the action by blood or marriage and that I am in no way interested in the outcome of this matter.

IN WITNESS WHEREOF, I have hereunto set my hand this 1ST day of MARCH, 2009.

*Caroline Mandato*
-------------------------
CAROLINE MANDATO