UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN RESTIVO, DENNIS HALSTEAD, MELISSA LULLO, JASON HALSTEAD, TAYLOR HALSTEAD, and HEATHER HALSTEAD,<br><br>     Plaintiffs,<br><br>    -against-<br><br>NASSAU COUNTY, CAROLANN HESSEMAN, AS EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE, in his individual capacity, ROBERT DEMPSEY, in his individual capacity, FRANK SIRIANNI, in his individual capacity, MILTON GRUBER, in his individual capacity, HARRY WALTMAN in his individual capacity ALBERT MARTINO, in his individual capacity, CHARLIE FRAAS, in his individual capacity, THOMAS ALLAN in his individual capacity, RICHARD BRUSA, in his individual capacity, VINCENT DONNELLY, in his individual capacity, MICHAEL CONNAUGHTON, in his individual capacity, WAYNE BIRDSALL, in his individual capacity, WILLIAM DIEHL, in his individual capacity, JACK SHARKEY, in his individual capacity, DANIEL PERRINO, in his individual capacity, ANTHONY KOZIER, in his individual capacity, Detective Sergeant CAMPBELL, (Shield #48), in his individual capacity, SEAN SPILLANE, in his individual capacity, RICHARD ROE SUPERVISORS #1-10, in their individual capacities,<br><br>     Defendants. | **MOTION IN LIMINE TO MODIFY *DAUBERT* RULING ON POST-MORTEM ROOT BANDING ISSUE**<br><br>06-CV-6720(JS)(WDW) |

  In this wrongful conviction suit, Plaintiffs contend that the Nassau County Police Defendants planted Theresa Fusco's hairs, which had been collected at the rape-murder victim's autopsy, among hairs that were collected from Plaintiff John Restivo's van. In their expert reports, Plaintiffs' expert witnesses Max Houck, Nicholas Petraco, and Peter DeForest offered opinions supporting this contention: because the hairs collected from the van exhibit post-

1

mortem root banding (PMRB), and because PMRB does not develop for days after death, the hairs could not have been left in the van as Defendants claim. On August 15, 2012, after an extensive *Daubert* hearing and briefing (*see* D.E. 205, D.E. 210, D.E. 216, D.E. 218–21, D.E. 226, D.E. 228),[1] the Court issued a 36-page decision on the admissibility of this expert opinion under Federal Rule of Evidence 702. D.E. 350. The Court had "no trouble finding that Plaintiffs' Experts are qualified to testify about their experience in the field of forensic science." D.E. 350 at 20. It also ruled the experts could testify, to a reasonable degree of scientific certainty, that PMRB only develops on hairs attached to a decomposing body. D.E. 350 at 29–34.

Plaintiffs now ask the Court to reconsider one narrow issue related to the admissibility of this opinion, based on new evidence developed after the Court ruled. The Court permitted the experts to testify that PMRB took days to develop but held, based on the state of scientific literature at that point, that they could not testify to that opinion to a reasonable degree of scientific certainty. The Court noted three reasons for this ruling: (1) "although the theory can be tested, it hasn't been," D.E. 350 at 22–23; (2) "the value of the few studies that have been done is limited by small sample sizes or other issues,"[2] D.E. 350 at 23–24; and (3) there were two anecdotal reports of PMRB developing as early as between 8–12 and between 10–12 hours after death, D.E. 350 at 28.

---

[1] All docket references are to 06-CV-6995.

[2] The Court discussed the then-available studies in detail, which include one review of 22 case studies (Charles A. Linch & Joseph A. Prahlow, "Postmortem Microscopic Changes Observed at the Human Head Hair Proximal End," J. FORENSIC SCIENCE 2001:46(1), 15–20), one review of gorilla hair (Kathryn J. Jeffery, Kate A. Abernethy, Caroline E. G. Tutin & Michael W. Bruford, "Biological and Environmental Degradation of Gorilla Hair and Microsatellite Amplification Success," BIOLOGICAL J. OF THE LINNEAN SOCIETY, 2007, 91, 281–94), and two unpublished masters' theses (Jamie Hughes Collier, "Estimating the Postmortem Interval in Forensic Cases through the Analysis of Postmortem Deterioration of the Human Head Hair," Master's Thesis, May 2005; Barbara Wagner Collins, "The Effect of Temperature on Post Mortem Morphology of Human Hair Roots," Master's Thesis, June 1996).

2

After the Court's opinion, a new definitive study on this topic, authored by three experienced FBI and ATF criminalists working with the University of Tennessee's "body farm," was published in The Journal of Forensic Sciences. *See* Koch study, attached as Ex A.[3] Over three years, the criminalists examined 24,000 hair roots collected from 23 human cadavers permitted to decompose in varying environmental conditions. Their findings fully support Plaintiffs' proposed expert testimony: in cadavers placed outside on the ground, full PMRB generally did not develop until 6–10 days after death; the earliest development of PMRB in the study—in a cadaver placed in the trunk of a car in August—occurred after 4 days.

The Second Circuit has emphasized that an expert need not "back his or her opinion with published studies that unequivocally support his or her conclusions" to prove it is reliable enough to be admitted. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002). But there is no question that such evidence is the gold standard. *See id.*; *see also* D.E. 350 at 21 (discussing reliability factors from *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590 (1993)). That is precisely what we have here. The Koch study meets each of the Court's initial concerns about the scientific reliability of the proffered expert opinion on the timing of PMRB, and merits reconsideration of that ruling.

First, the Koch study represents true scientific testing of the PMRB timing theory. The authors placed 23 cadavers in varying conditions likely to be found at crime scenes: "outdoors on the surface of the ground, in graves of varying depths, in a water environment, in an air-conditioned building, and enclosed within a vehicle trunk or passenger compartment" at various times of year. Ex. A at S53. They monitored conditions and collected hairs daily. Ultimately, approximately 24,000 hair roots were examined for PMRB, each by at least one microscopist

---

[3] Sandra L. Koch, Amy L. Michaud, and Carmenza E. Mikell, "Taphonomy of Hair—A Study of Postmortem Root Banding," J. FORENSIC SCIENCES, 2013:58(S1), S52–S59.

3

with at least 12 years experience in hair examination. This is exactly the type of controlled testing the Court indicated could be done to prove the timing theory (and, indeed, the type of study Defendants' proffered expert, Joseph Kadane, suggested should be conducted, *see* Kadane report, D.E. 204-3, at § 5(c)). The Koch study is especially reliable because the research was conducted independently of any litigation. *See, e.g., In re Fosamax Products Liab. Litig.*, 645 F. Supp. 2d 164, 184 (S.D.N.Y. 2009) ("That the testimony proffered by an expert is based directly on legitimate, preexisting research unrelated to the litigation provides the most persuasive basis for concluding that the opinions he expresses were 'derived by the scientific method.'") ((quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.* ("*Daubert II*"), 43 F.3d 1311, 1317 (9th Cir. 1995)).

Second, the article analyzing the study's results was published in a leading peer-reviewed journal in the field. "That the research is accepted for publication in a reputable scientific journal after being subjected to the usual rigors of peer review is a significant indication that it is taken seriously by other scientists, i.e., that it meets at least the minimal criteria of good science." *Fosamax*, 645 F. Supp. 2d at 183 (quoting *Daubert II*, 43 F.3d at 1318). The Koch study suffers from none of the drawbacks of the previously available literature: the sample size—24,000—is enormous; the study was done on human cadavers, not animals; and the authors were experienced hair examiners, not students. *Cf. Malletier v. Dooney & Bourke, Inc.,* 525 F. Supp. 2d 558, 616 (S.D.N.Y. 2007) ("[T]he more qualified the expert, the more likely that expert is using reliable methods in a reliable manner—highly qualified and respected experts don't get to be so by using unreliable methods or conducting research in an unreliable manner.").

Third, the scientific evidence establishing that PMRB takes days to develop places the two anecdotal reports of PMRB allegedly occurring earlier in a much different light. Plaintiffs'

4

experts testified that there were reasons to discount the accuracy of the timing in those reports; the Koch study proves that this analysis was reasonable. As the Court noted, proffered testimony should only be excluded based on expert assumptions that "are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison." D.E. 350 at 19, quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC,* 571 F.3d 206, 213–14 (2d Cir. 2009) (internal quotation omitted). The assumption that these two anecdotal accounts are unreliable or outliers is not "so unrealistic and contradictory as to suggest bad faith," and "[o]ther contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." D.E. 350 at 19, quoting *Zerega*, 571 F.3d at 213–14.

Under the liberal admissibility standards of Rule 702, expert testimony should only be excluded if "the expert lacks 'good grounds' for his or her conclusions," because "our adversary system provides the necessary tools for challenging reliable, albeit debatable, expert testimony." *Amorgianos*, 303 F.3d at 267 (internal citations and quotations omitted). The Koch study—in combination with the experts' decades of experience as leaders in the field—constitutes "good grounds" for the expert opinion that, to a reasonable degree of scientific certainty, PMRB takes days to develop. The Court should permit Plaintiffs' experts to so testify.

Dated: January 17, 2014  
New York, NY

Respectfully submitted,

 /s/ Anna Benvenutti Hoffmann  
Barry C. Scheck  
Nick Brustin  
Anna Benvenutti Hoffmann  
Alexandra Lampert  
NEUFELD SCHECK & BRUSTIN, LLP  
99 Hudson St., 8th Floor  
New York, NY 10013

**Attorneys for Plaintiffs**  
**John Restivo and Dennis Halstead**

5