UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| JOHN RESTIVO, DENNIS HALSTEAD, MELISSA LULLO, JASON HALSTEAD, TAYLOR HALSTEAD, and HEATHER HALSTEAD,<br><br>Plaintiffs,<br><br>-against-<br><br>NASSAU COUNTY, CAROLANN HESSEMAN, AS EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE, in his individual capacity, ROBERT DEMPSEY, in his individual capacity, FRANK SIRIANNI, in his individual capacity, MILTON GRUBER, in his individual capacity, HARRY WALTMAN in his individual capacity ALBERT MARTINO, in his individual capacity, CHARLIE FRAAS, in his individual capacity, THOMAS ALLAN in his individual capacity, RICHARD BRUSA, in his individual capacity, VINCENT DONNELLY, in his individual capacity, MICHAEL CONNAUGHTON, in his individual capacity, WAYNE BIRDSALL, in his individual capacity, WILLIAM DIEHL, in his individual capacity, JACK SHARKEY, in his individual capacity, DANIEL PERRINO, in his individual capacity, ANTHONY KOZIER, in his individual capacity, Detective Sergeant CAMPBELL, (Shield #48), in his individual capacity, SEAN SPILLANE, in his individual capacity, RICHARD ROE SUPERVISORS #1-10, in their individual capacities,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **MOTION IN LIMINE ON THE SCOPE OF POLICE PRACTICES EXPERT TESTIMONY**<br><br><br>06-CV-6720(JS)(WDW) |

At the previous trial on Plaintiffs' wrongful conviction claims, Plaintiffs called Russell Fischer as an expert on police practices. The Court permitted this testimony over Defendants' objection. Tr. 10/25/12 at 4356. Because the parties had never briefed the issue, however, the

1

scope of Mr. Fischer's testimony was somewhat unclear.[1] As a result, his testimony was interrupted by numerous objections and sidebars.

In addition, at the time of trial, the Court and parties did not have the benefit of a published circuit court decision addressing the use of a police practices expert in a wrongful conviction case. Since then, the Seventh Circuit has issued just such an opinion—*Jimenez v. City of Chicago*, 732 F.3d 710, 712 (7th Cir. 2013), attached as Exhibit A. *Jimenez* is the first circuit court opinion that Plaintiffs' counsel are aware of to address the use of a police practices expert in this very context, a wrongful conviction suit raising malicious prosecution and fair trial claims under *Brady v. Maryland*, 373 U.S. 83 (1963).

Plaintiffs plan to call Mr. Fischer as a police practices expert again at the upcoming trial. We thus submit this motion to clarify the scope of his testimony well in advance of the trial date, on the basis of new authority that provides a clear roadmap for a police practices expert in a wrongful conviction civil rights case.

## I.   *Jimenez v. City of Chicago*

Thaddeus Jimenez was convicted of a murder he did not commit and spent 16 years in prison before his conviction was vacated. *Jimenez*, 732 F.3d at 712. Like Plaintiffs, he then brought malicious prosecution and fair trial claims against the police officers who investigated the murder. At trial, Jimenez presented a police practices expert, Gregg McCrary, who "testified in some detail about reasonable practices for police investigations and how the investigation of the murder . . . departed from those practices, depending in large part on how the jury resolved

---

[1] The parties did not brief this issue because Defendants did not object to the testimony until trial, even though Plaintiffs served Mr. Fischer's expert report months earlier, on May 4, 2012, in accordance with the pretrial schedule set by the Court. *See* Tr. 1/18/12 at 28. At that time, Defendants did not object or seek to put on their own police practices expert. When Defendants belatedly raised their objections at trial, the Court permitted Defendants to take a deposition of Mr. Fischer the day before his testimony and raise objections during trial.

2

conflicting evidence about the investigation." *Id.* at 719. The jury returned a verdict for plaintiff and awarded $25 million in damages.

On appeal, the defendants argued that the expert's testimony went to the ultimate legal issue; it was "intertwined with probable cause, a legal standard." *Id.* The Seventh Circuit rejected this argument and found no error. "McCrary did not offer any opinion at trial as to probable cause at any stage of the investigation of Morro's murder or the prosecution of Jimenez. He testified only about reasonable investigative procedures and ways in which evidence from other witnesses did or did not indicate departures from those reasonable procedures." *Id.* at 721. Such testimony, the court concluded, was entirely proper: "We recognize that McCrary's opinions had direct implications for applying legal standards such as probable cause and, even more to the point, whether Bogucki deliberately failed to comply with his obligations under *Brady v. Maryland* and the Due Process Clause of the Fourteenth Amendment. That's why his testimony was relevant." *Id.*

The court explained that a police practices expert does not invade the role of the court or jury because the "expert's role is limited to describing sound professional standards and identifying departures from them." *Id*. (quotation omitted). This testimony is especially relevant in "constitutional tort cases," because a police practices expert's "testimony regarding relevant professional standards can give a jury a baseline to help evaluate whether a defendant's deviations from those standards were merely negligent or were so severe or persistent as to support an inference of intentional or reckless conduct that violated a plaintiff's constitutional rights." *Id.* at 721–22.

The court then clearly set forth the "bounds of proper testimony for a police practices expert." *Id.* at 723. An expert may not testify to ultimate factual and legal conclusions, such as

3

"resolv[ing] conflicts in the testimony of different witnesses," "offer[ing] an opinion regarding whether the police had probable cause," or "tell[ing] the jury whether to believe what any witnesses had said during the civil trial." *Id.* at 722. A police practices expert should, however, be permitted to "testif[y] about the steps a reasonable police investigator would have taken to solve the . . . murder, as well as the information that a reasonable police investigator would have taken into account as the investigation progressed." *Id*. He can "[tell] the jury what a reasonable police investigator should have done when presented with . . . conflicting and/or inculpatory statements during the murder investigation." *Id.* at 723. And he may "point out ways in which evidence from other witnesses indicated that [the officer] and his police colleagues departed from reasonable investigation methods." *Id.* In *Jimenez*, the expert's "testimony tended to show that the errors in defendants' handling of the investigation were so severe and numerous as to support an inference of deliberate wrongdoing in violation of the Constitution." *Id.* at 719.

## II.    Second Circuit standards

*Jimenez* is consistent with Second Circuit precedent. The Second Circuit has specifically approved of the use of police practices experts in civil rights cases. *See, e.g.*, *Cash v. County of Erie*, 654 F.3d 324, 338 (2d Cir. 2011) ("In making a deliberate indifference assessment, the jury was entitled to rely on unrebutted expert testimony that [the county's response] was inadequate" to prevent constitutional violations); *Vann v. City of New York*, 72 F.3d 1040, 1049–50 (2d Cir. 1995) ("Deliberate indifference may also be shown through expert testimony that a practice condoned by the defendant municipality was contrary to the practice of most police departments and was particularly dangerous because it presented an unusually high risk that constitutional rights would be violated.") (quotations omitted). District courts within the Second Circuit routinely admit this testimony, using the same standards as *Jimenez. See, e.g.*, *Fate v. Vill. of*

4

*Spring Valley*, 11 CIV. 6838 JPO, 2013 WL 2649548, at *6 (S.D.N.Y. June 13, 2013) (officer "qualified to offer expert testimony on whether the use of force against Plaintiff was unreasonable when set against standard police practices" so long as it is "expressly characterized as based on the assumption that certain facts are found to be true").

### III. Fischer's anticipated testimony

Mr. Fischer will offer this exact type of testimony: he will testify to generally accepted police practices in 1985 and deviations from those practices. He should be able to fully explain certain police standards, including the rationale behind the standard, because a police practices expert must be able to testify in "detail about reasonable practices for police investigations and how the investigation . . . departed from those practices," *Jimenez*, 732 F.3d at 719, to enable the jury to fully evaluate the Defendants' conduct. Fischer will then identify significant deviations, including "point[ing] out ways in which evidence from other witnesses indicated that [the officer] and his police colleagues departed from" the standards. *Id.* at 723. It remains up to the jury to determine what evidence from other witnesses to credit, and therefore to conclude whether or not the Defendants failed to follow generally acceptable practices.

For example, Fischer would not testify whether Defendant Volpe did or did not inform the prosecution about the French car lead. The jury would make that determination. Fischer would explain minimally accepted police practices regarding the disclosure of exculpatory or impeachment evidence to prosecutors in 1985. He would then discuss Defendant Volpe's admissions that he was aware of the French car lead and considered it exculpatory, explain that a reasonable officer would have disclosed all of the French car information to the prosecution and why an officer would have done so, and explain that it would be a significant deviation from acceptable practices not to do so. If the jury were to credit Plaintiffs' evidence that Volpe did not

5

disclose this information, Fischer's testimony would support the inference that Volpe's deviation was not simply negligent but the result of deliberate misconduct. Similarly, Fischer would testify to the generally acceptable practices relating to affidavit writing, including the use of forensic terminology in affidavits and why affidavit writing standards are important, and discuss how certain evidence, if credited, establishes deviations from those practices.

Plaintiffs thus respectfully submit that the standard set out in *Jimenez* should guide Mr. Fischer's testimony. He should be permitted to testify "about reasonable practices for police investigations and how the investigation of the murder . . . departed from those practices." *Jimenez*, 732 F.3d. at 719.

Dated: January 17, 2014  
New York, NY

Respectfully submitted,

  /s/ Alexandra Lampert  
Barry C. Scheck  
Nick Brustin  
Anna Benvenutti Hoffmann  
Alexandra Lampert  
NEUFELD SCHECK & BRUSTIN, LLP  
99 Hudson St., 8th Floor  
New York, NY 10013

**Attorneys for Plaintiffs**  
**John Restivo and Dennis Halstead**