UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN RESTIVO, DENNIS HALSTEAD, MELISSA LULLO, JASON HALSTEAD, TAYLOR HALSTEAD, and HEATHER HALSTEAD,<br><br>Plaintiffs,<br><br>-against-<br><br>NASSAU COUNTY, CAROLANN HESSEMAN, AS EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE, in his individual capacity, ROBERT DEMPSEY, in his individual capacity, FRANK SIRIANNI, in his individual capacity, MILTON GRUBER, in his individual capacity, HARRY WALTMAN in his individual capacity ALBERT MARTINO, in his individual capacity, CHARLIE FRAAS, in his individual capacity, THOMAS ALLAN in his individual capacity, RICHARD BRUSA, in his individual capacity, VINCENT DONNELLY, in his individual capacity, MICHAEL CONNAUGHTON, in his individual capacity, WAYNE BIRDSALL, in his individual capacity, WILLIAM DIEHL, in his individual capacity, JACK SHARKEY, in his individual capacity, DANIEL PERRINO, in his individual capacity, ANTHONY KOZIER, in his individual capacity, Detective Sergeant CAMPBELL, (Shield #48), in his individual capacity, SEAN SPILLANE, in his individual capacity, RICHARD ROE SUPERVISORS #1-10, in their individual capacities,<br><br>Defendants. | **PLAINTIFFS' MOTION FOR LIVE TRIAL TESTIMONY OF DEFENDANTS OR, IF UNAVAILABLE, FOR LEAVE TO TAKE A TRIAL DEPOSITION IN LIEU OF LIVE TESTIMONY**<br><br>06-CV-6720(JS)(WDW) |

Well in advance of the upcoming trial, Plaintiffs specifically asked counsel for the Defendants for an update on the Defendants' and Nassau County witnesses' health in order to determine whether there was a risk that any Defendant or witness would be unavailable for trial. Plaintiffs specifically told Defendants the reason we were inquiring in advance was to allow time to take trial depositions, if necessary, to serve in lieu of live testimony. *See* Ex. A (emails from Anna Benvenutti Hoffmann to Lou Freeman and Nadjia Limani dated Dec. 5, 2013, and Feb. 17,

1

2014). Over the course of the past several months, counsel for Defendants never informed Plaintiffs that any Defendant or witness would be unavailable at trial. Rather, counsel agreed to accept service of subpoenas for trial testimony for all Defendants and "facilitate getting the defendants into court," *see id.* (email dated Feb. 17, 2014), apart from the two who were unavailable at the prior trial and whose videotaped depositions were used in lieu of testimony.[1]

It was not until March 5, 2014, less than two weeks before the start of trial, when counsel notified Plaintiffs for the first time that Defendants would be unavailable for trial. Defendants reported that they had, coincidentally on the same day, learned that *two* Defendants—Dempsey and Fraas—would not be available at trial. *See* Ex. B (email from Nadjia Limani to Anna Benvenutti Hoffmann on Mar. 5, 2014 at 12:08 p.m.); Ex. C (email from Lou Freeman to Anna Benvenutti Hoffmann on Mar. 5, 2014 at 7:08 p.m.).

Due to the potential for severe prejudice to their claims if these key Defendants are not present at trial, most significantly Defendant Fraas,[2] Plaintiffs move to require Defendants to attend trial or make a showing that Defendants are in fact unavailable. In the event that Defendants are unavailable, Plaintiffs seek leave to take a trial deposition that will serve in lieu of live testimony or, in the alternative, to arrange for testimony at trial via live video feed.

**Argument**

    **I.**    **Plaintiffs would be severely prejudiced if Defendant Fraas does not testify at trial or, if he is unavailable, Plaintiffs are not permitted to take a trial deposition.**

As Plaintiffs have repeatedly made clear, one of the primary focuses of the upcoming,

---

[1] Those two are Defendant Volpe, who is deceased, and Sirianni, who was too ill before the last trial to travel to New York.

[2] As explained below, if the Court grants Plaintiffs' motion to exclude John Restivo's interrogation and statement, D.E. 132 (06-cv-6720), Plaintiffs would consent to Defendant Dempsey's testimony by deposition, which was recorded on videotape.

2

narrowed civil rights trial will be Plaintiffs' claim that Defendants fabricated inculpatory hair comparison evidence. Defendant Fraas is a key, if not the most important, live witness on this claim—he conducted the hair comparison at issue. It is thus critical that Plaintiffs be able to thoroughly examine Fraas and that the jury be able to evaluate Fraas's credibility through live testimony or, in the event that his in-person testimony at trial is not possible due to medical issues, on videotape taken in a trial deposition or through live video feed.

### A. Defendant Fraas must testify at trial, absent a showing that he is unavailable.

The preference for live testimony is well established in this Circuit. "The deposition has always been, and still is, treated as a substitute, a second-best, not to be used when the original is at hand." *Napier v. Bossard,* 102 F.2d 467, 469 (2d Cir. 1939) (Hand, L., J.). "[L]ive testimony of key witnesses is necessary so that the trier of fact can assess the witnesses' demeanor." *Iragorri v. United Technologies Corp.*, 274 F.3d 65, 75 (2d Cir. 2001) (quoting *Alfadda v. Fenn*, 159 F.3d 41, 48 (2d Cir. 1998)); *see also Scottish Air Int'l, Inc. v. British Caledonian Grp., PLC*, 81 F.3d 1224, 1233 (2d Cir. 1996) (finding "live testimony of key witnesses was necessary" because "the credibility of the witnesses in the present case is crucial").

As explained above, Defendant Fraas is a key witness—indeed, the only living witness now that Defendant Volpe is deceased—with direct knowledge of what happened during the hair comparison in the Fusco investigation. This testimony is critical evidence relevant to Plaintiffs' claim that Defendants fabricated inculpatory hair comparison evidence. Fraas's testimony, and his credibility, are thus crucial to the upcoming trial. Although Fraas previously sat for a deposition over five years ago, on December 4, 2008 (his was the first deposition taken in the case), and testified in person at the previous trial, neither was videotaped. The jury at the second

civil rights trial will therefore be unable to adequately evaluate Fraas's credibility, on questions that go to the heart of Plaintiffs' much narrowed case.

Given the significant preference for live testimony, a party that opposes a trial subpoena on the ground of undue burden or unavailability "bears a heavy burden of proof." *Kirschner v. Klemons*, 99 CIV. 4828 (RCC), 2005 WL 1214330, at *2 (S.D.N.Y. May 19, 2005) (quoting *Irons v. Karceski*, 74 F.3d 1262, 1264 (D.C.Cir. 1995)). It is well established that "the burden of persuasion in a motion to quash a subpoena issued in the course of civil litigation is borne by the movant." *Concord Boat Corp. v. Brunswick Corp.*, 169 F.R.D. 44, 48 (S.D.N.Y.1996).

Defendants have told Plaintiffs that Fraas has serious medical issues and is having back surgery on Tuesday of next week to remove a tumor from his spine, and will not be able to travel until June. But Defendants have not offered an affidavit from Fraas or his treating physicians to explain why the surgery is certain to prevent Fraas from traveling for such a long period of time. Defendants should be required to provide an "affidavit or specific information regarding the manner and extent of the burden" before Fraas is found unavailable to testify at trial. *Kirschner*, 2005 WL 1214330, at *3 (finding party "has not met its burden" to show that a witness could not attend trial due to age and infirmity). With proper support, Plaintiffs might well agree that Fraas's presence at trial is not possible.

**B. In the event Fraas is unavailable to travel to New York, Plaintiffs should be permitted to take a trial deposition to present his testimony at trial.**

If Defendants meet their burden to show that Fraas is unable to travel to testify at the upcoming trial due to his surgery, the Court should permit Plaintiffs to take a trial, or "*de bene esse*,"[3] deposition of Fraas, at such time as he is medically capable of sitting for a deposition, and

---

[3] *See Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003) (*de bene esse* deposition is "one taken 'in anticipation of a future need'") (quoting Black's Law Dictionary 408 (7th

present his videotaped testimony to the jury at trial. "Depositions, *de bene esse,* are properly used when it is impossible for the witness to appear as required due to circumstances beyond that witness's control. The gravity of a final illness and the near certainty of a sudden death are, for example, grounds for such a deposition because there is a danger of the testimony being lost." *Bregman v. D.C.*, CIV.A.97-789 HHKJMF, 1998 WL 665018, at *1 (D.D.C. Sept. 28, 1998).

Ample precedent supports Plaintiffs' request. For one, Defendants have requested and been permitted to take two trial depositions of their own in the course of this litigation. First, after the parties had already incurred the expense of traveling to Florida to depose Defendant Sirianni at his home given that he was too ill to travel to New York, Defendants sought and were granted permission to take two additional depositions of Defendant Sirianni for use at trial. *See* Ex. D (correspondence between Debi Cornwall, Louis Freeman and Nadjia Limani); D.E. 147 (06-cv-6695). In addition, Defendants sought and were allowed to depose Plaintiffs' police practices expert, Russell Fischer, in the middle of trial, the day before his testimony. *See* 10/22/12 Tr. at 3870–71.

The Second Circuit has specifically approved of the use of a *de bene esse* deposition as a "substitute for trial testimony." *Manley v. AmBase Corp.*, 337 F.3d 237, 246–48 (2d Cir. 2003). In *Manley*, an 80-year-old witness living in California had already been deposed once in a discovery deposition, but was unable to testify at trial in New York. The district court ordered the parties to take a trial deposition on videotape, to be shown to the jurors in lieu of live testimony. *Id*; *see also E.E.O.C. v. Beauty Enterprises, Inc.,* CIV. 3:01CV378 AHN, 2008 WL 3892203, at *2 (D. Conn. July 9, 2008) ("The Second Circuit also has indicated that de bene esse depositions can be taken when a witness is simply outside the subpoena power of the court and

---

ed.1999)).

cannot be compelled to testify at trial.") (citing *Manley*, 337 F.3d at 247–48). The situation here is the same. As in *Manley*, the Court should order a *de bene esse* proceeding, at which the parties would conduct themselves "as though [they] were at trial." *Manley*, 337 F.3d at 248 (alteration in original); *see also RLS Associates, LLC v. United Bank of Kuwait PLC*, 01 CIV. 1290 (CSH), 2005 WL 578917, at *7 (S.D.N.Y. Mar. 11, 2005) (permitting party to take a trial deposition of a witness it had "intended to present . . . as a live witness at trial" when the witness moved to Dubai).

Thus far, Defendants have claimed only that Defendant Fraas's surgery will prevent him from traveling to New York; they have not asserted he would not be able to sit for a deposition in Arizona or testify remotely from that location. But although Defendants previously sought, and took, a trial deposition of Defendant Sirianni after he had been previously deposed, they now object to Plaintiffs' request to take a trial deposition of Defendant Fraas on the ground that Fraas has already testified in a deposition and at trial and no further questioning is necessary. As explained above, the prior testimony is not on videotape. A jury therefore will not be able to adequately evaluate the credibility of Defendant Fraas, which is critical. *See Kvetan v. Employers Contract Servs. of Miami*, 95 CIV. 10135, 1996 WL 376935, at *6 (S.D.N.Y. July 5, 1996) ("[T]he absence of a live witness would deprive the jury of the opportunity to evaluate demeanor, a potentially significant element in assessing credibility. Video technology, however, substantially alleviates this problem."). The absence of Fraas's live or videotaped testimony would be particularly problematic where the jury is already unable to assess the credibility through live testimony of other key Defendants, notably Volpe, Sirianni, and now potentially Dempsey.

In addition, Defendant Fraas' testimony at the prior trial was at times in direct conflict with his prior deposition testimony.[4] Plaintiffs must have an opportunity to question Defendant Fraas about those conflicts in front of the jury; if he is unavailable for such questioning at trial, Plaintiffs should be permitted to inquire about these conflicts using a trial deposition. *See, e.g.*, *Reeves v. Case W. Reserve Univ.*, 1:07-CV-1860, 2009 WL 3242049, at *15 (N.D. Ohio Sept. 30, 2009) (allowing party to reopen deposition of witness on "*any* topic" where witness' deposition testimony conflicted with witnesses subsequent declaration) (emphasis in original); *Nizami v. Hartford Fin. Servs. Grp.*, *Inc.*, 3:10CV970 SRU, 2012 WL 3596482, at *10 (D. Conn. Aug. 20, 2012) (rejecting request to take second deposition in light of conflicting testimony of a witness on the ground that "[t]he defendants will have the opportunity to inquire further into any perceived inconsistencies at trial"). Furthermore, this contradictory testimony on a critical issue makes the jury's ability to evaluate Fraas's credibility that much more important.

If the Court prefers, as an alternative to taking a trial deposition Plaintiffs could also present Fraas' testimony using "contemporaneous transmission" from his location. Fed. R. Civ. P

---

[4] For example, at his deposition in 2008, Fraas testified that he could only report that questioned hairs are "consistent" with known hairs after a microscopic exam, unless they are grossly dissimilar and thus excluded prior to microscopic exam. *See* 12/4/08 Tr. of Charles Fraas's Deposition at 74: 13-19. This is important because Defendant Volpe, in an affidavit filed just three days after John Restivo's van was searched, swore that hair had been found in the van that was consistent with the victim's. PX 157 at ¶ 10. Given that microscopic comparison takes weeks, it would not have been possible to report that the hairs were consistent with Theresa Fusco's just days after they had been collected. This lie in Volpe's affidavit thus supports Plaintiffs' claim that Defendants planted Theresa Fusco' hair that had been taken at autopsy among hairs that had been collected in the van in order to fabricate inculpatory evidence.

At the prior civil rights trial, however, presumably after Fraas had been made aware of the problem with Volpe's affidavit, Fraas testified that it was possible to report that questioned hairs are consistent with known hairs on the basis of similarities in gross characteristics, before any microscopic exam is complete. *See* 10/9/12 Tr. at 1882: 13–23. This contradiction on a key issue goes to the heart of Plaintiffs' claim that Defendants fabricated inculpatory hair evidence. The jury must not only learn of this contradiction, but be able to fully evaluate Fraas's credibility.

43(a) (allowing testimony to be presented via live feed for "good cause in compelling circumstances"); *see, e.g.*, *Virtual Architecture, Ltd. v. Rick*, 08 CIV. 5866 SHS, 2012 WL 388507, at *2 (S.D.N.Y. Feb. 7, 2012) (finding good cause to allow testimony of witness by contemporaneous transmission from a different location given travel difficulties, "the ready availability of effective two-way videoconferencing equipment, and the relevance to trial of the witness's testimony").

**II.     If the Court does not grant Plaintiffs' motion to preclude John Restivo's statement, Plaintiffs would request Defendant Dempsey testify at trial or, if he is unavailable, to take a trial deposition.**

As noted above, Plaintiffs do not object to presenting Dempsey's testimony using prior deposition and trial transcripts if the Court grants Plaintiffs' motion to exclude evidence of John Restivo's interrogation and statement. *See* D.E. 132 (06-cv-6720). Dempsey's testimony is primarily relevant to claims regarding the coerced statement, as Dempsey directly participated in the interrogation of John Restivo. Without it, Plaintiffs would not oppose using Dempsey's prior deposition and trial testimony for evidence on remaining issues.

If, however, the Court denies Plaintiffs' motion, Plaintiffs will need to establish that Mr. Restivo's statement was coerced.  Defendant Dempsey—the person who coerced Mr. Restivo into giving this false statement—will then become a critical witness, especially since the other officer present during the coercive interrogation, Defendant Volpe, is dead. In that event, for the same reasons discussed above, Plaintiffs would seek to have Defendant Dempsey testify at trial. Defendants' have informed Plaintiffs that Dempsey is currently in Florida caring for his wife. *See* Ex B. This, alone, is not a sufficient showing of unavailability. *See* Fed. R. Civ. P 32(a)(4); Fed. R. Evid. 804(a). If, however, Defendants are able to meet their heavy burden of showing

8

Defendant Dempsey is unavailable, Plaintiffs would seek leave to take a trial deposition or offer Defendant Dempsey's testimony via live feed.

**Conclusion**

Plaintiffs respectfully request that the Court order Defendants to produce Defendant Fraas for trial or make a showing that he is unable to travel to New York during the trial. If Defendants make such a showing, Plaintiffs seek leave to take a trial deposition of Fraas or present his testimony via live feed. If the Court denies Plaintiffs' motion to exclude John Restivo's statement, D.E. 132 (06-cv-6720), Plaintiffs make the same requests with respect to Defendant Dempsey.

Dated: March 7, 2014  
New York, NY

Respectfully submitted,

  /s/ Alexandra Lampert  
Barry C. Scheck  
Nick Brustin  
Anna Benvenutti Hoffmann  
Alexandra Lampert  
NEUFELD SCHECK & BRUSTIN, LLP  
99 Hudson St., 8th Floor  
New York, NY 10013

**Attorneys for Plaintiffs**  
**John Restivo and Dennis Halstead**