## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

---

JOHN RESTIVO, DENNIS HALSTEAD, MELISSA LULLO, JASON HALSTEAD, TAYLOR HALSTEAD, and HEATHER HALSTEAD,

        Plaintiffs,

        -against-

NASSAU COUNTY, CAROLANN HESSEMAN, AS EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE, in his individual capacity, ROBERT DEMPSEY, in his individual capacity, FRANK SIRIANNI, in his individual capacity, MILTON GRUBER, in his individual capacity, HARRY WALTMAN in his individual capacity ALBERT MARTINO, in his individual capacity, CHARLIE FRAAS, in his individual capacity, THOMAS ALLAN in his individual capacity, RICHARD BRUSA, in his individual capacity, VINCENT DONNELLY, in his individual capacity, MICHAEL CONNAUGHTON, in his individual capacity, WAYNE BIRDSALL, in his individual capacity, WILLIAM DIEHL, in his individual capacity, JACK SHARKEY, in his individual capacity, DANIEL PERRINO, in his individual capacity, ANTHONY KOZIER, in his individual capacity, Detective Sergeant CAMPBELL, (Shield #48), in his individual capacity, SEAN SPILLANE, in his individual capacity, RICHARD ROE SUPERVISORS #1-10, in their individual capacities,

        Defendants.

---

**PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**

06-CV-6720(JS)(SIL)

# Table of Contents

INTRODUCTION ............................................................................................................ 1

STATEMENT OF THE CASE ......................................................................................... 2

ARGUMENT .................................................................................................................... 6

I.  As prevailing parties, Plaintiffs are entitled to their attorney's fees and costs. ......... 6

II. The time spent by Plaintiffs' counsel is reasonable and should be compensated. .................... 7

    A.    Plaintiffs' attorneys expended a reasonable number of hours ............................................. 8

    B.    Plaintiffs are entitled to recover for time spent on all motions and issues. ....................... 12

III.  The hourly rates that Plaintiffs' counsel request are reasonable. ........................... 13

    A.    Plaintiffs' counsel are entitled to market rates for lawyers of their skill, reputation and experience ............................................................................................................. 14

    B.    Plaintiffs are entitled to hourly rates prevailing in the Southern District ......................... 15

        i.    The *Simmons* and *Arbor Hill* test has been satisfied .................................................. 15

        ii.    The rates sought here are appropriate for the Southern District ................................. 21

    C.    The requested Eastern District rates are reasonable for the Eastern District. .................. 25

    D.    The relevant *Johnson* and *Blum* criteria support the rate requests. .................................. 27

        i.    Experience, reputation, and ability of the attorneys .................................................. 27

        ii.    Customary fee charged by counsel and actual billing practice ................................. 32

        iii.    Previous awards to the counsel seeking fees .......................................................... 33

        iv.    The complexity of the litigation ............................................................................. 33

        v.    Current rates should be awarded ............................................................................. 33

    IV.  Plaintiffs are entitled to their reasonable costs ...................................................... 34

    CONCLUSION ........................................................................................................... 35

## Table of Authorities

**Federal Cases**

*A.R. ex rel. R.V. v. City of New York*, 407 F.3d 65 (2d Cir. 2005)................................................ 21

*Amaprop. Ltd. v. Indiabulls Financial Services, Inc.*, No. 10 Civ. 1853 (PGG),
2011 WL 1002439,  (S.D.N.Y. Mar. 16, 2011) .......................................................................... 22

*Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*,
522 F.3d 182, (2d Cir. 2007)........................................................................................ 15, 16, 19, 32

*Banco Centrale del Paraguay v. Paraguay Humanitarian Found., Inc.*,
No. 01 CIV. 9649 (JFK), 2007 WL 747814 (S.D.N.Y. March 12, 2007) .................................. 23

*Barbour v. City of White Plains*, 788 F. Supp. 2d 216 (S.D.N.Y. 2011)...................................... 21

*Barfield v. New York City Health and Hosps. Corp.*, No. 05 Civ. 6319 (JSR),
2006 WL 2356152 (S.D.N.Y. August 11, 2006) ........................................................................ 24

*Barrella v. Village of Freeport*, No. 12–CV–0348 (ADS)(WDW),
2014 WL 4273339 (E.D.N.Y. Oct. 29, 2014)............................................................................. 26

*Bender v. City of New York*, 92 Civ. 2288 (S.D.N.Y. March 31, 1995)....................................... 32

*Blum v. Stenson*, 465 U.S. 886 (1984) ................................................................................. 14, 22

*Canada Dry Delaware Valley Bottling Co. v. Hornell Brewing, Inc.*,
No. 11 Civ. 4308(PGG), 2013 WL 6171660 (S.D.N.Y. Nov. 25, 2013)................................... 25

*City of Riverside v. Rivera*, 477 U.S. 561 (1986) ....................................................................... 10

*DeCurtis v. Upward Bound Int'l*, No. 09 Civ. 5378(RJS),
2011 WL 4549412 (S.D.N.Y. September 27, 2011)................................................................... 22

*Demonchaux v. Unitedhealthcare Oxford*, No. 10 Civ. 4491(DAB),
2014 WL 1273772 (S.D.N.Y. March 27, 2014) ........................................................................ 24

*DiFillippo v. Morizio*, 759 F.2d 231 (2d Cir. 1985) ................................................................... 12

*Diplomatic Man, Inc v. Nike, Inc.*, No. 08 Civ. 139(GEL),
2009 WL 935674 (S.D.N.Y. Apr. 7, 2009)................................................................................. 23

*Encalada v. Baybridge Enterprises, Inc.*, No. 14 Civ. 3113(BMC),
2014 WL 4374495 (E.D.N.Y. Sept. 2, 2014) ............................................................................ 15

*Farbotko v. Clinton Cnty.*, 433 F.3d 204 (2d Cir. 2005) ............................................................ 14

*GAKM Res. LLC v. Jaylyn Sales Inc.*, No. 08 Civ. 6030(GEL),
2009 WL 2150891 (S.D.N.Y. July 20, 2009) ............................................................................ 23

*Gay Officers Action League v. Puerto Rico*, 247 F.3d 288 (1st Cir. 2001) ........................... 10, 11

*Gesualdi v. Diversified Carting, Inc.*, No. CV 10–2561(SIL),
2014 WL 5475357 (E.D.N.Y. October 29, 2014) ...................................................................... 27

*Gierlinger v. Gleason*, 160 F.3d 858 (2d Cir. 1998).................................................................... 8

*Grant v. Martinez,* 973 F.2d 96 (2d Cir. 1992), *cert. denied*, 506 U.S. 1053 (1993) .................... 32

*Gray v. Toyota Motor Sales, U.S.A. Inc.*, No. 10-CV-3081,
2013 WL 3766530 (E.D.N.Y. July 16, 2013)............................................................................. 35

*Guallpa v. N.Y. Pro Signs, Inc.*, No. 11 Civ. 3133(LGS)(FM),
2014 WL 2200393, (S.D.N.Y. May 27, 2014) ........................................................................... 22

*Gusman v. Unisys Corp.*, 986 F.2d 1146 (7th Cir. 1993) ............................................................ 17

*Gutman v. Klein,* No. 03–cv–1570, 2009 WL 3296072, (E.D.N.Y. Oct. 13, 2009)..................... 19

*Guzman v. Bevona*, No. 92 CIV. 1500 RPP, 1996 WL 374144 (S.D.N.Y. Jul. 3 1996) ............. 35

*Harvey v. Home Savers Consulting Corp.*, No. 07-CV-2645 (JG),

2011 WL 4377839 (E.D.N.Y. Aug. 12, 2011) ........................................................................ 20

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ..................................................................... 7, 15

*Huntington Branch NAACP v. Town of Huntington*, 961 F.2d 1048 (2d Cir. 1992) ................... 32

*Integrated Marketing and Promotional Solutions v. JEC Nutrition LLC*,
No. 06 Civ. 5640 (JFK), 2007 WL840304 (S.D.N.Y. March 19, 2007) ..................................... 23

*Jane L. v. Bangerter*, 61 F.3d 1505 (10th Cir. 1995) ........................................................... 32

*Johnson v. Georgia Highway Express, Inc*., 488 F.2d 714 (5th Cir. 1974) ................................ 15

*Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205 (11th Cir. 1983) ............. 9

*Kassim v. City of Schenectady*, 415 F.3d 246 (2d Cir. 2005) ................................................. 12

*Kim v. Kung Gang, Inc.*, No. 12 Civ. 6344(MHD), 2014 WL 2514705
(S.D.N.Y. June 2, 2014) ...............................................................................................21, 24, 25

*LeBlanc-Sternbrg v. Fletcher*, 143 F.3d 748 (2d Cir. 1998) .................................................. 34

*Lochren v. County of Suffolk,* 344 Fed. Appx. 706 (2d Cir. 2009) .......................................... 32

*Lochren v. County of Suffolk*, No. CV 01-3925(ARL),
2010 WL 1207418 (E.D.N.Y. Mar. 23, 2010) .............................................................. 26, 32, 33

*Luca v. County of Nassau*, 698 F. Supp. 2d 296 (E.D.N.Y. 2010) ......................................... 19

*Luciano v. The Olsten Corp.*, 109 F.3d 111 (2d Cir. 1997) .................................................... 32

*Martinez v. Bethlehem Steel Corp.*, 973 F.2d 96 (2d Cir. 1992) ............................................ 12

*Mawere v. Citco Fund Services (USA) Inc*, No. 09 Civ. 1342(BSJ)(DF),
2011 WL 6779319, *report and recommendation adopted*,
2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011) ..................................................................... 21

*Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK),
2007 WL 313474 (S.D.N.Y. February  1, 2007) ................................................................... 23

*Missouri v. Jenkins*, 491 U.S. 274  (1989) ........................................................................ 34

*Moreno v. City of Sacramento*, 534 F.3d 1106 (9th Cir. 2008) ................................................. 8

*Morris v. Bd. of Estimate*, CV 81-3920 (E.D.N.Y. April 28, 1995) ......................................... 32

*Nautilus Neurosciences v. Fares*, No. 13 Civ. 1078(SAS),
2014 WL 1492481 (S.D.N.Y. April 6, 2014) ...................................................................... 25

*New York Gaslight Club v. Carey*, 447 U.S. 54 (1980) ....................................................... 11

*Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292 (11th Cir. 1988) .................................. 12

*Olsen v. County of Nassau*, No. CV 05-3623 (ETB),
2010 WL 376642 (E.D.N.Y. Jan. 26, 2010) ....................................................................... 34

*Oz Mgmt. LP v. Ozdeal Inv. Consultants, Inc.,*  No. 09 Civ. 8665(JGK)(FM),
2010 WL 5538552 (S.D.N.Y. Dec. 6, 2010) ...................................................................... 22

*Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542 (2010) ..................................................... 7, 32, 34

*Perez v. Westchester Cnty. Dep't of Corr.*, 587 F.3d 143 (2d Cir. 2009) .................................... 8

*Planned Parenthood of Cent. New Jersey v. Attorney Gen. of New Jersey*,
297 F.3d 253 (3d Cir. 2002) .................................................................................... 9, 32

*Pyatt v. Raymond*, 10–CV–8764, 2012 WL 1668248 (S.D.N.Y. May 10, 2012) ...................... 23

*RBFC One. LLC v. Zeeks, Inc.*, No. 02 Civ. 3231(DFE),
2005 WL 2105541 (S.D.N.Y. Sept. 1, 2005) ....................................................................... 25

*Rozell v. Ross-Holst,* 576 F. Supp. 2d 527 (S.D.N.Y. 2008) ......................................... 21, 24, 32, 35

*Simmons v. New York City Transit Authority*, 575 F.3d 170 (2d Cir. 2009) ......................... 15, 16

*Stanczyk v. City of New York*, 752 F.3d 273 (2d Cir. 2014) ...................................................... 8

*Sub–Zero, Inc. v. Sub Zero N.Y. Refrigeration & Appliances Servs ., Inc.*,
13–CV–2548, 2014 WL 1303434, (S.D.N.Y. Apr. 1, 2014) ..................................................... 22

iii

*Thorsen v. County of Nassau*, No. CV 03–1022(ARL),
2011 WL 1004862 (E.D.N.Y. Mar. 17, 2011) ............................................................ 27
*Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41 (2d Cir. 2012) ................................. 14
*Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs.*
*Ltd. Liab. Co.*, 665 F. Supp. 2d 434 (S.D.N.Y. 2009) ................................................. 22
*Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 63 F.3d 516 (7th Cir. 1995) ....................... 12
*United States v. $61,900*, 856 F. Supp. 2d 484 (E.D.N.Y. 2012) ......................................... 18, 25
*United States v. City of New York*, No. 07–CV–2067 (NGG)(RLM),
2013 WL 5542459 (E.D.N.Y. August 30, 2013) ........................................................... 26, 27, 33
*Valley Disposal, Inc. v. Cent. Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053 (2d Cir. 1995) .. 13
*In re Visa Check/Mastermoney Antitrust Litigation,*
Master File No. 96–CV–5238, 2009 WL 3367059 (E.D.N.Y. Oct.15, 2009) .............................. 26
*Weather v. City of Mount Vernon*, No. 08 Civ. 192(RPP),
2011 WL 2119689 (S.D.N.Y. May 27, 2011) .......................................................... 24
*Wong v. Yoo*, No. 04–CV–4569 (JBW)(ALC), 2010 WL 4137532 (E.D.N.Y. Oct. 19, 2010).... 35

**Table of Exhibits from MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR ATTORNEY'S FEES AND COSTS**

Exhibit 1     Declaration of Andrew Celli

Exhibit 2     Declaration of Bruce Barket

Exhibit 3     2013 NLJ Billing Survey

Exhibit 4     *Atkins v. Miller* Order on Attorney's Fees

Exhibit 5     *Anglin v. City of Jersey City* Order on Attorney's Fees

Exhibit 6     *Rodriguez v. City of Houston* Order on Attorney's Fees

Exhibit 7     *Sarsfield v. City of Marlborough* Order on Attorney's Fees

Exhibit 8     *Gonzalez v. City of New York* Order on Attorney's Fees

Exhibit 9     Declaration of Leon Friedman

**Table of Exhibits from Supporting Declaration of Anna Benvenutti Hoffmann**

Exhibit 1     *Atkins v. Miller* Order on Attorney's Fees

Exhibit 2      2013 NLJ summary

Exhibit 3     Declaration of Barry Scheck

  3-A: Barry Scheck Resume

  3-B: Barry Scheck Hours

  3-C: *Rodriguez v. City of Houston* Order on Attorney's Fees

  3-D: *Sarsfield v. City of Marlborough* Order on Attorney's Fees

Exhibit 4     Declaration of Peter Neufeld

  4-A: Peter Neufeld Resume

  4-B: Peter Neufeld Hours

  4-C: *Atkins v. Miller* Order on Attorney's Fees

  4-D: *Anglin v. City of Jersey City* Order on Attorney's Fees

Exhibit 5      Declaration of Deborah Cornwall

  5-A: Deborah Cornwall Resume

  5-B: Deborah Cornwall Hours

Exhibit 6     Declaration of Monica Shah

  6-A: Monica Shah CV

  6-B: Monica Shah hours

v

Exhibit 7         Declaration of Sonam Henderson

                       7-A: Sonam Henderson CV

                       7-B: Sonam Henderson Hours

Exhibit 8          Declaration of Alexandra Lampert

                        8-A: Alexandra Lampert CV

                        8-B: Alexandra Lampert Hours

Exhibit 9         Declaration of Elizabeth Daniel Vasquez

                       9-A: Elizabeth Daniel Vasquez CV

                       9-B: Elizabeth Daniel Vasquez hours

Exhibit 10        Declaration of Josh Dubin with exhibit

                       10-A: Josh Dubin Hours

Exhibit 11        Anna Benvenutti Hoffmann Resume

Exhibit 12         Anna Benvenutti Hoffmann hours

Exhibit 13        Paralegal hours

**Table of Exhibits from Supporting Declaration of Nick Brustin**

Exhibit A          Nick Brustin CV

Exhibit B         Nick Brustin hours

                       B- Tab 1: Nick Brustin fee hours

Exhibit C         *Gonzalez v. City of New York* Order on Attorney's Fees

Exhibit D          Expenses

                       D-tab 1: Copying

                       D-tab 2: Shipping

                       D-tab 3: Discovery

                       D-tab 4: Trial cost

                       D-tab 5: Travel

                       D-tab 6: Investigation

                       D-tab 7: Transcripts

                       D-tab 8: Depositions

                       D-tab 9: Witnesses

                       D-tab 10: Docket expenses

D-tab 11: Jury consultants

Exhibit E        Xerox Expenses

Exhibit F        Westlaw Expens

## INTRODUCTION

This § 1983 suit sought to prove that Nassau County Police Detective Joseph Volpe caused the wrongful convictions and 18 years of wrongful imprisonment of Plaintiffs John Restivo and Dennis Halstead. Specifically, Plaintiffs alleged that Volpe planted the only physical evidence ever implicating the two innocent men: hairs from victim Theresa Fusco, alleged to have been found in John Restivo's van, but which had actually been hairs pulled from her head at autopsy. They further alleged that Volpe had buried exculpatory evidence: in light of Plaintiffs' innocence, this buried evidence likely pointed to the true perpetrator. A car had been stolen around the same time and within a mile of where Ms. Fusco disappeared; when it was found a week later, it was missing a rope (consistent with the murder weapon) and there was a pair of striped blue jeans, inside out, on the floor board (consistent with the striped jeans Ms. Fusco had been wearing when last seen, and which were never found).

The litigation—which has spanned eight years so far—has been exceptionally long and complicated: it included prolonged document and deposition discovery, six separate rounds of dispositive motions, extensive expert discovery culminating in a five-day *Daubert* hearing, and two separate trials (one three-month, one one-month). Defendants took an aggressive litigation posture throughout the case, vigorously opposing Plaintiffs at every turn.

Finally, in April 2014, Plaintiffs obtained a jury verdict that Defendant Volpe had maliciously prosecuted Mr. Restivo and Mr. Halstead and denied them a fair trial, causing each man's wrongful imprisonment; the jury awarded each Plaintiff $18 million in damages each. D.E. 198, 206. After post-trial motions, the Court entered judgment on that verdict last month. D.E. 228.

Having achieved outstanding success in this action, Plaintiffs are now entitled to their reasonable attorney's fees and costs. This motion seeks an award of $4,545,630.00 in attorney's fees on the merits and an additional $97,132.50 for preparing the attorney's fees petition for a total of $4,642,762.50, and $320,017.05 in expenses.

## STATEMENT OF THE CASE

After they were exonerated by DNA testing, Plaintiffs John Restivo and Dennis Halstead (through their counsel at Neufeld Scheck & Brustin, LLP[1]) filed this § 1983 civil rights action against Defendants Joseph Volpe, Nassau County, and other individual defendants in December 2006. Discovery, which stretched for nearly six years—until the eve of the first trial in September 2012—was long and complicated. The underlying Nassau County police and prosecution files alone were tens of thousands of pages, summarizing an investigation that spanned nearly two decades and involved over 400 witnesses. And Defendants did not answer discovery requests without a fight: Plaintiffs filed at least 11 motions to compel, and opposed an additional four motions for protective orders. Plaintiffs were ultimately successful in obtaining the discovery requested in nearly all of these instances.  The parties conducted a total of 35 depositions stretching over 54 deposition days. *See* 12/17/14 Declaration of Anna Benvenutti Hoffmann ¶¶ 6–7, 12–17.

Mr. Restivo and Mr. Halstead's liability and damage claims relied on the presentation of expert opinion testimony. Ultimately Plaintiffs served reports from nine separate experts, while Defendants noticed four of their own. There was litigation over the admissibility of the opinion testimony of eight of these experts, including a five-day *Daubert* hearing at which four were examined. Plaintiffs successfully opposed the motion to exclude the testimony of Dr. Houck, Mr.

---

[1] Formerly Cochran Neufeld & Scheck, LLP.

2

Petraco, Dr. DeForest, and Mr. Fischer, and successfully moved to exclude the testimony of Defendants' proffered experts. *See* Hoffmann decl. ¶ 9.

This case was then tried twice. The first trial, in fall 2012, lasted for 31 trial days over 11 weeks and included the presentation of 42 witnesses (27 by the Plaintiffs, 15 by the defense). The second, in spring 2014, lasted 17 trial days over almost five weeks, divided into two separate phases. It included the presentation of 40 witnesses (25 by the Plaintiffs, 15 by the defense). Each trial required extensive preparation and pretrial litigation: there were 12 motions *in limine* (seven by Plaintiffs, five by Defendants) in advance of the 2012 trial, and 10 more (five by Plaintiffs, five by Defendants) in advance of the 2014 trial. *See* Hoffmann decl. ¶ 8.

Throughout most of discovery and the first trial, Plaintiffs' case was joined with that of John Kogut, the third man who had also been wrongly convicted of the Theresa Fusco rape and murder. This joinder substantially complicated the legal and factual issues—given that Mr. Kogut had falsely confessed to the crime, while Mr. Restivo and Mr. Halstead never had. It also necessitated coordination and negotiation of schedules and, at times, strategy between the Restivo and Halstead team at NSB and Mr. Kogut's attorneys. *See* Hoffmann decl. ¶ 10.

Over the life of the case, there were also at least six rounds of briefing on dispositive motions—for judgment on the pleadings, 06-CV-6720 D.E. 58, 59, 65, 66, 68, 74, and then reconsideration of the Court's ruling, 06-CV-6695 D.E. 70, 71, 76, 78; for summary judgment, 06-CV-6695 D.E. 222, 223, 224, 241, 242, 243, 244–58, 284, 285; post-trial briefing after the first trial, 06-CV-6695 D.E. 457, 459, 462, and reconsideration of the Court's ruling, D.E. 490, 494, 495; and post-trial briefing after the second trial, 06-CV-6720 D.E. 215, 218, 220, 224. Plaintiffs were ultimately successful at each of these stages, culminating in the entry of the $18 million judgments in favor of Mr. Restivo and Mr. Halstead. *See* Hoffmann decl. ¶ 11.

3

As the prevailing parties in the litigation, Plaintiffs seek the following, if Southern

District rates are applied:

### NSB ATTORNEYS (SDNY RATES)

| Name | Rate Requested | Hours | Total |
|------|------|------|------|
| Barry Scheck | $700 | 633.2 | $443,240.00 |
| | $350 Travel | 41 | $14,350.00 |
| Peter Neufeld | $700 | 48.2 | $33,740.00 |
| Nick Brustin | $600 | 756.6 | $453,960.00 |
| Anna Benvenutti Hoffmann | $500 | 2,175.4 | $1,087,700.00 |
| | $250 Travel | 53.7 | $13,425.00 |
| Deborah Cornwall | $500 | 2,938 | $1,469,000.00 |
| | $250 Travel | 228 | $57,000.00 |
| Monica Shah | $400 | 329 | $131,600.00 |
| | $200 Travel | 8 | $1,600.00 |
| Sonam "Sandy" Henderson | $350 | 1,031 | $360,850.00 |
| | $175 Travel | 20 | $3,500.00 |
| Alexandra Lampert | $300 | 338.9 | $101,670.00 |
| | $150 Travel | 17.3 | $2,595.00 |
| Elizabeth Daniel Vasquez | $250 | 549.2 | $137,300.00 |
| | $125 Paralegal | 231.9 | $28,987.50 |
| Josh Dubin | $500 | 177.6 | $88,800.00 |
| Rachel Shur | $125 Paralegal | 688.3 | $86,037.50 |
| James Earl | $125 Paralegal | 114.2 | $14,275.00 |
| Sophie Glickstein | $125 Paralegal | 128 | $16,000.00 |
| Ashley Lewis Paralegal | $125 | 739.3 | $92,412.50 |

4

| TOTAL | $4,545,630.00 |
|---|---|

In addition, Plaintiffs request $320,017.05 in compensable costs, *see* Brustin decl. ¶¶ 29–

71, and the following for preparation of this fee petition:

### FEE PETITION (SDNY RATES)

| Name | Rate Requested | Hours | Total |
|---|---|---|---|
| Leon Friedman | $500 | 51.8 | $25,900.00 |
| Anna Benvenutti Hoffmann | $500 | 76.9 | $38,450.00 |
| Elizabeth Daniel Vasquez | $250 | 59 | $12,750.00 |
| Nick Brustin | $600 | 3.7 | $2,220.00 |
| Daniel Lander Paralegal | $125 | 126.5 | $15,812.50 |
| **TOTAL FOR FEE PETITION** | | | **$97,132.50** |

That makes the total request for fees and costs under Southern District rates $4,962,779.55.

In the alternative, if the Court finds it appropriate to apply Eastern District rates,

Plaintiffs request the following:

### NSB ATTORNEYS (EDNY RATES)

| Name | Rate Requested | Hours | Total |
|---|---|---|---|
| Barry Scheck | $600 | 633.2 | $379,920.00 |
| | $300 Travel | 41 | $12,300.00 |
| Peter Neufeld | $600 | 48.2 | $28,920.00 |
| Nick Brustin | $550 | 756.6 | $416,130.00 |
| Anna Benvenutti Hoffmann | $450 | 2,175.4 | $978,930.00 |
| | $225 Travel | 53.7 | $12,082.50 |
| Deborah Cornwall | $450 | 2,938 | $1,322,100.00 |
| | $225 Travel | 228 | $51,300.00 |
| Monica Shah | $350 | 329 | $115,150.00 |

| | $175 Travel | 8 | $1,400.00 |
|---|---|---|---|
| Sonam "Sandy" Henderson | $300 | 1,031 | $309,300.00 |
| | $150 Travel | 20 | $3,000.00 |
| Alexandra Lampert | $275 | 338.9 | $93,197.50 |
| | $137.50 Travel | 17.3 | $2,378.75 |
| Elizabeth Daniel Vasquez | $200 | 549.2 | $109,840.00 |
| | $100 Paralegal | 231.9 | $23,190.00 |
| Josh Dubin | $450 | 177.6 | $79,920.00 |
| Rachel Shur Paralegal | $100 | 688.3 | $68,830.00 |
| James Earl Paralegal | $100 | 114.2 | $11,420,00 |
| Sophie Glickstein Paralegal | $100 | 128 | $12,800.00 |
| Ashley Lewis Paralegal | $100 | 739.3 | $73,930.00 |
| **TOTAL** | | | **$4,106,038.75** |

### FEE PETITION (EDNY RATES)

| Name | Rate Requested | Hours | Total |
|---|---|---|---|
| Leon Friedman | $500 | 51.8 | $25,900.00 |
| Anna Benvenutti Hoffmann | $450 | 76.9 | $34,605.00 |
| Elizabeth Daniel Vasquez | $200 | 59 | $11,800.00 |
| Nick Brustin | $550 | 3.7 | $2,035.00 |
| Daniel Lander Paralegal | $100 | 126.5 | $12,650.00 |
| **TOTAL FOR FEE PETITION** | | | **$86,990.00** |

That makes the total request for fees and costs under Eastern District rates $4,513,045.80.

### <u>ARGUMENT</u>

**I.      As prevailing parties, Plaintiffs are entitled to their attorney's fees and costs.**

The purpose of the attorney's fees award provisions of the civil rights acts is to permit plaintiffs with valid claims to attract effective legal representation and thereby encourage private enforcement of civil rights statutes, to the benefit of the public as a whole. *See Hensley v. Eckerhart*, 461 U.S. 424, 444–45 (1983).[2] "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Id.* at 435. The Plaintiffs certainly achieved "excellent results"—judgments of $18 million each—and are entitled to a "fully compensatory fee." *Id.* Indeed, the U.S. Supreme Court recently recognized that an attorney representing a civil rights plaintiff may be appropriately awarded an enhancement to its lodestar fees where the "attorney's performance includes an extraordinary outlay of expenses and the litigation is exceptionally protracted"—as the litigation here has been. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 555 (2010). Plaintiffs however, *are not* seeking a fee enhancement, even in light of the extraordinary results achieved over the course of a protracted eight-year litigation. Thus, to give Plaintiffs their "fully compensatory fee," Plaintiffs' reasonable fee request, without upward enhancement, should be granted in full.

## II.    The time spent by Plaintiffs' counsel is reasonable and should be compensated.

"Both [the Second Circuit] and the Supreme Court have held that the lodestar—the

---

[2]  The Supreme Court in *Hensley* quoted from the Senate Report on the Civil Rights Attorney Fees Award Act as follows:

> All of these civil rights laws depend heavily upon private enforcement, and fee awards have proved an essential remedy if private citizens are to have a meaningful opportunity to vindicate the important Congressional policies which these laws contain. In many cases arising under our civil rights laws, the citizen who must sue to enforce the law has little or no money with which to hire a lawyer. If private citizens are to be able to assert their civil rights, and if those who violate the Nation's fundamental laws are not to proceed with impunity, then citizens must recover what it costs them to vindicate these rights in court. Senate Report 2; *see* House Report 1-3, U.S.Code Cong. & Admin.News 1976, p. 5910.

*Hensley*, 461 U.S. at 445 (footnote omitted).

product of a reasonable hourly rate and the reasonable number of hours required by the case—

creates a 'presumptively reasonable fee.'" *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d

Cir. 2011); *Perdue*, 559 U.S. at 552 ("[T]he lodestar method yields a fee that is presumptively

sufficient to achieve this objective [of securing attorneys to take on civil rights cases.]"); *see also*

*Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (reaffirming *Millea* holding).

The first step in setting the lodestar is to determine the amount of time reasonably

expended and therefore compensable. The number of hours reasonably expended is a "factual

issue whose resolution is committed to the discretion of the district court." *Perez v. Westchester*

*Cnty. Dep't of Corr.*, 587 F.3d 143, 156 (2d Cir. 2009) (internal citation and quotation omitted).

In making this factual determination, the Court may take into account both its own familiarity

with the litigation and the attorneys, as well as the general circumstances that apply to

contingency-fee civil rights cases. As the Ninth Circuit has noted:

> [L]awyers are not likely to spend unnecessary time on contingency fee cases in
> the hope of inflating their fees. The payoff is too uncertain, as to both the result
> and the amount of the fee. It would therefore be the highly atypical civil rights
> case where plaintiff's lawyer engages in churning. By and large, the court should
> defer to the winning lawyer's professional judgment as to how much time he was
> required to spend on the case; after all, he won, and might not have, had he been
> more of a slacker.

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). If the Court does conclude

that any hours for which compensation is sought should not be awarded, it must "state its reasons

for excluding those hours as specifically as possible." *Gierlinger v. Gleason*, 160 F.3d 858, 876

(2d Cir. 1998) (internal quotation omitted).

### A.  Plaintiffs' attorneys expended a reasonable number of hours

The total number of hours is exceedingly reasonable given the massive scope of this

litigation to date. The Declaration of Anna Benvenutti Hoffmann describes the long and difficult

path that this case took to the ultimate successful conclusion: two trials, totaling four months of

trial time; 35 depositions, spread over 54 deposition days, and tens of thousands of pages of document discovery; 13 separate expert reports and extensive litigation over the admissibility of eight expert opinions; six separate rounds of briefing on dispositive motions; joinder with the case of a separate plaintiff complicating the legal and factual issues; total litigation spanning eight years and over 675 docket entries. *See* Hoffmann decl. ¶¶ 5–11.

At any given time, the case was staffed by one senior partner, one junior partner, one (or, at most, two) associates, and one paralegal, with the time of the senior lawyers used sparingly. This is similar to the way Defendants staffed their legal team; indeed, Plaintiffs often had fewer and less senior lawyers representing them at critical depositions and trial than Defendants did. *See Planned Parenthood of Cent. New Jersey v. Attorney Gen. of New Jersey*, 297 F.3d 253, 272 (3d Cir. 2002) (holding fee awards for multiple attorneys appropriate because "the magnitude of the case mandated the help of numerous attorneys for both parties" and because staffing was appropriate given "the complexity and specialized medical knowledge necessary for the proper presentation of this case"). The division of work among the several attorneys working on the case at any one time was reasonable—by, for example, giving time-consuming work to the most junior (and therefore least expensive) associate or paralegal where possible, with supervision by the more senior attorneys as necessary. *See* Hoffmann Decl. ¶¶ 58–69 (describing the efficient manner in which this case was litigated). *See, e.g., Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983) ("The retaining of multiple attorneys in a significant, lengthy employment discrimination case such as this one is understandable and not a ground for reducing the hours claimed. The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work.").

NSB's expertise in § 1983 wrongful conviction suits like this one made its work much

9

more efficient and effective. So, too, did its dual representation of both Plaintiffs, and Mr. Scheck's prior familiarity with Mr. Restivo's case from representing him for eight years *pro bono*. *See* Hoffmann decl. ¶¶ 18–23.

It must be noted that Defendants vigorously litigated this case, objecting to producing discovery, filing motions to dismiss based on timeliness and qualified immunity, and generally opposing forward progress in the case. For example, Defendants repeatedly sought to prevent Plaintiffs from taking an oral deposition of lead defendant Joseph Volpe, briefing the issue three separate times. After Defendants' final unsuccessful motion on this issue—a procedurally improper motion under Rule 60, which does not apply to discovery issues—the Court concluded "in filing this motion, Defendants achieved nothing other than wasting judicial—and Client— resources. If Defendants continue such dilatory behavior in the future, the Court may resort to Rule 11 sanctions." 06-CV-6695, D.E. 57 at 6.  In total, Defendants aggressive approach to litigation required Plaintiffs to file at least 11 separate motions to compel discovery, and oppose another four motions for protective orders; Plaintiffs were ultimately successful in obtaining nearly all of the discovery sought. Defendants also routinely sought to re-litigate issues the Court had already ruled on, and consistently put Plaintiffs to their burden of proof, refusing to stipulate to even uncontroversial facts like what a prior Nassau County Attorney had testified to in a sworn declaration to the Court. *See* Hoffmann decl. ¶¶ 12–17.

While Defendants are entitled to choose an aggressive litigation posture, a party must be compensated for meeting the vigorous defense of the opposing party. *City of Riverside v. Rivera*, 477 U.S. 561, 581 n.11 (1986) (A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."); *see also Gay Officers Action League v. Puerto Rico,* 247 F.3d 288, 298 (1st Cir. 2001) ("After setting such a militant

tone and forcing the plaintiffs to respond in kind, it seems disingenuous for the [defendant] to castigate the plaintiffs for putting too many troops into the field.").

As demonstrated by the declarations filed with this motion, all of the hours requested are carefully documented in detailed contemporaneous time records. The attorneys seek compensation only for time reasonably expended, and have exercised billing judgment, discounting time where appropriate. Plaintiffs do not seek compensation for attorneys who performed only small amounts of work on the matter, regardless of the value of that work to the clients, or for any work performed by law clerks. Hoffmann decl. ¶ 23. In addition, the hours requested *understate* the work actually performed by many of the attorneys, in some cases substantially. For example, the hours requested for lead counsel Barry Scheck exclude much of his deposition and trial preparation time, undercounting his actual hours worked by many hundreds of hours. *Id.* ¶ 23(b). There were many more unrecorded hours for which compensation is not sought. *Id.* ¶¶ 70–71. Nor, as a matter of billing discretion, are Plaintiffs seeking compensation for time spent solely on the dismissed *Monell* claim or familial association claims. *Id*. ¶ 23(f).[3]

Plaintiffs could have sought compensation for the hours spent on reversing the original convictions. All of these pre-litigation activities are compensable since they were a necessary predicate for the current litigation. *See New York Gaslight Club v. Carey*, 447 U.S. 54 (1980). But Plaintiffs are not seeking compensation for those hours.

Since Plaintiffs were successful on their claims, their attorneys are entitled to be compensated for all their reasonable hours.

---

[3] Plaintiffs voluntarily dismissed their *Monell* claim in advance of the second trial to assist in narrowing the issues and because Nassau County had already agreed to fully indemnify the individual defendants.

11

**B.  Plaintiffs are entitled to recover for time spent on all motions and issues.**

Plaintiffs are also entitled to be compensated for time spent on the few motions and issues on which they did not prevail. Federal courts have emphasized that the reasonableness of a lawyer's expenditure of time is not based upon an analysis of whether the time in fact contributed toward a successful resolution. "The relevant issue, however, is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Martinez v. Bethlehem Steel Corp.*, 973 F.2d 96, 99 (2d Cir. 1992).

The question in every case is whether the time expenditure would have been reasonable under the standards of the private bar. Since private counsel are paid by their clients for their efforts on motions which are not successful, the same standard must be applied in a fee award under the civil rights act. "The reasonableness of the time expended must . . . be judged by standards of the private bar." *DiFillippo v. Morizio*, 759 F.2d 231, 235 (2d Cir. 1985). Likewise, the "measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done." *Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1306 (11th Cir. 1988). Time spent on losing theories or on losing issues is still compensable if plaintiff is found to be a prevailing party in the case as a whole. So long as the suit as a whole involved a "common core of facts" and involved "related legal theories," all the time spent on the case—including time spent on losing motions—must be compensated. *See Kassim v. City of Schenectady*, 415 F.3d 246, 253 (2d Cir. 2005); *see also Uniroyal Goodrich Tire Co. v. Mut. Trading Corp.*, 63 F.3d 516, 526 (7th Cir. 1995) ("[The defendant] seeks to exclude fees incurred for any work performed by Uniroyal's attorneys on motions which were eventually denied. . . . Common sense, however, informs us that such a rule is inappropriate.").

12

Thus all the time spent on the initial unsuccessful trial is fully compensable. The Second

Circuit explained in *Gierlinger v. Gleason*:

> [A] § 1983 plaintiff's eligibility for an award of fees under § 1988 does not
> depend on her success at interim stages of the litigation, but rather depends on the
> ultimate outcome of the litigation.  A plaintiff is a prevailing party in the litigation
> within the meaning of § 1988 if she has "received actual relief on the merits of
> h[er] claim," and she should not necessarily be denied fees for hours expended on
> interim stages of the case in which a ruling was made in favor of the party against
> whom she ultimately prevailed. * * * *   Given the goal of § 1988 to compensate
> a plaintiff for what it has reasonably cost to obtain vindication of her meritorious
> civil rights claim, we conclude that it was an abuse of discretion to deny
> Gierlinger attorneys' fees with respect to services performed in connection with
> [the first trial]. We recognize that the principal error that led to that reversal was
> also not the fault of [the defendant]. . . But as between the prevailing party and the
> person the jury has found to be the wrongdoer, it is the latter who should properly
> bear the expenses reasonably incurred by the prevailing party.

160 F.3d at 880–881 (internal citations omitted). Here, the retrial was required due to jury

confusion created by the jury instructions Defendants requested—and to which Plaintiffs

objected, 06-CV-6695 D.E. 489 at 11–15. But even if Defendants had not been responsible for

the error, under *Gierlinger*, the fees incurred for the first trial would still compensable.

Time spent in preparing the fee application is also compensable. *See Valley Disposal, Inc.*

*v. Cent. Vermont Solid Waste Mgmt. Dist.*, 71 F.3d 1053, 1060 (2d Cir. 1995) ("[A] successful

applicant for § 1988 attorneys' fees should be awarded the costs of bringing its § 1988

application.").  Including Leon Friedman's work on this motion, Plaintiffs seek a total of 191.4

attorney hours and 126.5 paralegal hours for preparing the instant fee petition.

**III.    The hourly rates that Plaintiffs' counsel request are reasonable.**

Plaintiffs are seeking reimbursement for time expended at the hourly rates of $700 for

Barry Scheck and Peter Neufeld; $600 for Nick Brustin; $500 for Anna Benvenutti Hoffmann,

Deborah Cornwall, and Josh Dubin; $400 for Monica Shah; $350 for Sonam Henderson; $300

for Alexandra Lampert; and $250 for Elizabeth Daniel Vasquez. These rates are reasonable.

13

**A.  Plaintiffs's counsel are entitled to market rates for lawyers of their skill, reputation and experience.**

The process of determining the appropriate hourly rate requires weighing a number of factors. The Supreme Court has declared that the reasonable hourly rate to be applied in awarding fees under statutory fee provisions is the "prevailing market rate," that is, the rate that lawyers of similar skill, reputation and experience would charge in the legal market of that geographic area. That rate is determined, as the Supreme Court held in *Blum v. Stenson*, 465 U.S. 886, 895–96 & n. 11 (1984), by examining the "prevailing market rates in the relevant community" for "similar services by lawyers of reasonably comparable skill, experience and reputation."  Quoting from the Senate Report on the Civil Rights Attorneys Fees Act, the Supreme Court noted that: "'It is intended that the amount of fees awarded under [§ 1988] be governed by the same standards which prevail in other types of equally complex Federal litigation, such as antitrust cases.'" *Blum*, 465 U.S. at 893 (quoting Senate Report No. 1011, 94th Cong., 2d Sess., 5 U.S. Cong. & Admin. News, p. 5908, 5913 (1976)).

A court must initially determine what lawyers of comparable skill and experience, handling other complex litigation, charge their private clients, as "the rates charged in private representations may afford relevant comparisons." *Id.* at 895, n.11. The Second Circuit has noted: "[T]his Court has instructed that determination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,' an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'" *Townsend v. Benjamin Enters., Inc.,* 679 F.3d 41, 59 (2d Cir. 2012) (quoting *Farbotko v. Clinton Cnty.,* 433 F.3d 204, 209 (2d Cir. 2005)).

14

Other factors relating to the determination of hourly rates were suggested in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), and accepted by the Supreme Court as relevant to arriving at the appropriate rate. *See Hensley*, 461 U.S. at 430–31. These include (1) the experience, reputation and ability of the attorneys; (2) the customary fee charged by counsel and actual billing practice, to the extent they support the request; and (3) previous awards to the counsel seeking fees. Courts have also noted: (4) "the reasonable hourly rate should reflect the complexity of the particular case." *Encalada v. Baybridge Enterprises, Inc.*, No. 14 Civ. 3113(BMC), 2014 WL 4374495 *2 (E.D.N.Y. Sept. 2, 2014).

### B.  Plaintiffs are entitled to hourly rates prevailing in the Southern District

*i.   The* Simmons *and* Arbor Hill *test has been satisfied*

The hourly rates awarded in a fee petition are generally the rates awarded in the forum where the case is litigated, but in exceptional circumstances out-of-district rates may be awarded. In *Simmons v. New York City Transit Authority*, the Second Circuit held that to overcome the presumption of in-district rates, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." 575 F.3d 170, 175 (2d Cir. 2009); *see also Arbor Hill Concerned Citizens Neighborhood Association v. County of Albany*, 522 F.3d 182, 184 n.2 (2d Cir. 2007) ("[A]ttorneys—regardless of whether they are pursuing litigation on behalf of a paying client or a non-paying client—should receive out-of-district fees only if a reasonable, paying client would have retained out-of-district counsel."). "In determining whether a litigant has established such a likelihood, the district court must consider experience-based, objective factors [such as] counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise." *Simmons*, 575 F.3d at 175–76. Further, "[a]mong the ways an applicant may make such a showing is by establishing that local counsel

possessing requisite experience were unwilling or unable to take the case, or by establishing, in a case requiring special expertise, that no in-district counsel possessed such expertise." *Id.* at 176 (internal citation omitted).

That test is met here. NSB has particular expertise in litigating § 1983 wrongful conviction suits—a particularly difficult and complicated area of the law. As demonstrated by the declarations of Ms. Hoffmann, Mr. Celli, and Mr. Barket, there do not appear to be any Eastern District lawyers with past successes in § 1983 wrongful conviction suits, let alone knowledge and expertise approaching what NSB has attained. *See* Hoffmann decl. ¶¶ 25–36; Celli decl. ¶¶ 1–14 (attached as Exhibit 1); Barket decl. ¶¶ 1–6 (attached as Exhibit 2). Indeed, Plaintiffs' verdict here appears to be the first plaintiff's jury verdict in a § 1983 wrongful conviction suit to sustain post-verdict challenge in all of New York. *See* Hoffmann decl. ¶ 29. And given the difficulties of a case like this, hiring a firm like NSB with special expertise litigating § 1983 wrongful conviction suits will "likely (not just possibly) produce a substantially better net result." *Simmons*, 575 F.3d at 173. In other words, Plaintiffs meet the test laid out by the Second Circuit in *Arbor Hill*: "retention of an out-of-district attorney was reasonable under the circumstances as they would be reckoned by a client paying the attorney's bill." 522 F.3d at 191. Here, a reasonable fee-paying client would chose an attorney with sufficient experience to navigate the highly complicated field of § 1983 wrongful conviction law. That means an out-of-district firm like NSB.

The fact that Manhattan lawyers may charge more than Brooklyn or Long Island attorneys has not deterred clients from crossing the East River bridges. That speaks to the value of those attorneys' skills and experience, relative to their fees. Indeed, a more expensive but more experienced lawyer may end up costing the client less money, as Judge Easterbrook has

noted:

> Lawyers do not come from cookie cutters. Some are fast studies and others require extra preparation. Some are more nimble on their feet and apt to achieve better results at trial. Some have deeper insight and in a few hours may find ways to prevail (or to curtail costly discovery) that will elude their colleagues. Clients are willing to pay more, per hour, for these better lawyers. A $225 per hour lawyer may end up costing less than a $150 lawyer for the same result or may produce better results for the same total bill. Markets recognize these truths; judges must too.

*Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993).

NSB certainly qualifies as an "experience-based" firm that was poised to achieve success on behalf of Plaintiffs John Restivo and Dennis Halstead. NSB has a particular expertise in § 1983 wrongful conviction law suits, having litigated dozens around the country over the past 15 years, including a dozen in New York State alone. And NSB has had remarkable success while doing so, obtaining leading appellate decisions and groundbreaking verdicts and settlements for its clients. *See, e.g., Deskovic v. Peekskill*, No. 07-CV-8150 (S.D.N.Y. 2014) ($41.65 million jury verdict in § 1983 wrongful conviction suit); *Barr v. Kachiroubas*, Case No. 08-CV-8327 (N. D. Ill. 2014) ($40 million total settlement shared among five men wrongly convicted of rape and murder); *Halsey v. Pfeiffer*, 750 F.3d 273 (3rd Cir. 2014) (denying defendants' motion for summary judgment in full, permitting wrongly convicted plaintiff to proceed to trial on § 1983 claims based on fabrication, malicious prosecution, and coercion).

NSB's expertise is particularly important in a field as complicated as this one, which requires an understanding of interlocking immunities, the effect on this suit of prior state judgments, and facility with an extensive body of case law unique to this area. *See* Hoffmann decl. ¶¶ 25–36. Furthermore, there are no lawyers with primary offices in the Eastern District who have obtained a successful jury verdict in a § 1983 wrongful conviction suit, let alone any

firms with experience in this area in any way comparable to NSB's.[4] Markets also recognize the truth that the more important the case—in terms of both interests and dollars at stake—the more a fee-paying client would be willing to pay for his legal representation. It is hard to imagine an individual civil rights case touching on more important interests or considering a larger scope of damages than this one. In addition, lead counsel Barry Scheck entered this case with a familiarity with both the arcane forensic fields at issue, from his work at the Innocence Project, and with the specific underlying facts of this prosecution, having represented Mr. Restivo *pro bono* for eight years. *See* Hoffmann decl. ¶¶ 21, 33–34.

Furthermore, if the model for determining attorney's fees is the normal market for legal services, a court should examine how often an *ordinary* client from the Eastern District seeks an attorney from Manhattan, particularly in civil rights cases. From October 1, 2013, to September 30, 2014, there have been 2,324 cases decided in the Eastern District.[5] Of that number 1,119 involved lawyers whose address is "New York, NY" the designation used by WESTLAW for Manhattan based lawyers. Thus in 48% of the cases, either the defendant or the plaintiff went to Manhattan to find a wider choice of lawyers.[6]

---

[4] As noted in Ms. Hoffmann's declaration, although there are a handful of distinguished Eastern District civil-rights lawyers, including notably Fred Brewington, none appear to have any experience successfully litigating a § 1983 wrongful conviction suit, and the handful of experienced civil rights lawyers could not handle all civil rights cases that arise in the Eastern District. *See* Hoffmann decl. ¶¶ 27–30.

[5] There were 2,324 decisions reported in Westlaw between October 1, 2013 and September 30, 2014  with the designation "E.D. New York," the designation used by Westlaw to indicate cases from the Eastern District.

[6]  These numbers confirm Judge Cogan's observation in a recent case that 60% of the lawyers appearing before him have offices in Manhattan. *See United States v. $61,900*, 856 F. Supp. 2d 484, 493 (E.D.N.Y. 2012) ("I and other judges in this district have previously noted the artificiality of this rigid forum-based rule in the context of the Eastern District of New York and the Southern District of New York because they form a unitary market for legal services. Over 60% of the lawyers appearing in civil cases before me have their offices in the Southern District of New York, with the remainder split about evenly between the Eastern District of New York

There were 528 decisions involving "civil rights" filed among the total of 2,324 decisions. Of those 528 decisions, 265 involved pro se plaintiffs, leaving 263 counseled cases. Among those 263 cases, 179 involved lawyers from "New York, NY" that is, Manhattan.[7] That means that 68% of the civil rights cases filed in the last year in the Eastern District involved a lawyer from Manhattan representing either the plaintiff or the defendant.

That does not mean that it was only the plaintiff who hired a Manhattan lawyer. Indeed in this very case, Defendants hired Manhattan counsel to defend themselves. It would be difficult to assert that while Defendants were allowed to hire Manhattan counsel, Plaintiffs were not allowed to do so.In any event, that Defendants often hire Manhattan counsel simply shows that the legal market as a whole comes to Manhattan for legal representation on a regular basis and that attorneys participating in the Eastern District court often keep offices in Manhattan. As the Second Circuit held in *Arbor Hill*, the standard for deciding attorney's fees is determining where an ordinary client would look for proper representation, that is, whether "his or her retention of an out-of-district attorney was reasonable under the circumstances." *Arbor Hill*, 522 F. 3d at 191. Since 68% of Eastern District non-pro-se, civil rights cases involve lawyers from Manhattan, it

and other districts across the country.") (citing *Luca v. County of Nassau*, 698 F. Supp. 2d 296, 300–01 (E.D.N.Y. 2010); *Gutman v. Klein*, No. 03–cv–1570, 2009 WL 3296072, at *2 n. 1 (E.D.N.Y. Oct. 13, 2009)).

[7] These numbers are achieved in the following manner: Add the term "civil rights" to the designation "E.D., New York." There are 528 cases with those two search terms. If one then adds "New York, NY" to those search terms, the result is 265, meaning that in those 528 civil rights cases, one of the attorneys (either plaintiff or defendant) came from Manhattan. (A check was performed to ensure that this term was used in reference to the location of at least one party's attorney, rather than elsewhere in the text of the decision. In only one instance was this not true.) If one adds the search term "pro se" to the original 528 civil rights cases, the result is 265, leaving  263 non-pro-se civil rights cases. If one adds "New York NY" to the 265 pro se cases the result is 86, meaning that either the pro se plaintiff came from Manhattan or the defendant's lawyer came from Manhattan (usually a lawyer from either the city law office or the state attorney general's office).  Subtracting 86 from the 265 "New York NY" cases, the result is 179 cases.

was certainly reasonable for Plaintiffs in this case to hire Manhattan counsel, especially as that

was the only way to hire an experienced civil rights firm which was knowledgeable in § 1983

wrongful conviction cases.

Under almost exactly the same circumstances, a Magistrate Judge in the Eastern District

found that the *Simmons* test had been met and applied Manhattan rates in a civil rights case. In

*Harvey v. Home Savers Consulting Corp.*, No. 07-CV-2645 (JG), 2011 WL 4377839 (E.D.N.Y.

Aug. 12, 2011), the Staten Island Legal Services (SILS) brought a housing discrimination case

under 42 U.S.C. § 1981 & 1982 and other laws. SILS soon determined that it did not have the

resources to represent the plaintiffs properly. It sought help from many experienced firms in the

New York area. Eventually the Manhattan law firm of Emery, Celli, Brinkerhoff & Abady was

the only firm that agreed to take over the case, and the plaintiffs were successful. In their fee

petition, the lawyers sought Manhattan rates, and the Magistrate Judge recommended that such

rates be applied:

> Given this history, I have no reason to doubt the assertion of Margaret Becker,
> plaintiffs' lead attorney at SILS, that plaintiffs would have been unable to find a
> firm to act as co-counsel with sufficient resources and experience had they limited
> their search to law firms based in the Eastern District. According to Ms. Becker,
> SILS continues to handle predatory lending cases similar to this one, but has yet
> to find a law firm outside of the Southern District that has the necessary resources
> and experience to act as co-counsel, and is willing to do so. Given SILS' limited
> resources, plaintiffs' substantial but unsuccessful efforts in finding an adequate
> Eastern District firm to act as co-counsel, and the results that ECBA helped attain,
> plaintiffs have made a sufficiently particularized showing that it was reasonable to
> select out-of-district counsel in this case. Accordingly, I will consider plaintiffs'
> fee application in light of the rates that prevail in the Southern District of New
> York.

*Id.* at *4 (internal citations omitted).

The Second Circuit has noted the problem of reducing hourly rates in one district to the

rates in a closely related district, namely that it may discourage Manhattan-based lawyers from

20

taking on civil rights cases in the Eastern District. Indeed the large number of pro se civil rights cases brought in the Eastern District (footnote 7, *supra*) may be an example of this problem:

> If [hourly rates] are lower than those in another district, skilled lawyers from such other district will be dissuaded from taking meritorious cases in the district with lower rates. If lawyers are paid for their participation in IDEA proceedings that clearly arise in Queens at a rate considerably lower than what they are paid for representation in proceedings that clearly arise in Manhattan, experienced, Manhattan-based lawyers  . . . may decide to devote their time and expertise to IDEA cases that arise in Manhattan rather than those cases in which parents are equally needful of their services, but that arise in Queens.

*A.R. ex rel. R.V. v. City of New York*, 407 F.3d 65, 81 (2d Cir. 2005).

### ii.  The rates sought here are appropriate for the Southern District

The rate requested for Mr. Scheck and Mr. Neufeld—$700 an hour—is reasonable. Civil rights lawyers with less experience than Mr. Scheck and Mr. Neufeld, who each have nearly 40 years of experience, have been awarded fees of $650 and $600 per hour in the Southern District in civil rights cases. In *Mawere v. Citco Fund Services (USA) Inc*, No. 09 Civ. 1342(BSJ)(DF), 2011 WL 6779319, *report and recommendation adopted*, 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011), the court awarded an attorney with 32 years of experience in defending employers an hourly rate of $650 in a civil rights case. In 2011, *Barbour v. City of White Plains*, 788 F. Supp. 2d 216, 225 (S.D.N.Y. 2011) the court awarded $625 an hour to a civil rights litigator with less than 30 years' experience. Six years ago, in *Rozell v. Ross-Holst,* 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008), two experienced civil rights attorneys were awarded hourly rates of $600. *See also Kim v. Kung Gang, Inc.*, No. 12 Civ. 6344(MHD), 2014 WL 2514705 at *2 (S.D.N.Y. June 2, 2014) (awarding $600 per hour to experienced litigator).

Mr. Brustin's requested rate of $600 is also supported by precedent. Earlier this year, a Southern District court awarded a partner with exactly the same number of years experience as Mr. Brustin the same $600 rate he seeks. *Guallpa v. N.Y. Pro Signs, Inc.*, No. 11 Civ.

3133(LGS)(FM), 2014 WL 2200393, at *10 (S.D.N.Y. May 27, 2014). And three years ago, in *DeCurtis v. Upward Bound Int'l,* No. 09 Civ. 5378(RJS), 2011 WL 4549412 (S.D.N.Y. September 27, 2011), an attorney with only 16 years of experience (as opposed to Mr. Scheck's 40 years' experience, Mr. Neufeld's 39 years, and Mr. Brustin's 19 years), was awarded an hourly fee of $550.

The rates requested are also consistent with rates awarded to senior litigators in other areas of complex federal litigation, which is supposed to be the measure for civil rights attorneys as well. *See Blum,* 465 U.S. at 893–96 & n. 11 (requiring courts to examine the "prevailing market rates in the relevant community" for "similar services by lawyers of reasonably comparable skill, experience and reputation."). In non-civil rights cases, such as copyright and trademark cases, lawyers with far less experience than Mr. Neufeld or Mr. Scheck have received hourly rates above $700. *See Amaprop. Ltd. v. Indiabulls Financial Services, Inc.*, No. 10 Civ. 1853 (PGG), 2011 WL 1002439, at *5  (S.D.N.Y. Mar. 16, 2011) (awarding hourly rate of $761 for senior partner in arbitration case; noting courts in the Southern District have approved rates of $845 and $885 for experienced partners); *Sub–Zero, Inc. v. Sub Zero N.Y. Refrigeration & Appliances Servs ., Inc.*, 13–CV–2548, 2014 WL 1303434, at *8–9 (S.D.N.Y. Apr. 1, 2014) (collecting cases and accepting rates of $785 and $485 for two experienced attorneys); *Union of Orthodox Jewish Congregations of Am. v. Royal Food Distribs. Ltd. Liab. Co.,* 665 F. Supp. 2d 434, 437 (S.D.N.Y. 2009) (finding partner and associate rates of $735 and $445, respectively, reasonable); *Oz Mgmt. LP v. Ozdeal Inv. Consultants, Inc.,*  No. 09 Civ. 8665(JGK)(FM), 2010 WL 5538552, at *3 (S.D.N.Y. Dec. 6, 2010) (approving "discounted rate [of $657] as within the range of rates for law firm partners in the New York City area with significant intellectual property law experience"); *report and recommendation adopted,* 2011 WL 43459 (S.D.N.Y. Jan.

5, 2011); *GAKM Res. LLC v. Jaylyn Sales Inc.*, No. 08 Civ. 6030(GEL), 2009 WL 2150891, at

*7–8 (S.D.N.Y. July 20, 2009) (approving $600 to $650 hourly rate for intellectual property

attorneys at a national law firm with 20–30 years' experience, without any findings by the court

about those lawyers' skill or reputation); *Diplomatic Man, Inc v. Nike, Inc.,* No. 08 Civ.

139(GEL), 2009 WL 935674, at *5–6 (S.D.N.Y. Apr. 7, 2009) (finding rates of $650 per hour

for a partner in a New York firm "perfectly reasonable"); *Pyatt v. Raymond,* 10–CV–8764, 2012

WL 1668248, at *6 (S.D.N.Y. May 10, 2012) (collecting cases approving rates ranging from

$400 to $650 for partners).

  The rates requested by Mr. Scheck, Mr. Neufeld, and Mr. Brustin are also consistent with

rates charged by experienced counsel in the Southern District. In the 2013 National Law Journal

Billing Survey, at 16 of the 25 firms listed senior partners in New York firms were charging over

$1000 an hour: Gibson Dunn & Crutcher ($1800); Kasowitz, Benson, Torres & Friedman

($1195); Skadden Arps Slate Meacher & Flom ($1150); Paul, Weiss, Rifkind, Wharton &

Garrison ($1120); Latham and Watkins ($1110); Fried Frank Harris Shriver & Jacobson ($1100);

Dechert ($1095); Willkie Farr & Gallagher ($1090); Kaye Scholer ($1080); Debevoise &

Plimpton ($1075); Quinn Emanuel Urquhart & Sullivan ($1075); Weil, Gotshal & Manges

($1075); Cadwalader, Wickersham & Taft ($1050); White & Case ($1050); DLA Piper ($1025);

Kramer Levin Naftalis & Frankel ($1025).[8] At 17 of these 25 firms, senior *associates* were

---

[8] The National Law Journal Billing section is often used by federal courts to determine
appropriate hourly rates in attorneys' fees cases. *See, e.g., Integrated Marketing and
Promotional Solutions v. JEC Nutrition LLC*, No. 06 Civ. 5640 (JFK), 2007 WL840304, at *2
(S.D.N.Y. March 19, 2007); *Banco Centrale del Paraguay v. Paraguay Humanitarian Found.*,
*Inc.*, No. 01 CIV. 9649 (JFK), 2007 WL 747814, at *2 (S.D.N.Y. March 12, 2007) (motion to
compel; awarding hourly fee of $700 per hour for senior partner in Hughes & Hubbard, based on
NLJ listing); *In re Merrill Lynch & Co. Research Reports Sec. Litig.*, No. 02 MDL 1484 (JFK),
2007 WL 313474 (S.D.N.Y. February 1, 2007) (class action securities cases; upholding hourly
rates of $850, $665 and $650 for New York lawyers, based on NLJ listings); *Barfield v. New*

charging hourly rates greater than the $700 rate sought for Mr. Scheck and Mr. Neufeld, and the $600 sought for Mr. Brustin: White & Case ($1050); Davis Polk & Wardwell ($975); Gibson Dunn & Crutcher ($930); Skadden Arps Slate Meacher & Flom ($845); Weil, Gotshal & Manges ($790); Willkie Farr & Gallagher ($790); Curtis Mallet-Prevost, Colt & Mosle ($785); Jones Day ($775); Debevoise & Plimpton ($760); Fried Frank Harris Shriver & Jacobson ($760); Paul, Weiss, Rifkind, Wharton & Garrison ($760); Paul Hastings ($755); Cadwalader, Wickersham & Taft ($750); DLA Piper ($750); Kramer Levin Naftalis & Frankel ($750); Dechert ($735); Latham and Watkins ($725). *See* Hoffmann decl. ¶¶ 51–54; 2013 NLJ Survey (attached as Exhibit 3).

The $500 rate sought for junior partners Ms. Hoffmann and Ms. Cornwall, as well as co-counsel Mr. Dubin, is also reasonable. *See Demonchaux v. Unitedhealthcare Oxford*, No. 10 Civ. 4491(DAB), 2014 WL 1273772, at *7 (S.D.N.Y. March 27, 2014) (approving $500.00 per hour for senior associates); *Kim*, 2014 WL 2514705 at *2 (awarding $450 to lawyer with 7 or 8 years experience). As noted above, senior *associates* in the New York market often command over $700 an hour—which is the rate Mr. Dubin charges and collects from his clients, and is $200 more an hour than he seeks here. *See* Hoffmann decl. ¶¶ 53–55.

The rates Plaintiffs seek for associates are also supported by the evidence. The highest associate rate Plaintiffs seek—$400—is for Monica Shah, who has 9 years' experience. That is well below the $500 rate that, as noted above, has previously been awarded to senior associates. *See also Weather v. City of Mount Vernon*, No. 08 Civ. 192(RPP), 2011 WL 2119689 (S.D.N.Y. May 27, 2011) (awarding $400 per hour to senior associate); *Rozell*, 576 F. Supp. 2d at 546 (six years ago, awarding $350 an hour to associate with 7 years' experience in a "relatively

---

*York City Health and Hosps. Corp.*, No. 05 Civ. 6319 (JSR), 2006 WL 2356152 (S.D.N.Y. August 11, 2006) (FLSA case; awarding fifth year lawyer $350 per hour based on NLJ listing).

straightforward case"). In addition, rates of $350 per hour have been approved for associates

with three to five years experience, like Sonam Henderson (5 years experience, seeking $350)

and Alexandra Lampert (3 years experience, seeking $300). *See, e.g., Nautilus Neurosciences v.*

*Fares,* No. 13 Civ. 1078(SAS), 2014 WL 1492481, at *2–3 (S.D.N.Y. April 6, 2014) (approving

hourly rate of $337.50 for an associate with three years of experience); *Canada Dry Delaware*

*Valley Bottling Co. v. Hornell Brewing, Inc.,* No. 11 Civ. 4308(PGG), 2013 WL 6171660, at *2–

3 (S.D.N.Y. Nov. 25, 2013) (approving hourly rates of $330–350 for a New York-based fifth-

year associate); *Kim*, 2014 WL 2514705 at *2 (awarding $300 to a third-year associate).

Junior associates have been awarded hourly rates of $250, and paralegals $125. *See*

*RBFC One. LLC v. Zeeks, Inc.*, No. 02 Civ. 3231(DFE), 2005 WL 2105541, at *2 (S.D.N.Y.

Sept. 1, 2005) (noting fee awards of "$250.00 for junior associates, and $125.00 to $170.00 for

paralegals"). Those are the rates Plaintiffs seek for the most junior associate on the team,

Elizabeth Daniel Vasquez, and the paralegals.

### C.  The requested Eastern District rates are reasonable for the Eastern District.

Recent decisions have narrowed the alleged difference between Southern District and

Eastern District rates. Judge Cogan recently held that a Manhattan lawyer handling a complex

forfeiture case in the Eastern District was entitled to an hourly rate of $600. *See United States v.*

*$61,900*, 856 F. Supp. 2d 484, 494 (E.D.N.Y. 2012) (noting that certain "cases, in which

Brooklyn lawyers generally specialize, are high-volume practices that bear little semblance to"

the case at bar, which was "based on non-repetitive fact patterns and diverse and complex fields

of law"). Likewise, this litigation was not another "high-volume" case, but one that involved

"non-repetitive fact patterns and diverse and complex fields of law." It required navigating an

extremely complicated area of the law, and an equally intricate factual record, to prove the most

serious intentional misconduct by a former Nassau County police detective.  The rates awarded

25

by Judge Cogan are thus relevant here.

In addition, Judge Garaufis recently awarded experienced civil rights counsel hourly rates of $550, within the range of the Eastern District rates requested here for name partners Mr. Neufeld, Mr. Scheck, and Mr. Brustin. *See United States v. City of New York*, No. 07–CV–2067 (NGG)(RLM), 2013 WL 5542459, at *8 (E.D.N.Y. August 30, 2013). And courts in the Eastern District have previously awarded junior partners the $400 Eastern District rate sought by Ms. Hoffmann, Ms. Cornwall, and Mr. Dubin. *See Barrella v. Village of Freeport*, No. 12–CV–0348 (ADS)(WDW), 2014 WL 4273339, at *50–51 (E.D.N.Y. Oct. 29, 2014) (awarding $400 an hour to partners with 11, 15 and 19 years' experience—much like the junior-partner-level attorneys here—in part due to "the degree of success obtained"); *Lochren v. County of Suffolk*, No. CV 01-3925(ARL), 2010 WL 1207418, at *3 (E.D.N.Y. Mar. 23, 2010) (four years ago, awarding $400 an hour to lawyers with 13–18 years' experience).

When complex litigations are brought in the commercial field, hourly rates of more than $600 are awarded. In a case decided after *Simmons*, *In re Visa Check/Mastermoney Antitrust Litigation,* Master File No. 96–CV–5238, 2009 WL 3367059 (E.D.N.Y. Oct.15, 2009) , the district court adopted a special master's recommendation that lead counsel be awarded $250 to $625 for attorneys and $110 to $170 for paralegals, that issuer's counsel be awarded between $198 and $792, and that underwriter's counsel be awarded between $200 and $945. This was five years ago. Since the hourly rates in complex civil rights cases are intended to follow awards in other complex litigation, that decision should be a model for this case as well.

The associate rates sought—ranging from $200 to $350 an hour—are also reasonable for the Eastern District market. *See United States v. City of New York*, 2013 WL 5542459, at *8 (awarding $300 to $350 an hour for associates); *Thorsen v. County of Nassau*, No. CV 03–

1022(ARL), 2011 WL 1004862, at *5 (E.D.N.Y. Mar. 17, 2011) (awarding $300 an hour for junior associate). The $100 hourly rate sought for paralegals is also supported. *See Gesualdi v. Diversified Carting, Inc.*, No. CV 10–2561(SIL), 2014 WL 5475357, at *5 (E.D.N.Y. October 29, 2014) (awarding $100 an hour for paralegals); *see also United States v. City of New York*, 2013 WL 5542459 at *8 (awarding $90 an hour for paralegals).

### D.  The relevant *Johnson* and *Blum* criteria support the rate requests.

#### i.  *Experience, reputation, and ability of the attorneys*

The attorneys involved in this case are at the highest level of their profession and are well deserving of the requested rates. *See* Hoffmann decl. ¶¶ 37–57; Celli decl. ¶¶ 1–15; Barket decl. ¶¶ 1–9. Complete biographies are provided for each attorney in their supporting declarations. Abbreviated versions are included in Ms. Hoffmann's declaration and here.

**BARRY SCHECK**, a graduate of Boalt Hall Law School at the University of California at Berkeley (J.D. 1974), and **PETER NEUFELD**, a graduate of NYU Law School (J.D. 1975), are both requesting an hourly rate of $700. Mr. Scheck and Mr. Neufeld both enjoy a national reputation as two of the most distinguished civil rights lawyers in the country. They each have nearly 40 years experience trying criminal and civil rights cases. They co-founded the Innocence Project, which they have both co-directed for the past 22 years; the Project has been responsible in whole or in part for exonerating most of the three hundred twenty-one men and women cleared through post-conviction DNA testing. In 1998, Mr. Scheck and Mr. Neufeld also co-founded NSB—then called Cochran Neufeld & Scheck—with then-partner Johnnie L. Cochran. Over the past 16 years, they have litigated many serious civil rights cases in federal courts around the country, including dozens of cases, like this one, arising out of wrongful convictions. They have each been repeatedly nationally recognized and honored, for their work at the Innocence Project and at NSB. For example, both have been repeatedly named to the list of the

100 best lawyers in America; in 2013, they jointly received the New York State Bar Association gold medal, and in 2012, the National Trial Lawyers Lifetime Achievement Award. Both Mr. Scheck and Mr. Neufeld frequently lecture to judges and lawyers and testify before Congress and state legislatures on topics related to wrongful convictions. Seven years ago, Mr. Neufeld was awarded compensation at $675 an hour in another § 1983 wrongful conviction suit, *see Atkins* fee award (attached as Exhibit 4), and eight years ago he was awarded $600 an hour in another complicated civil rights case, *see Anglin* decision (attached as Exhibit 5). Mr. Scheck was previously awarded $535 an hour in 2009, *see Rodriguez* fee award (attached as Exhibit 6), and $450 an hour in 2007, *see Sarsfield* fee award (attached as Exhibit 7). Their requested hourly rates are below the rates of those charged by attorneys of similar skill, experience, and reputation for similar work. *See* Hoffmann decl. ¶¶ 39–40, 50–56; Celli decl. ¶¶ 1–15; Barket decl. ¶¶ 1–9.

**NICK BRUSTIN**, a graduate of Fordham Law School (J.D. 1995) is requesting a $600 hourly rate. Mr. Brustin, a name partner at NSB, has litigated nearly 100 police misconduct civil rights cases, has tried § 1983 wrongful conviction suits as lead counsel in federal courts around the country, and has obtained several of the largest verdicts and settlements awarded in such cases nationwide. In recognition of his outstanding record in public interest law, Mr. Brustin was selected as a Wasserstein Public Interest Fellow at Harvard Law School in 2011; he has also served as an adjunct professor at Fordham University School of Law, and had lectured on civil rights issues around the country. Before going into private practice, Mr. Brustin was an Honors Program Trial Attorney with the Civil Rights Division of the United States Department of Justice from 1995 to 1997. His requested hourly rate is consistent with the rates of those charged by attorneys of similar skill and experience for similar work. *See* Hoffmann decl. ¶¶ 41, 50–56; Celli decl. ¶¶ 1–15; Barket decl. ¶¶ 1–9.

**ANNA BENVENUTTI HOFFMANN** graduated third in her class from NYU School of Law (J.D. 2004); she is requesting an hourly rate of $500. Ms. Hoffmann is a partner at NSB, where her work has focused on § 1983 wrongful conviction lawsuits like this one for the past 8 ½ years. She has helped obtain over 15 substantial verdicts, settlements, or significant appellate decisions in wrongful conviction suits around the country. Before joining NSB, Ms. Hoffmann clerked for the Honorable Reginald C. Lindsay of the United States District Court for the District of Massachusetts in the 2005 to 2006 term. NSB lawyers similarly situated to Ms. Hoffmann—then-junior partners—have been awarded compensation of $450 an hour, in 2009, and $400 an hour, in 2007. *See Rodriguez* fee award (attached as Exhibit 6); *Atkins* fee award (attached as Exhibit 4). In 2007, when she was only 3 years out of school, Ms. Hoffmann was awarded $300 an hour for her work in another wrongful conviction case. *See Atkins* fee award (attached as Exhibit 4). Her requested hourly rate is consistent with the rates charged by attorneys of similar skill and experience for similar work. *See* Hoffmann decl. ¶¶ 39, 42, 50–56; Celli decl. ¶¶ 1–15; Barket decl. ¶¶ 1–9.

**DEBORAH CORNWALL** graduated from Harvard Law School (J.D. 2000), where she was captain of the winning team in the Ames Moot Court Competition. She is requesting an hourly rate of $500. Ms. Cornwall was a partner at NSB from 2006 to 2012, and an associate from 2001 to 2006, focusing that entire time on litigating § 1983 wrongful conviction suits. Before joining NSB, Ms. Cornwall clerked for the Honorable Robert W. Sweet of the United States District Court for the Southern District of New York in the 2000 to 2001 term. Ms. Cornwall was previously awarded rates of $450 an hour in 2009, $400 an hour in 2007, and $250 an hour in 2007. *See Rodriguez* fee award (attached as Exhibit 6); *Atkins* fee award (attached as Exhibit 4); *Sarsfield* fee award (attached as Exhibit 7). Her requested hourly rate is consistent

29

with the rates charge by charged by attorneys of similar skill and experience for similar work. *See* Hoffmann decl. ¶¶ 39, 43, 50–56; Celli decl. ¶¶ 1–15; Barket decl. ¶¶ 1–9.

**MONICA SHAH** graduated from Columbia Law School (J.D. 2005), where she was on the Columbia Law Review, was a Harlan Fiske Stone Scholar, a Charles Evans Hughes Fellow, and a Charles H. Revson Fellow. She is requesting an hourly rate of $400. Ms. Shah clerked for the Honorable Allyne R. Ross of the United States District Court for the Eastern District of New York in the 2005 to 2006 term before joining NSB as a Cochran Fellow. Her requested hourly rate is consistent with the rates charged by attorneys of similar experience and ability for similar work. *See* Hoffmann decl. ¶¶ 44, 50–56; Celli decl. ¶¶ 1–15; Barket decl. ¶¶ 1–9.

**SONAM "SANDY" HENDERSON** graduated from Harvard Law School (J.D. 2009), where he was on the Harvard Law Review and received the Irving R. Oberman Memorial Award in Constitutional Law. He is requesting an hourly rate of $350. This is $25 less an hour than another then-midlevel NSB associate, Jennifer Laurin, was awarded in 2009. *See Rodriguez* fee award (attached as Exhibit 6). He clerked for the Honorable Stephen Reinhardt of the Ninth Circuit Court of Appeals before joining NSB as a Cochran Fellow. His requested hourly rate is consistent with the rates charged by attorneys of similar experience and ability for similar work. *See* Hoffmann decl. ¶¶ 45, 50–56; Celli decl. ¶¶ 1–15; Barket decl. ¶¶ 1–9.

**ALEXANDRA LAMPERT** graduated from Stanford Law School (J.D. 2011), where she won the Gerald Gunther Prize for Outstanding Performance in Evidence, Criminal Procedure-Investigations, Criminal Procedure-Adjudications, Immigration, Civil Procedure, Property & Corporations. She is requesting an hourly rate of $300. This is the same rate Ms. Hoffmann was awarded in 2007, when she was at the same level of seniority Ms. Lampert is at now. *See Atkins* fee award (attached as Exhibit 4). Ms. Lampert clerked for the Honorable Diane

Wood of the Seventh Circuit Court of Appeals before joining NSB as a Cochran Fellow. Her requested hourly rate is consistent with the rates charged by attorneys of similar experience and ability for similar work. *See* Hoffmann decl. ¶¶ 39, 46, 50–56; Celli decl. ¶¶ 1–15; Barket decl. ¶¶ 1–9.

**ELIZABETH DANIEL VASQUEZ** graduated from NYU Law School (J.D. 2013) where she was Editor-in-Chief of *The N.Y.U. Review of Law & Social Change*. She is requesting an hourly rate of $250. This is $25 less an hour than another then-junior associate at NSB, Emma Freudenberger, was awarded in 2009. *See Rodriguez* fee award (attached as Exhibit 6). From 2008 to 2010, Ms. Daniel Vasquez worked on Mr. Restivo and Mr. Halstead's case as a paralegal with NSB; she is seeking compensation for that work at the standard paralegal hourly rate of $125. These rates are reasonable. *See* Hoffmann decl. ¶¶ 47, 49–56; Celli decl. ¶¶ 1–15; Barket decl. ¶¶ 1–9.

**JOSH DUBIN**, the founder and principal of Dubin Research and Consulting (J.D. 2000), an elite litigation consulting firm, is requesting an hourly rate of $500. Mr. Dubin has worked with some of the most prestigious law firms and well-known litigators in high-stakes complex commercial and criminal defense cases on trial strategy, jury selection, witness preparation and persuasive visual aids. He is seeking a rate of $500 an hour. His requested hourly rate is consistent with the rates charged by attorneys of similar experience and ability for similar work. *See* Hoffmann decl. ¶¶ 48, 50–56; Celli decl. ¶¶ 1–15; Barket decl. ¶¶ 1–9.

**LEON FRIEDMAN**, who prepared the instant fee petition, is a well-known law professor and practitioner with over 52 years' experience as a federal litigator, having graduated from the Harvard Law School in 1960. From 1974 to the present he has taught at Hofstra Law School. At the same time he has engaged in extensive litigation in the federal courts. He is the

author or editor of over 15 books and has written hundreds of articles. He also lectures regularly to lawyers and judges around the country. *See* Friedman decl. ¶ 5 (attached as Exhibit 9). He has particular experience in the area of litigating attorneys' fees awards, including in *Lochren v. County of Suffolk,* 344 Fed. Appx. 706 (2d Cir. 2009); *Planned Parenthood of Cent. New Jersey v. Attorney General of the State of New Jersey*, 297 F.3d  253, (3d Cir. 2002); *Luciano v. The Olsten Corp.*, 109 F.3d 111 (2d Cir. 1997); *Jane L. v. Bangerter*, 61 F.3d 1505 (10th Cir. 1995); *Grant v. Martinez,* 973 F.2d 96 (2d Cir. 1992), *cert. denied*, 506 U.S. 1053 (1993); *Huntington Branch NAACP v. Town of Huntington*, 961 F.2d 1048 (2d Cir. 1992); *Morris v. Bd. of Estimate*, CV 81-3920 (E.D.N.Y. April 28, 1995); *Bender v. City of New York*, 92 Civ. 2288 (S.D.N.Y. March 31, 1995); *1616 Second Ave. Restaurant Corp. v. State Liquor Auth.*, Index No. 19525/92, (Supreme Court, N.Y. County. April 2, 1993 and June 1, 1995). Mr. Friedman's regular rate for fee-paying clients is $500 per hour. He was awarded an hourly rate of $450 in *Lochren v. County of Suffolk*, 2010 WL 1207418 at *3,  and in *United States v. City of New York,* 2013 WL 5542459 at *8.

ii.   *Customary fee charged by counsel and actual billing practice*

The "rate a paying client would be willing to pay" is a compelling factor in approving an hourly rate. *Arbor Hill*, 522 F.3d at 190; *see also Perdue*, 559 U.S. at 551; *Rozell*, 576 F. Supp. 2d at 536–37. Since NSB's practice consists entirely of representing victims of civil rights abuses on contingency, as they did here, most of the lawyers here do not have a regular fee schedule. Josh Dubin does charge his fee paying clients $700 per hour, $200 more than the rate he is seeking here. *See* Hoffmann decl. ¶ 54. Leon Friedman charges his regular fee paying clients at the rate of $500 per hour, the same rate he is seeking here. *See* Friedman decl. ¶ 5.

###### iii.  Previous awards to the counsel seeking fees

As described elsewhere, in 2007 Mr. Neufeld was awarded $675 an hour, Ms. Cornwall was awarded $400 an hour, then mid-level associate Jen Laurin was awarded $315 an hour, and Ms. Hoffmann, who at the time had three years experience, was awarded $300 an hour. *See Atkins* fee award (attached as Exhibit 4). In 2009, Mr. Scheck was awarded $535 an hour, Ms. Cornwall was awarded $450 an hour, Jen Laurin was awarded $375 an hour, and then junior associate Emma Freudenberger was awarded $275 an hour. *See Rodriguez* fee award (attached as Exhibit 6). Mr. Neufeld was also awarded $600 an hour in 2006. *See Anglin* decision (attached as Exhibit 5). Mr. Brustin was assessed at $450 an hour in 2010. *See Gonzalez* decision (attached as Exhibit 8). Finally, in 2007 Mr. Scheck was awarded $450 an hour and Ms. Cornwall $250. *See Sarsfield* fee award (attached as Exhibit 7).

Leon Friedman was awarded $450 in two recent cases in the Eastern District, *Lochren v. County of Suffolk*, 2010 WL 1207418 at *3,  and *United States v. City of New York,* 2013 WL 5542459 at *8.

###### iv.  The complexity of the litigation

As described above and in Ms. Hoffmann's declaration, § 1983 wrongful conviction cases are incredibly complex, and this case was complex even for a § 1983 wrongful conviction case. Indeed, this case appears to be the first plaintiff's verdict in a § 1983 wrongful conviction suit in New York history to survive post-trial briefing. See Hoffmann decl. ¶¶ 5–17, 26–36. Based on all these criteria, the rates requested are eminently reasonable.

###### v.  Current rates should be awarded

It is well-established that each attorney's "current rates rather than historical rates should be applied [to all hours expended] in order to compensate for the delay in payment." *See*

33

*LeBlanc-Sternbrg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998); *Missouri v. Jenkins*, 491 U.S. 274, 283 (1989) ("Clearly, compensation received several years after the services were rendered—as it frequently is in complex civil rights litigation—is not equivalent to the same dollar amount received reasonably promptly as the legal services are performed, as would normally be the case with private billings."); *Perdue,* 559 U.S. at 556 (noting compensation for the delay in payment of § 1988 fees is generally made "by basing the award on current rates") (internal quotations omitted).

**IV.    Plaintiffs are entitled to their reasonable costs.**

"Attorney's fees awards include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." *LeBlanc-Sternberg*, 143 F.3d at 763 (internal citation and quotation omitted). Plaintiffs are seeking reimbursement for $316,685.04 in costs under § 1988.[9] *See* Brustin decl. ¶¶ 29–71. This includes $8,949.17 in copying costs; $5,182.87 for shipping; $5,595.16 for legal research; $52,995.25 for court reporters and transcripts; $60,941.47 for deposition court reporters, transcripts, and videographers; $2,246.87 for witness fees; $2,943.20 for docket, filing, and service fees; $60,097.91 for trial costs; [10] and $17,495.36 for travel expenses, "all of which are routinely recoverable" under § 1988. *Olsen v. County of Nassau*, No. CV 05-3623 (ETB), 2010 WL 376642, at *8 (E.D.N.Y. Jan. 26, 2010).

It also includes $21,187.70 for investigation, *see Wong v. Yoo*, No. 04–CV–4569

---

[9] Although some of these categories of expenses are compensable under § 1920, for simplicity, Plaintiffs seek them all here.

[10] The bulk of the trial expenses are the costs for the trial team and witnesses to stay near the Central Islip courthouse during both trials. These costs were reasonably incurred; indeed, defense counsel stayed in a hotel on Long Island during the second trial, as well. S*ee, e.g., Etna Products Co. v. Q Mktg. Grp., Ltd.*, No. 03 CIV. 3805, 2005 WL 2254465, at *12 (S.D.N.Y. June 6, 2005) (awarding hotel fees for trial), Trial costs also include costs for courtroom technology. *See J.S. Nicol, Inc. v. Peking Handicraft, Inc.*, No. 03-CIV-1548, 2008 WL 4613752, at *15–16 (S.D.N.Y. Oct. 17, 2008) (awarding costs for technology support and staff at trial).

34

(JBW)(ALC), 2010 WL 4137532, at *4 (E.D.N.Y. Oct. 19, 2010), $32,752.09 in costs to an

outside discovery vendor, *see Gray v. Toyota Motor Sales, U.S.A. Inc.*, No. 10-CV-3081, 2013

WL 3766530, at *6 (E.D.N.Y. July 16, 2013) (awarding prevailing defendant "discovery vendor

costs"), and $49,630.00 in costs for conducting a focus group, *see Rozell*, 576 F. Supp. 2d at 540

("It is entirely proper . . . to bill a client for a mock trial exercise devoted to the case at hand.");

*Guzman v. Bevona*, No. 92 CIV. 1500 RPP, 1996 WL 374144 at *5 (S.D.N.Y. Jul. 3 1996)

(awarding costs for focus group).

 All of these costs, which are normally billed to fee-paying clients under the standard

billing practices in this district, were reasonably incurred during this litigation.  And given that

Plaintiffs' counsel were carrying these costs for years, they endeavored to minimize costs as

much as possible. *See* Brustin decl. ¶¶ 33, 37, 39, 42, 45–47, 51–53, 56, 59, 64.

## **CONCLUSION**

 For the reasons stated herein, Plaintiffs' request for attorney's fees and costs in the

amount stated should be granted.

Dated:  December 17, 2014
   New York, N.Y.

       /s/ Leon Friedman
       —————————————
       LEON FRIEDMAN (LF#7124)
       148 East 78th Street
       New York, N.Y. 10021
       (212) 737-0400

       *Attorneys for Plaintiffs*

**<u>Certificate of Service</u>**

I hereby certify that a true and accurate copy of Plaintiff's Motion for Attorney's Fees and Costs and all supporting declarations and exhibits was served by ECF on December 17, 2014 upon all counsel of record.

Daniel Lander
Paralegal