**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

_____

| | |
|---|---|
| JOHN RESTIVO, DENNIS HALSTEAD, MELISSA LULLO, JASON HALSTEAD, TAYLOR HALSTEAD, and HEATHER HALSTEAD, | ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| -against- | ) |
| | ) |
| NASSAU COUNTY, CAROLANN HESSEMAN, AS EXECUTRIX FOR THE ESTATE OF JOSEPH VOLPE, in his individual capacity, ROBERT DEMPSEY, in his individual capacity, FRANK SIRIANNI, in his individual capacity, MILTON GRUBER, in his individual capacity HARRY WALTMAN in his individual capacity ALBERT MARTINO, in his individual capacity, CHARLIE FRAAS, in his individual capacity, THOMAS ALLAN in his individual capacity, RICHARD BRUSA, in his individual capacity, VINCENT DONNELLY, in his individual capacity, MICHAEL CONNAUGHTON, in his individual capacity, WAYNE BIRDSALL, in his individual capacity, WILLIAM DIEHL, in his individual capacity, JACK SHARKEY, in his individual capacity, DANIEL PERRINO, in his individual capacity, ANTHONY KOZIER, in his individual capacity, Detective Sergeant CAMPBELL, (Shield #48), in his individual capacity, SEAN SPILLANE, in his individual capacity, RICHARD ROE SUPERVISORS #1-10, in their individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) ) |

06-CV-6720(JS)(SIL)

_____

**PLAINTIFFS' PETITION, PURSUANT TO N.Y. CPLR 5227, FOR SPECIAL PROCEEDING AND FOR ENTRY OF JUDGMENT TO COMPEL PAYMENT OF A DEBT OWED TO JUDGMENT DEBTOR**

# TABLE OF CONTENTS

I.    **Introduction** ................................................................................................................ 1

II.   **Legal Standard** ......................................................................................................... 2

III.   **Argument** ................................................................................................................ 3

   **A.**   **Nassau County is contractually obligated to indemnify the Estate.** ......................... 4

     **i.**   **The parties entered into an enforceable contract** ......................................... 4

     **ii.**   **The Contract requires the County to indemnify Volpe in full** ........................... 6

     **iii.**   **The terms of the 2007 contract create an enforceable indemnity
obligation, and that obligation transferred to Volpe's estate after his death.** ................ 7

     **iv.**   **Pursuant to CPLR 5227, judgment should be entered against the
judgment-debtor's debtor Nassau County to satisfy Plaintiffs' judgment.** ..................... 8

   **B.**   **Plaintiffs additionally have assertable third-party beneficiary rights
in the agreement and can independently and separately move to enforce them.** .............. 8

   **C.**   **Nassau County is statutorily obligated to indemnify Defendant
Volpe's Estate.** ................................................................................................................ 10

     **i.**   **Legislative History of Nassau County Admin. Code § 22-2.8 and
Gen. Mun. L § 50-l** ......................................................................................................... 10

     **ii.**   **Nassau County has an obligation to indemnify the Volpe estate
under both New York Gen. Mun. L. § 50-l and Nassau County
Administrative Code § 22–2.8.** ....................................................................................... 12

        *1.Gen. Mun. L. § 50-l expanded the scope of indemnification
available to Nassau County Police Officers, and thus also indemnifies
an officer's estate.* ........................................................................................................ 12

        *2.Nassau County Admin. Code § 22-2.8 is still in effect, and
clearly covers estates* ..........................…………………………………………………15

   **D.**   **The failure of Nassau County's lawyers to inform the Estate that
Nassau County would contest its obligations to indemnify an officer's
Estate and to take steps to protect the Estate is a breach of fiduciary duty** ..................... 16

   **E.**   **Even if there were a colorable question, Nassau County is estopped
from contesting its obligation now.** ................................................................................ 17

     **i.**   **For eight years, Nassau County has consistently represented that
it had indemnified and saved harmless Defendant Joseph Volpe and his Estate.** ......... 18

     **ii.**   **Defendant Nassau County had an intention or expectation
that their representations regarding indemnification would be relied upon.** ................... 20

     **iii.**   **Defendant Nassau County had actual or constructive knowledge
of the true facts** ..................…………………………………………………………21

    **iv.**    **Plaintiffs and Defendant Carolann Hesseman as Executrix of the Estate of Joseph Volpe actually relied on Defendant Nassau County's representations.** ........................................................................................... 22

    **v.**    **Given Nassau County's position for the last eight years, equitable estoppel dictates that they may not now take a contrary position regarding indemnification.** ............... …………………………………………………………22

  **F.**    **Additionally, the County and the County's attorneys representations to Plaintiffs and to the Court estop them from contesting liability now.** .......................... 23

**IV.**   **Conclusion** ................................................................................................. 25

## I.      Introduction

Exactly thirty years ago, former Nassau County Police Department Detective Joseph Volpe framed Plaintiffs John Restivo and Dennis Halstead for a rape and murder they did not commit, causing each to spend eighteen years wrongly imprisoned.

In 2014, a federal jury found Volpe liable for his misconduct and awarded Mr. Restivo and Mr. Halstead $ 18 million each in damages. D.E. 206 (Ct. Ex. 19: Jury Verdict Sheet). In accordance with the jury's liability and damages verdicts, final judgment entered against Carolann Hesseman as the Executrix of the Estate of Joseph Volpe in the amount of $18 million for each Plaintiff; the Court entered a separate document setting out that judgment, pursuant to Rule 58, on November 17, 2014. D.E. 228.[1]

No supersedeas bond has been posted or stay issued pursuant to Rule 62(d).[2] Thus, Plaintiffs have a presently enforceable judgment against the judgment debtor, Carolann Hesseman as Executrix of the Estate of Joseph Volpe ("the Estate"). D.E. 228; *see Rand-Whitney Containerboard Ltd. P'ship v. Town of Montville*, 245 F.R.D. 65, 70 (D. Conn. 2007) (In the absence of a stay, "the judgment is payable and may be collected upon."); *see also C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.*, 750 F. Supp. 67, 69 (E.D.N.Y. 1990) ("Unless a stay is granted either by the court rendering the judgment or by the court to which the appeal is taken,

---

[1] This judgment does not yet include statutorily required interest or attorney's fees and costs, the award of each of which are the subject of pending motions before the Court, *see* D.E. 229 (Plaintiff's motion requesting the Court award interest); D.E. 233 (Plaintiff's motion requesting the Court award attorney's fees and costs).

[2] Though Defendants filed a notice of appeal, *see* D.E. 232, they did not immediately post a supersedeas bond and move the Court for a stay of enforcement. As a courtesy and to avoid unnecessary litigation, Plaintiffs alerted Defendants on December 22, 2014, that the judgment was presently enforceable and that, should they wish to stay enforcement, pursuant to Rule 62(d), they needed to post a supersedeas bond and request Court approval and a stay. For almost two months, Defendants represented that they were working with Nassau County to obtain a bond, but that it was "neither a quick nor easy process" because of the various municipal authorities that had to be involved. *See* D.E. 244-6 (Exhibit F: Collected Correspondence between Lou Freeman and Anna Benvenutti Hoffmann) at 2. Finally, on February 17, 2015, Defendants filed a motion to stay enforcement; in that motion, however, Defendants, for the first time, suggested that they would attempt to avoid their indemnification obligation and directed Plaintiffs to first pursue satisfaction of their judgment directly against the Estate. *See* D.E. 243 (Defendants' Motion to Stay Enforcement of Judgment) and D.E. 250 (Plaintiffs' Response in Opposition to Defendants' Motion to Stay).

the judgment remains operative.") (quoting *Deering Milliken, Inc. v. F.T.C.*, 647 F.2d 1124, 1128–29 (D.C.Cir.1978)). And, on February 26, 2015, Plaintiffs served a formal demand notice for prompt payment of that judgment on the Estate and Nassau County as indemnitor. *See* Exhibit A. The judgment is now due and owing.

Plaintiffs Restivo and Halstead now move for judgment, pursuant to Fed. R. Civ. P. 69(a) and N.Y. CPLR § 5227, compelling defendant Nassau County, as the Volpe Estate's indemnitor, to pay Plaintiffs the debt—in the full amount of the judgment, including costs, interest, and attorney's fees—which Nassau County owes to the judgment debtor the Estate. There are at least four independent bases on which Nassau County is liable for the full amount of the judgment: 1) its contractual obligation to indemnify; 2) its statutory obligation to indemnify; 3) its breach of fiduciary duty; and 4) its consistent representations throughout this litigation that estop the County from denying its liability now.

## II.    Legal Standard

This Court has clearly established jurisdiction to issue orders in support of Plaintiffs Restivo and Halstead's judgment. "A federal district court's jurisdiction to enforce its judgments by conducting supplemental proceedings and issuing orders is an inherent and long recognized authority. Indeed, the federal district court's enforcement jurisdiction includes the authority to issue orders that affect individuals that were not parties to the original action." *Kashi v. Gratsos*, 712 F. Supp. 23, 25 (S.D.N.Y. 1989) (internal quotation marks and citations omitted).

Rule 69 of the Federal Rules of Civil Procedure provides a procedural framework for the execution of judgments in federal courts. *See Kashi*, 712 F. Supp. at 25. Pursuant to Rule 69, "[a] judgment creditor seeking to enforce a federal judgment in federal court must use the applicable law of the state in which the federal court sits." *A.F.L. Falck, S.p.A. v. E.A. Karay Co.*, 722 F.

Supp. 12, 15 (S.D.N.Y. 1989) *on reargument*, 131 F.R.D. 46 (S.D.N.Y. 1990) (internal citations omitted); *see also Koehler v. Bank of Bermuda Ltd.*, 544 F.3d 78, 85 (2d Cir.) *certified question accepted*, 11 N.Y.3d 801, 897 N.E.2d 1061 (2008) and *certified question answered*, 12 N.Y.3d 533, 911 N.E.2d 825 (2009) ("Under Federal Rule of Civil Procedure 69(a), a district court has the authority to enforce a judgment by attaching property in accordance with the law of the state in which the district court sits.").

Under New York law, a judgment creditor (like Plaintiffs) may enforce a cause of action that the judgment debtor (like the Estate) possesses against "any person who it is shown is or will become indebted to the judgment debtor"—i.e., Nassau County. N.Y. CPLR § 5227. Specifically, CPLR 5227 provides:

> Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court may require such person to pay to the judgment creditor the debt upon maturity, or so much of it as is sufficient to satisfy the judgment, and to execute and deliver any document necessary to effect payment; or **it may direct that a judgment be entered against such person in favor of the judgment creditor**.

(emphasis added). Enforcement under CPLR 5227 properly reaches obligations owed to the judgment debtor by an indemnifying party. *See, e.g., White Plains Plaza Realty, LLC v. Cappelli Enterprises, Inc.*, 970 N.Y.S.2d 47, 49 (2d Dep't 2013) ("Such a proceeding is properly asserted against one who agreed to indemnify the judgment debtor in the underlying proceeding. The judgment creditor stands in the judgment debtor's shoes, and may enforce the obligations owed to the judgment debtor by the indemnifying party.").

## III.   Argument

There are at least four separate and independent bases on which Nassau County is responsible for the full amount of the judgment awarded in favor of Plaintiffs and against the

Estate of Joseph Volpe, including attorney's fees, costs, and interest. First, Nassau County is contractually obligated to indemnify Volpe and, because contract rights survive death, Volpe's Estate. Second, under governing statutes New York Gen. Mun. L. § 50-l and the Nassau County Admin. Code § 22-2.8, Nassau County is statutorily obligated to indemnify Volpe's Estate. Third, the failure of defense counsel—both the special outside counsel and the Nassau County Attorney's Office—to inform Volpe or the Estate that Nassau County would argue there was no obligation to indemnify an Estate is a breach of fiduciary duty or otherwise protect the Estate's rights, making the County liable for the impact caused. Fourth, based on its consistent representations throughout this litigation that it was indemnifying, Nassau County is estopped from denying its liability now.

Any one of these four bases is alone sufficient to require Nassau County to satisfy the full judgment owed by the Estate. As a result, under CPLR 5227, Plaintiffs-Judgment Creditors are entitled to entry of judgment in the amount of the full judgment, plus attorney's fees, costs, and interest, directly against debtor Nassau County.

### A.  Nassau County is contractually obligated to indemnify the Estate.

#### i.  The parties entered into an enforceable contract

In 2007, Nassau County entered into a contract with Joseph Volpe to indemnify him in this lawsuit. *See* Exhibit B (Letter from Nassau County Attorney's Office to Joseph Volpe, dated Jan. 11, 2007 ("2007 Volpe Agreement")). Pursuant to CPLR 5227, Plaintiffs John Restivo and Dennis Halstead—as the judgment creditors—stand in the Volpe Estate's shoes, and may enforce the obligations owed to the Estate under the contract by the indemnifying party Nassau County. *White Plains Plaza Realty*, 970 N.Y.S.2d at 49.

Under New York law, "[t]o establish the existence of an enforceable agreement, a plaintiff must establish (1) an offer, (2) acceptance of the offer, (3) consideration, (4) mutual

4

assent, and (5) an intent to be bound." <u>Kowalchuk v. Stroup</u>, 61 A.D.3d 118, 121, 873 N.Y.S.2d 43, 46 (2009) (citing 22 N.Y. Jur.2d, Contracts § 9) (numbering added). The 2007 indemnification agreement between Volpe and the County satisfies each of these elements.

On January 11, 2007, Defendant Nassau County sent Defendant Joseph Volpe a letter explaining the County's statutory obligations to him under New York Gen. Mun. L. § 50-l and the Nassau County Admin. Code § 22-2.8, and the County's offer to provide legal representation to him. Exhibit B. The 2007 letter contained the following terms:

> "As a County employee, you are entitled, pursuant to the Nassau County Administrative Code § 22-2.8, to legal representation provided by the County to defend you in this lawsuit, subject to certain conditions. The purpose of this letter is to describe the conditions under which the County Attorney will represent you." Exhibit B, at 1.

> "It is a condition of the County Attorney's representation that you cooperate fully in the defense of this lawsuit. . . . It is further a condition of the County Attorney's representation of you that the County Attorney has the right to control and make all litigation and settlement decisions concerning the defense of the lawsuit." *Id.* at 1–2.

> "If the Nassau County Police Indemnification Board makes a determination, pursuant to New York General Municipal Law § 50-l that the act or omission complained of was within the scope of your public employment or duties, the County **will indemnify you for any award of damages against you**, and the County Attorney will have sole responsibility for determining whether to agree to a proposed settlement of this lawsuit. In that event, you will not have the right to agree to a settlement on your own or to object to a settlement approved by the County Attorney." *Id*. at 2 (emphasis added).

The County's offer was accepted by Volpe. The letter instructed Volpe, if he agreed, to sign under the text "agreed and accepted" and return the letter; he did so. *Id.*

The offer was supported by consideration: the County would represent Joseph Volpe in this matter and, should a defined condition precedent be met, indemnify him in full, in return for Volpe's agreement to cooperate fully with the County in the case and to relinquish his rights

1) to private counsel, 2) to direct his defense, and 3) to personally negotiate, agree, or object to a settlement. And the parties demonstrated mutual assent and intent to be bound, by the terms of their agreement, their signatures on the contract, and their subsequent actions throughout this litigation. *See Ogden Martin Sys. of Tulsa, Inc. v. Tri-Cont'l Leasing Corp.*, 734 F. Supp. 1057, 1067 (S.D.N.Y. 1990) ("To determine whether an intent to form a binding obligation exists, courts focus primarily on whether the language of the documents reveals an intent not to be bound until execution of a final contract and whether the terms of the contract have been finally resolved."); *Bazak Int'l Corp. v. Tarrant Apparel Group*, 378 F. Supp. 2d 377, 389 (S.D.N.Y. 2005) ("To determine the presence of mutual assent, . . . [t]he totality of parties' acts, phrases and expressions must be considered, along with the attendant circumstances, the situation of the parties, and the objectives they were striving to attain." (internal quotation marks and citations omitted)). Following the execution of the 2007 agreement, the County has repeatedly and continuously asserted that it is providing Volpe's representation—first through the Nassau County Attorney's Office and, later, through outside-counsel retained and paid by the County— and such counsel has acted on behalf of Volpe and, after 2011, on behalf of the Estate.

### ii.   The Contract requires the County to indemnify Volpe in full

The 2007 agreement contained a defined condition precedent[3] to the County's promise to indemnify: the County would be obligated to indemnify "[i]f the Nassau County Police Indemnification Board makes a determination, pursuant to New York General Municipal Law § 50-l that the act or omission complained of was within the scope of [Volpe's] public

---

[3] Black's Law Dictionary (10th ed. 2014) (defining condition precedent: "[(a)] An act or event, other than a lapse of time, that must exist or occur before a duty to perform something promised arises. [(b)] If the condition does not occur and is not excused, the promised performance need not be rendered. The most common condition contemplated by this phrase is the immediate or unconditional duty of performance by a promisor."); *see also Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 215 (2d Cir. 2002) ("[U]nder New York law, a condition precedent can be either a condition that must occur before a party's performance under an existing contract becomes due or a condition to the formation of the contract itself.").

employment or duties." Ex. B at 2.

It is undisputed that this condition precedent has been satisfied. On February 9, 2007, the Nassau County Police Indemnification Board determined that "the acts alleged were committed while in the proper discharge of said officer(s)' duties and within the scope of his/her employment." Exhibit C (Determination of Police Officer Indemnification Board, signed and dated Feb. 9, 2007); *see also* D.E. 243 (Defendants' Motion to Stay Judgment Pending Appeal) at 4 n.3; D.E. 246 (Defendants' Supplemental Memorandum in Support of Motion to Stay) at 5. Once that condition precedent was met, by the terms of the contract, the County was obligated to indemnify Volpe for any award of damages in this suit. Ex. B at 2 ("**If** the Nassau County Police Indemnification Board makes a determination, pursuant to New York General Municipal Law § 50-l that the act or omission complained of was within the scope of your public employment or duties, **the County will** indemnify you for any award of damages against you, **and the County Attorney will** have sole responsibility for determining whether to agree to a proposed settlement of this lawsuit.") (emphasis added). Thereafter, the County repeatedly and continuously recognized that it was obligated to indemnify Volpe. *See, e.g.,* Ex. D, (Letter from Deputy Nassau County Attorney Liora Ben-Sorek) ("[P]lease be informed that the defendants *have been indemnified*.") (emphasis added).

### iii. The terms of the 2007 contract create an enforceable indemnity obligation, and that obligation transferred to Volpe's estate after his death.

Judgment has entered against the Judgment Debtor the Estate in this case, and a formal demand notice has been sent. *See* D.E. 228 and Ex. A. "[A] right to indemnification against liability arises when judgment is entered, even though the defendant has not paid the judgment and, thus, suffered no losses." *Madeira v. Affordable Hous. Found., Inc.*, 323 F. App'x 89, 91

7

(2d Cir. 2009). Given the entry of judgment, the Judgment Debtor's right to indemnification by Nassau County has already accrued.

Furthermore, Volpe's rights and the County's obligations under the contract survived Volpe's death; at that point, Volpe's rights under the contract belonged to Volpe's estate. *See, e.g. Heslin v. County of Greene*, 896 N.Y.S.2d 723, 725 n.4 ("All torts and contract actions that belonged to a decedent may . . . be maintained by the estate's personal representatives."); *see also Buccini v. Paterno Const. Co.*, 253 N.Y. 256, 258 (1930) ("Death of the contractor has not nullified the contract in the sense of emancipating the claimant from the restraint of its conditions. They limit her at every turn. She cannot stir a step without reference to the contract, not profit by a dollar without adherence to its covenants.").

### iv. Pursuant to CPLR 5227, judgment should be entered against the judgment-debtor's debtor Nassau County to satisfy Plaintiffs' judgment.

"Upon a special proceeding commenced by the judgment creditor, against any person who it is shown is or will become indebted to the judgment debtor, the court . . . may direct that a judgment be entered against such person in favor of the judgment creditor." N.Y. CPLR 5227. Under the terms of the 2007 agreement, Nassau County is presently indebted to the Judgment Debtor the Estate. In satisfaction of John Restivo and Dennis Halstead's judgment, pursuant to CPLR 5227 and the terms of the 2007 contract, judgment should be entered against Nassau County for the full amount of the judgment, including any and all awarded attorney's fees, costs, and interest.

### B. Plaintiffs additionally have assertable third-party beneficiary rights in the agreement and can independently and separately move to enforce them.

Plaintiffs John Restivo and Dennis Halstead also have assertable third-party beneficiary rights to the indemnity agreement between Nassau County and Defendant Volpe's Estate. *See*

8

*Kornblut v. Chevron Oil Co.*, 62 A.D.2d 831, 83 (2d Dep't 1979) (finding intended third-party beneficiary rights in the "circumstances surrounding [the] formation" of a contract between the State government and its contractor). "[A] beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and . . . the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary." *Goodridge v. Harvey Grp., Inc.*, 778 F. Supp. 115, 134 (S.D.N.Y. 1991) (citing Restatement (Second) of Contracts § 302). "Where performance is rendered directly to a third party, it is presumed that the third party is an intended beneficiary of the contract." *White Plains Plaza Realty*, 970 N.Y.S.2d 47, 50 (2d Dep't 2013). As third-party beneficiaries to the indemnity agreement between Nassau County and Defendant Volpe's Estate, the "benefit to the [Plaintiffs] is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate them if the benefit is lost." *Id.*[4]

The 2007 letter, as signed and returned by Defendant Volpe, created a contract for indemnification between Nassau County and Defendant Volpe, which contractual rights extend to Defendant Volpe's Estate. *See* Exhibit B. This contract became effectual upon the satisfaction of the condition precedent by the Nassau County Police Indemnification Review Board's

---

[4] Nassau County's statutory indemnification obligations under Nassau County Admin. Code § 22-2.8 and Gen. Mun. L § 50-l are analogous to an insurer's duties to indemnify an insured for liability to a third-party. Similar to an insurance company's duties to an insured party, because there was a determination that Defendant Volpe acted within the scope of his employment, Nassau County has an obligation under Nassau County Admin. Code § 22-2.8 and Gen. Mun. L. § 50-l to defend and indemnify Defendant Volpe's Estate. *See Lancaster v. Incorporated Vil. Of Freeport*, 22 N.Y.3d 30, 38–39 (2013) (construing N.Y. Public Officers Law § 18 as analogous to an insurance contract). "As in the insurance context, [Defendant Volpe and his Estate] were obligated to cooperate in the defense of the action as a condition of their defense and indemnification." *Id*. at 39; *see also* Nassau County Admin. Code § 22-2.8(4); Ex. B (2007 Volpe Agreement). Furthermore, like an insurance policy, Nassau County's obligations to defend and indemnify the employee [Defendant Volpe] such as Defendant Volpe were based on certain conditions precedent required by law that were satisfied—that is, a determination that Defendant Volpe was acting in the scope of his employment. *See* Gen. Mun. L. § 50-l; *see also* Ex. C (Review Board Indemnification Decision). Accordingly, Nassau County "is obligated to indemnify the [Defendant Volpe], the party actually at fault, in the amount of any recovery had against him." *Ott v. Barash*, 491 N.Y.S.2d 661, 667 (2d Dep't 1985); *see also Frontier Insulation Contractors v. Merchants Mut. Ins. Co.*, 91 N.Y.2d 169, 178 (1997) ("While the duty [of an insurer] to defend is measured against the possibility of a recovery, 'the duty to pay is determined by the actual basis for the insured's liability to a third person.'").

9

determination that Defendant Volpe acted within the scope of his employment. Exhibit C (Determination of Police Officer Indemnification Review Board, signed and dated Feb. 9, 2007). Under the contract, Nassau "County will indemnify [Defendant Volpe] for any award of damages against [Volpe]," or The Estate, in the civil rights lawsuit brought by Plaintiffs. Exhibit B at 2. Thus, Plaintiffs John Restivo and Dennis Halstead were intended beneficiaries of the indemnity contract, and, as such, have enforceable rights against Nassau County.

### C.  Nassau County is statutorily obligated to indemnify Defendant Volpe's Estate.

The Nassau County Police Indemnification Board's determination that Defendant Volpe had acted in the scope of his employment and was indemnified for any judgment in this case also created a *statutory* obligation to indemnify Volpe. Under either New York Gen. Mun. L. § 50-L, or Nassau County Administrative Code § 22–2.8, the law is clear that this indemnification obligation also applies to the Volpe estate.

### i.  Legislative History of Nassau County Admin. Code § 22-2.8 and Gen. Mun. L § 50-l

On April 28, 1980, Nassau County Admin. Code § 22-2.8 was enacted to provide for the "defense and indemnification of County officers and employees." Exhibit E (Nassau County Board of Supervisors, Ninth Meeting Minutes, (Apr. 28, 1980)), at 1576–580. Spanning four pages and fourteen sections or subsections, § 22-2.8 is a comprehensive legislative scheme. It includes procedures for employees seeking defense and indemnification, obligations imposed on employees seeking indemnification, provisions for when a conflict of interest arises, and definitions of key terms. In particular, employees covered by Admin. Code § 22-2.8 were defined as "any person holding a position by election, appointment or employment in the service of the county, whether or not compensated." *Id.* The law further specified that the definition of

10

employee included any "former employee, *his estate* or judicially appointed personal representative." *Id.* (emphasis added). Nassau County Admin. Code § 22-2.8 contains those same exact definitions today.

As originally enacted, however, Nassau County Admin. Code § 22-2.8 did *not* provide indemnification when the "injury or damage resulted from intentional wrongdoing or recklessness," and did not provide for indemnification of punitive or exemplary damages. *See* Ex. E at 1578, ¶ 3(a). After the 1983 Supreme Court decision in *Smith v. Wade*, 461 U.S. 30 (1983), which held that punitive damages could be awarded against an officer under 42 U.S.C. § 1983 for "reckless or callous disregard for the plaintiff's rights, as well as intentional violations of federal law," Nassau County legislators were concerned about the financial risk to Nassau County Police officers. Five days after the decision, on April 25, 1983, Nassau County passed an Emergency Resolution requesting the state legislature enact and the Governor approve a new bill—what was later enacted as Gen. Mun. L. § 50-l—expanding the indemnification of Nassau County police officers to cover reckless or intentional misconduct, as well as to awards of punitive or exemplary damages. Exhibit F (Nassau County Board of Supervisors, Eighth Meeting Minutes (Apr. 25, 1983)) at 1658–661; *see also* Home Rule Request, dated April 25, 1983, Bill Jacket, L. 1983, ch. 872, at 4 (requesting passage of the Act because the "local government does not have the power to enact such legislation by local law").

Unlike § 22-2.8, § 50-l is *not* a comprehensive statute. It consists of two sentences aimed at the change that motivated its enactment: expanding indemnification of police officers to cover (1) reckless or intentional misconduct and (2) punitive damages.[5] As a result, Nassau County has consistently recognized that § 50-l should be read together with §22-2.8; where § 50-l is silent,

---

[5] The other change effected by §50-l was to require that the board that determined whether a police officer was acting within the scope of his employment—now known as the Police Officer Indemnification Board—have as its third member the Nassau County police commissioner or a deputy, instead of the Director of Personnel.

§ 22-2.8 should be used to fill in the gaps. For example, the indemnification agreement entered into by Nassau County and Detective Volpe in this case recognizes that Volpe had rights under *both* §22-2.8 and § 50-l. See Exhibit B at 1 (2007 Volpe Agreement) ("As a County employee, you are entitled, *pursuant to the Nassau County Administrative Code § 22-2.8*, to legal representation provided by the County . . . ." ); *id.* at 2 ("if the "Police Indemnification Board makes a determination, pursuant to New York General Municipal Law § 50-l that the act or omission complained of was within the scope of your public employment or duties, the County will indemnify you for any award of damages against you . . . ."; *see also* Exhibit G (Letter from County Attorney to police officer, explaining that "As a County employee, you have been determined to be entitled to legal representation provided by the County, pursuant to the General Municipal Law § 50-l and Nassau County Administrative Code Section 22-2.8.").

In 1991, the indemnification provisions of § 22-2.8 were amended to bring the scope of protection for all Nassau County employees in line with those provided, under §50-l, to Nassau County police officers. Section 22-2.8 now indemnifies for reckless or intentional misconduct, as well as for punitive or exemplary damages. Exhibit H (Nassau County Board of Supervisors, Sixteenth Meeting Minutes (Oct. 7, 1991)) at 4025–26.

### ii. Nassau County has an obligation to indemnify the Volpe estate under both New York Gen. Mun. L. § 50-l and Nassau County Administrative Code § 22–2.8.

#### 1. *Gen. Mun. L. § 50-l expanded the scope of indemnification available to Nassau County Police Officers, and thus also indemnifies an officer's estate.*

Gen. Mun. L. § 50-l addresses the indemnification of a Nassau County "police officer." Unlike Nassau County Administrative Code § 22–2.8, however, it does not provide a comprehensive definition for which officers are included, such as former officers and their

estates. When a statute "is silent" with respect to a definition, "it is appropriate to examine the intention of the Legislature" by "look[ing] to the entire statute, its legislative history and the statutes of which it is made a part." *Harbolic v. Berger*, 43 N.Y.2d 102, 107 (N.Y. 1977).

The clear purpose of Gen. Mun. L. § 50-l was to *extend* the existing indemnification protections available to police officers under §22-2.8, in order "to ensure that any concerns about the financial repercussions of a lawsuit would not interfere with the manner in which a police officer performed his or her duties." *Galvani v. Nassau Cnty. Police Indemnification Review Bd.*, 242 A.D.2d 64, 67 (2d Dep't 1998). At the time Gen. Mun. L. § 50-l was enacted, Nassau County Admin. Code § 22-2.8 already indemnified police officers for compensatory damages, including former officers and their estates. Gen. Mun. L. § 50-l further reduced an officer's fear of personal liability by "extend[ing] legal protection for Nassau County police officers to include indemnification for punitive or exemplary damages . . . ." Exhibit I at 11 (Senate Budget Report, Bill Jacket, L. 1983, ch 872). If Gen. Mun. L. § 50-l were read not to cover former Nassau County officers and their estates—as Nassau County Admin. Code § 22-2.8 plainly does—it would constrict, rather than extend, legal protections to police.[6]

"The primary consideration of courts in interpreting a statute is to ascertain and give effect to the intention of the Legislature." *Riley v. Cnty. of Broome*, 95 N.Y.2d 455, 463 (2000) (internal citation and quotation marks omitted). "Whenever such intent is apparent, from the entire statute, its legislative history, or the statutes of which it is made a part, it must be followed in construing the statute." *Abood v Hospital Ambulance Service, Inc.*, 30 N.Y.2d 295, 298 (1972)

---

[6] This conclusion is consistent with "General Municipal Law § 50-k," which is "the comparable statute [to § 50-l] for New York City employees." *Galvani*, 242 A.D.2d at 68. General Municipal Law § 50-k, like § 50-l, was "primarily directed at saving imperfect and, therefore, fallible public employees from the potentially ruinous legal consequences following from unintentional lapses in the daily discharge of their duties." *Id.* (quoting *Blood v. Bd. of Educ.*, 121 A.D.2d 128, 132 (1st Dep't 1986)). Unlike § 50-l—but like §22-2.8—§ 50-k is a comprehensive statutory scheme including definitions, enforcement provisions, and the like. And indemnification under § 50-k specifically covers "a former employee, his estate or judicially appointed personal representative."

(internal citations and quotations omitted); *see also* N.Y. Stat. Law §§ 92, 95, 96.

Failing to apply the protections applicable to Nassau County police in Gen. Mun. L. § 50-l to a former officer or an officer's estate would completely undermine the goal of the statute—to ensure that officers are not chilled by the prospect of future liability. As the President of the Nassau County Police Department's Superior Officer's Association wrote in support of Gen. Mun. L. § 50-L, "Every time an officer makes an arrest, it is with the feeling that he will be served with a Civil lawsuit wherein his home, family and ability to properly support these are up for grabs." Exhibit J at 21. Gen. Mun. L. § 50-l could only ameliorate this fear if its protections did not evaporate the moment an officer retired or passed away. *See also* Exhibit K at 28 (Letter from Patrolmen's Benevolent Association of Nassau County urging passage of the act on behalf of police officers "and their families").

Nassau County has consistently recognized that Gen. Mun. L § 50-l should be read, like §22-2.8, to cover both former officers and officer's estates. For example, when the Police Officer Indemnification Board met to determine its indemnification obligations in this very case, it noted that of the twenty-three officer defendants it was considering, all but two were no longer employed with the Nassau County Police Department, and two were deceased. Exhibit L. The Board nevertheless voted to indemnify all of them. Exhibit M. Even now, the County does not dispute that it is obligated to indemnify former Nassau County police officers under § 50-l, and presumably it has done so many times in the past. But the text of § 50-l is just as silent with respect to "former officers" as it is with respect to "estates." And there is no rational basis, consistent with the purposes of § 50-l, to conclude that it was intended to cover former officers but not their estates.

**2.  *Nassau County Admin. Code § 22-2.8 is still in effect, and clearly covers estates***

The only way to read § 50-l to "give effect to the intention of the Legislature," *Riley*, 95 N.Y.2d at 463, is that it provides indemnification protections to *all* "duly appointed police officer[s] of the Nassau county police department" who are sued for actions determined to be taken "within the scope of [their] employment"—including officers who had left the force or died by the time they were sued or had judgment entered against them. But assuming for the sake of argument there was a question as to that interpretation, there could still be no dispute that the County is statutorily obligated to indemnify Volpe's estate. That is because if § 50-l is construed only to apply to *current* officers —contrary to how Nassau County has consistently interpreted it—then it would not apply to Volpe's estate at all. And if § 50-l does not apply, then as the estate of a County employee, Volpe's estate would be entitled to indemnification under Nassau County Admin. Code § 22-2.8.

Defendants have claimed that "Nassau County Admin. Code § 22-2.8 does not apply to lawsuits against Nassau County police officers" because "Gen. Mun. Law § 50-l supersedes Nassau County Admin. Code § 22-2.8." D.E. 246 at 3. But the "notwithstanding" clause at the beginning of § 50-l only means that § 50-l takes precedence *to the extent that it conflicts* with another statute. *See Smith ex rel. Estate of Smith v. Fed. Reserve Bank of New York*, 346 F.3d 264, 271 (2d Cir. 2003) (rejecting argument that statute with a "notwithstanding any other provision of law" clause abrogated another statute where there was "no conflict" between the two; holding "'notwithstanding' clause applies only when some 'other provision of law' conflicts"); *see also State v. John S.*, 23 N.Y.3d 326, 341 (N.Y. 2014) ("The meaning of the statute's 'notwithstanding' clause is plainly understood and 'clearly supersedes any *inconsistent* provisions of state law.'") (emphasis added).

15

Section 50-l does not by its terms take away or limit indemnification protections to any County employees; it is a positive provision granting the most expansive indemnification protections possible to "duly appointed police officer[s] of the Nassau county police department." Even if that were read to be limited to *current* Nassau County police officers, that would only mean that § 50-l has no application to Volpe or his estate at all. And if § 50-l does not apply to Volpe or his estate, then it certainly does not *conflict* with § 22-2.8, which by its plain terms provides full indemnification to any former County employee or his estate for actions taken in the scope of his County employment.

Nassau County itself follows this plain interpretation of the interplay between the two statutes. In the letters it provides to police officers notifying them of a pending suit and their rights with respect to indemnification, it refers to both N.Y. Gen. Mun. L §50-l and Admin. Code § 22-2.8 as the basis for the County's representation and indemnification. And in the County's response to Plaintiffs' discovery requests regarding indemnification early in this case, it informed Plaintiffs that the "defendants have been indemnified" and enclosed a copy of Nassau County Administrative Code § 22-2.8.

**D. The failure of Nassau County's lawyers to inform the Estate that Nassau County would contest its obligations to indemnify an officer's Estate and to take steps to protect the Estate is a breach of fiduciary duty**

"To establish a breach of fiduciary duty, a plaintiff must prove the existence of a fiduciary relationship, misconduct by the defendant, and damages directly caused by the defendant's misconduct." *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 204 (S.D.N.Y. 2008). The lawyers representing first Volpe, and later the Estate—both the outside special counsel from Freeman Nooter & Ginsberg, and their co-counsel from the Nassau County Attorney's Office— clearly had a fiduciary relationship with their clients. "[I]t is elemental that a fiduciary owes a

16

duty of undivided and undiluted loyalty to those whose interests the fiduciary is to protect."
*Birnbaum v. Birnbaum*, 73 N.Y.2d 461, 466 (N.Y. 1989). Yet the County's lawyers are acting
directly against the Estate's interests in seeking to make the Estate solely liable for the judgment.

Furthermore, Defendants admit that it never occurred to anyone in Nassau County to
dispute whether the County was obligated to indemnify Volpe's Estate until a few weeks ago.
*See* Exhibit N (Letter from Lou Freeman to Neufeld Scheck & Brustin, dated Feb. 27, 2015) at
1.[7] That means that defense counsel never informed Volpe[8] or his Estate of this risk, either. Had
they done so, under the terms of both the indemnification contract and § 22-2.8, Volpe and/or his
Estate would have been entitled to separate counsel, at the County's expense, throughout this
litigation. Exhibit B; Nassau County Admin. Code § 22-2.8. That counsel could have taken
actions to protect Volpe and the Estate's rights to have the County satisfy the judgment, such as
contesting the dismissal of the *respondeat superior* claim, arguing for liability of other officers,
and establishing the County's indemnification liability earlier in the case.

### E.   Even if there were a colorable question, Nassau County is estopped from contesting its obligation now.

"Equitable estoppel is grounded on notions of fair dealing and good conscience and is
designed to aid the law in the administration of justice where injustice would otherwise result."
*In re Ionosphere Clubs, Inc.*, 85 F.3d 992, 999 (2d Cir. 1996). In general, estoppel prevents a
party from deriving a benefit from its own misrepresentations. *See Airco Alloys Div. v. Niagara
Mohawk Power Corp.*, 430 N.Y.S.2d 179 (4th Dep't 1980) ("Equitable estoppel prevents one
from denying his own expressed or implied admission which has in good faith been accepted and

---

[7] Even if this representation of recent realization is incorrect, there is no suggestion that Nassau County or any of the
attorneys working for the County ever advised Volpe of the risk that indemnification would not survive his death.
Either the County and its attorneys failed to provide notice (misconduct by omission) or they intentionally
misrepresented to Volpe and to his Estate that the County had indemnified him (affirmative misconduct).
[8] Given that Volpe was dying of cancer at the time he was deposed in this case, his lawyers had an obligation to
inform him if there was a risk Nassau County would not indemnify his Estate.

acted upon by another."); *In re Ionosphere*, 85 F.3d at 999-1000 ("[O]nce a party accepts the proceeds and benefits of a contract, that party is estopped from renouncing the burdens the contract places upon him."). Specifically, "equitable estoppel is a principle or an affirmative defense that serves to stop another party from denying a material fact." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996).

"Under New York law, equitable estoppel requires a showing of (1) An act constituting a concealment of facts or a false misrepresentation; (2) An intention or expectation that such acts will be relied upon; (3) Actual or constructive knowledge of the true facts by the wrongdoers; (4) Reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment." *Gen. Elec. Capital Corp. v. Armadora, S.A.*, 37 F.3d 41, 45 (2d Cir. 1994).

> ### i. For eight years, Nassau County has consistently represented that it had indemnified and saved harmless Defendant Joseph Volpe and his Estate.

Over the last eight years of litigation and through two trials, Nassau County consistently and unambiguously maintained that it had indemnified all the individual defendants, both to Volpe and later his Estate, and to Plaintiffs *on behalf of* Volpe and his Estate.

Nassau County took this position from the earliest days of this litigation. First, Nassau County made direct representations to Volpe that, once there was a determination from the Police Officer Indemnification Board that he was acting within the scope of his employment and duties, "the County will indemnify you for any award of damages against you." Ex. B. In response to Plaintiffs' first set of discovery demands in July 2007, Deputy Nassau County Attorney Liora Ben-Sorek answered, on behalf of all defendants, "please be informed that the defendants have been indemnified," and produced a copy of § 22-2.8 of the Nassau County

Administrative Code. *See* Exhibit D. Though they had ongoing discovery obligations, defendants never updated or modified their representations regarding indemnification before discovery closed in April of 2012. *See Gen. Elec. Capital Corp.*, 37 F.3d at 45 ("Silence in the face of an explicit contrary assumption by an innocent party may constitute a concealment of facts or a false misrepresentation for estoppel purposes.").

Indeed, in 2011, after Joseph Volpe passed away, counsel for Nassau County and Plaintiffs' counsel extensively discussed the process by which to substitute the proper party for him. Relying on the indemnification agreement and their authority under it, Nassau County's counsel proposed that the parties stipulate "to substitute 'the Estate of Joseph Volpe' as a party, with service on [Nassau County's counsel's] office." Exhibit O, at 1 (Letter from Anna Benvenutti Hoffmann to Lou Freeman and Nadjia Limani, dated March 1, 2011). In other words, defense counsel implicitly recognized that the County was the real party in interest; they did not believe anyone else from Volpe's family need even be notified of the change. It was only because Plaintiffs' counsel pointed out that, even though the County was indemnifying, the legally appropriate party for substitution was either Volpe's successor or the representative of his estate, that Carolann Hesseman as Executrix of the Volpe's Estate was made a party at all. *Id.*

The County's representations that they had indemnified all defendants and were the real party in interest in the case continued through the drafting of the jury questionnaire for the second trial, *see* Exhibit 16, at Question Nos. 16–17 (Jury Questionnaire), voir dire, *see* Voir Dire Tr. (3/19/2014) at 84:11–85:14, 102:24–103:10 (Court questioning potential jurors on whether status as a Nassau County taxpayer would bias consideration of this case), 110:22–111:10, introductions to the Court and to the jury, *see* Liab. Tr. (Colloquy) at 2:14–3:3, 63:17–24, 309:20–22 ("MR. FREEMAN: And will you tell them that we're representing the County?

THE COURT: Yes."), 311:9–12, 312:8–12, opening statements, *see* Liab. Tr. (Defendants'

Opening Statement) at 368:18–20 ("MR FREEMAN: And it is my honor, my privilege, to

represent the County and some of its finest, one of whom is in the courtroom today."), 376:24–

377:6 ("MR FREEMAN: We're not district attorneys. We are representing the County as special

counsel."), closing statements, *see* Liab Tr. (Defendants' Closing Statement) at 2776:22–25,

2801:18–22 ("And when they say to you on opening statements that Restivo and Halstead want

to get paid back on a debt that they're owed, maybe it's Mr. Robinson's debt. But instead, you go

after the police department and the county . . . ."), 2807:11–14 ("It's done because they want the

debt to be paid by the county and the police department . . . ."), and settlement questions from the

Court prior to the damages trial, *see* Damages Tr. (Colloquy) at 351:3–6.[9]

### ii. Defendant Nassau County had an intention or expectation that their representations regarding indemnification would be relied upon.

Defendant Nassau County clearly intended and expected that Joseph Volpe and his

Executrix after his death would rely on the County's indemnification representations. In their

2007 agreement, the County secured Volpe's complete cooperation and relinquishment of his

rights to have his own private counsel or direct his own defense. In return, the County promised

Volpe representation and indemnification. "[O]nce a party accepts the proceeds and benefits of a

contract, that party is estopped from renouncing the burdens the contract places upon him." *In re*

*Ionosphere*, 85 F.3d at 999–1000.

Similarly, Defendant Carolann Hesseman as Executrix of Volpe's Estate undoubtedly

---

[9] Though legally unnecessary to establish that equitable estoppel applies here, it is probable that the Rule 69 discovery requests that Plaintiffs served on February 26, 2015 would produce further representations Nassau County has made directly to Carolann Hesseman as Executrix of Joseph Volpe's Estate regarding the County's indemnification of the Estate. Promissory estoppel is a species of equitable estoppel. *In re Ionosphere*, 85 F.3d at 999. Under New York law, a party asserting promissory estoppel must prove: "(1) a clear and unambiguous promise; (2) reasonable and foreseeable reliance on that promise; and (3) injury to the relying party as a result of the reliance." *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000). It is probable that, based on the information produced from the Rule 69 discovery requests to the Estate, Defendant Hesseman's claims against Nassau County would also, in the alternative, satisfy the requirements for promissory estoppel.

relied on Nassau County's indemnification promise when she, for example, failed to notify the Surrogate's Court that the Estate was a defendant in this lawsuit, opening Ms. Hesseman up to potential litigation and personal liability. *See* D.E. 243-2 at ¶ 5. Neither the 2007 agreement or the applicable statutes indicated to Volpe that the County's indemnification would not survive his death. In fact, as Defendants' counsel suggests the County only considered the possibility of denying their promise to indemnify now, it is clear that neither the County nor Defendants' counsel ever warned Volpe or the Estate of that risk. Had Volpe or his Estate been informed that the County would not indemnify the Detective post-judgment, Volpe, and his Estate after him, would have been entitled to separate representation, and could have taken a number of different positions in this litigation, which would have been more beneficial to him personally. These include arguing for the liability of others, providing additional information in his depositions prior to his death from cancer, opposing the County's motion to dismiss Plaintiffs' *respondeat superior* claim, or cross-claiming against the County as a necessary party, among others.

Despite Defendants intention and expectation that Volpe and his Estate would rely on Nassau County's representations regarding indemnification, they did nothing to contradict this expectation.

### iii.  Defendant Nassau County had actual or constructive knowledge of the true facts

No material fact bearing on Nassau County's indemnification obligation has changed since 2007 when the Police Indemnification Review Board made its decision. There have been no substantively significant changes to either statute governing the County's indemnification obligation since the statutes were enacted decades ago. *See* New York Gen. Mun. L. § 50-l; Nassau County Admin. Code § 22–2.8. The Estate has been a party to this lawsuit since 2011. To the extent Nassau County now seeks to argue that the law prevents their indemnification of the

Volpe Estate, the County has had actual or constructive knowledge of the true facts for at least four years. Over those four years, the County has consistently benefited from the Estate's reliance on the County's promise to indemnify.

### iv.   Plaintiffs and Defendant Carolann Hesseman as Executrix of the Estate of Joseph Volpe actually relied on Defendant Nassau County's representations.

Defendant Volpe and the Executrix of his Estate each objectively relied on Nassau County's indemnification representations to their substantial detriment. As described above, in reliance on the County's promises, Defendant Volpe relinquished a number of his rights, including his right to direct his own defense, and, in doing so, abandoned a number of personally beneficial litigation positions. After Volpe's death, Defendant Hesseman, like her brother before her, allowed Nassau County to completely control the Estate's defense and to enter or refuse to enter settlement agreements. "Distinguished from waiver, of course, is the intervention of principles of equitable estoppel, in an appropriate case, such as where an insurer, though in fact not obligated to provide coverage, without asserting policy defenses or reserving the privilege to do so, undertakes the defense of the case, in reliance on which the insured suffers the detriment of losing the right to control its own defense. In such circumstances, though coverage as such does not exist, the insurer will not be heard to say so." *Albert J. Schiff Associates, Inc. v. Flack*, 51 N.Y.2d 692, 699 (1980).

### v.   Given Nassau County's position for the last eight years, equitable estoppel dictates that they may not now take a contrary position regarding indemnification.

On February 17, 2015, for the first time, Nassau County's counsel indicated that there was a question regarding Nassau County's intention to honor its indemnification agreement. D.E. 243. In a filing submitted on Ms. Hesseman's behalf, Defendants' counsel instructed Plaintiffs to seek satisfaction of their judgment from the Volpe Estate directly. *Id*. But "[the] doctrine [of

equitable estoppel] precludes a party at law and in equity from denying or asserting the contrary

of any material fact which he has induced another to believe and to act on in a particular manner.

. . . Parties are estopped to deny the reality of the state of things which they have made to appear

to exist and upon which others have been made to rely." *Holm v. C.M.P. Sheet Metal, Inc.*, 455

N.Y.S.2d 429, 433 (N.Y. 1982).

Nassau County, by their assertions and conduct over the past eight years, induced the

reliance of Joseph Volpe and his Estate on the County's promise of indemnification. The County

paid for and unilaterally directed Volpe's and the Estate's defense though trial.  Only after entry

of a $36 million judgment has the County suggested that the facts are otherwise than the County

made them to appear. Given the County's representations and the Volpe Defendants detrimental

reliance on those representations, the County may not be heard to deny that promise now.

### F.   Additionally, the County and the County's attorneys representations to Plaintiffs and to the Court estop them from contesting liability now.

Though in a CPLR 5227 special proceeding, the Plaintiffs-Judgment Creditors stand in

the shoes of the Judgment Debtor to enforce obligations owed to her, *White Plains Plaza Realty,*

*LLC*, 970 N.Y.S.2d at 49, Plaintiffs also have an independently enforceable claim of equitable

estoppel against Defendant Nassau County.

As described extensively above, Nassau County and its attorneys have consistently

maintained that the County had indemnified all individual defendants. Beyond the County's

intention and expectation that Defendant Volpe and his Estate would rely on these

representations, in Defendants' supplemental memorandum in support of their motion for a stay

of enforcement, Defendants also explicitly noted their expectation that *Plaintiffs* would rely on

their representations regarding Nassau County's decision to indemnify all of the individual

defendants. D.E. 246 at 9 ("In civil rights actions like the instant case, the plaintiffs' primary

23

objective is to make the entity which can afford to pay the monetary damages responsible for payment of those damages.").

In fact, Plaintiffs explicitly expressed their reliance on Nassau County's indemnification representation when Plaintiffs noted, "For example, there is a well-recognized potential conflict in having individual police officers and the county that employed them represented by the same counsel in a § 1983 trial. *See Dunton v. Suffolk County*, 729 F.2d 903 (2d Cir. 1984). However, Plaintiffs have not raised any issue about that with the Court here, because Defendants have assured us that Nassau County will indemnify the individual officers for all damages, including punitive damages, obviating any conflict. See Exhibit A." D.E. 139 at 5.

And, there can be no doubt that Plaintiffs, also, foreseeably relied on Nassau County's indemnification representations by, for example, dismissing claims against a number of individual defendants, dismissing Plaintiffs' *Monell* claims directly against the County, and failing to raise the conflict issue created by Defendants' counsel's current position regarding indemnification, *see* D.E. 244. Were parties not able to rely on opposing parties' consistent representations, litigation would grind to a standstill. Parties would never be able to voluntarily dismiss defendants or claims.

In *Lowrance v. Coughlin*, the Court faced a comparable situation to the one that has arisen here, and applying the principles of equitable estoppel, entered judgment against the State of New York. 862 F.Supp. 1090 (S.D.N.Y. 1994). In that § 1983 action, after all the evidence had been presented and the individual defendants' liability had been found, the New York Attorney General's Office informed the Court that the Attorney General had not, in fact, received authorization from certain of individual defendants to appear on their behalf. *Id.* at 1100. Even though the Court did not have personal jurisdiction over the individual defendants and, therefore,

24

they could not be found personally liable, the Court found that "since plaintiff reasonably relied on the Attorney General's representations throughout these lengthy proceedings, we find that the State . . . is equitably estopped from denying that it did in fact appear for them. Accordingly, as to these defendants, we find that although they are not personally liable, the State, which purported to appear on their behalf and to indemnify them for any liability arising out of their actions as state employees, is liable for the damages found herein arising by virtue of their actions." *Id.*

**IV.    Conclusion**

At least four separate and independent bases establish Nassau County's debt to Defendant-Judgment Debtor Carolann Hesseman as Executrix of the Estate of Joseph Volpe: the County's contractual obligations to the Volpe Estate, the County's statutory obligations to the Volpe Estate, the breach of fiduciary duty by the County's lawyers, and the County's consistent representations throughout this litigation that induced the Judgment Debtor's detrimental reliance. Any one of these bases would be alone sufficient Pursuant to CPLR 5227 and the debt owed by Nassau County to the Judgment Debtor, Plaintiffs-Judgment Creditors now request the Court enter judgment in the amount of the full judgment, plus attorney's fees, costs, and interests, directly against Nassau County.


Dated: March 9, 2015                         Respectfully submitted,
New York, NY

                                                      /s/ Anna Benvenutti Hoffmann
                                                     Nick Brustin
                                                     Anna Benvenutti Hoffmann
                                                     Alexandra Lampert
                                                     Elizabeth Daniel Vasquez
                                                     NEUFELD SCHECK & BRUSTIN, LLP
                                                     99 Hudson St., 8th Floor
                                                     New York, NY 10013

*Attorneys for Plaintiffs John Restivo and
Dennis Halstead*

## <u>Certificate of Service</u>

I hereby certify that a true and correct copy of Plaintiffs' Petition, Pursuant to N.Y. 5227, For Special Proceeding and for Entry of Judgment to Compel Payment of a Debt Owed to Judgment Debtor was served by ECF on March 9, 2015 upon all counsel of record.


   /s/ Anna Benvenutti Hoffmann
Anna Benvenutti Hoffmann