```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JOHN RESTIVO and DENNIS HALSTEAD,
ET AL.,

                    Plaintiffs,
                                              MEMORANDUM & ORDER
        -against-                             06-CV-6720(JS)(SIL)

NASSAU COUNTY, CAROLANN HESSEMAN,
AS EXECUTRIX FOR THE ESTATE OF
JOSEPH VOLPE, in his individual
capacity, and CHARLIE FRAAS, in
his individual capacity, ET AL.,

                    Defendants.
----------------------------------X
```

APPEARANCES

For Plaintiffs:     Barry C. Scheck, Esq.
                    Alexandra Lynn Lampert, Esq.
                    Monica R. Shah, Esq.
                    Nick Joel Brustin, Esq.
                    Anna B. Hoffmann, Esq.
                    Peter Jon Neufeld, Esq.
                    Neufeld Scheck & Brustin LLP
                    99 Hudson Street, 8th Floor
                    New York, New York 10013

                    Joshua Evan Dubin, Esq.
                    Joshua E. Dubin, Esq., P.A.
                    212 NE 16th Terrace
                    Fort Lauderdale, FL 33301

                    David Graff, Esq.
                    Rachael Ann Kierych, Esq.
                    Anderson Kill & Olick PC
                    1251 Avenue of The Americas
                    42nd Floor
                    New York, NY 10020

                    Leon Friedman, Esq.
                    148 E. 78th St.
                    New York, NY 10075

```
For Defendants:
Nassau County        Daniel A. Bartoldus, Esq.
                     Amy E. Bedell, Esq.
                     Annemarie Susan Jones, Esq.
                     Lewis Johs Avallone Aviles & Kaufman, LLP
                     One CA Plaza, Suite 225
                     Islandia, NY 11749

                     Liora M. Ben-Sorek, Esq.
                     Dennis J. Saffran, Esq.
                     Sondra Meryl Toscano, Esq.
                     Office of the Nassau County Attorney
                     One West Street
                     Mineola, New York 11501

Carolann Hessemann,
as executrix of
the Estate of
Joseph Volpe         Peter J. Tomao, Esq.
                     Law Office of Peter J. Tomao
                     600 Old Country Rd, Suite 328
                     Garden City, NY 11530

                     Thomas J. McNamara, Esq.
                     Certilman, Balin, Adler & Hyman, LLP
                     90 Merrick Avenue
                     East Meadow, NY 11554
```

SEYBERT, District Judge:

Pending before the Court is Neufeld Scheck & Brustin LLP's ("NSB") motion for attorney fees (Docket Entry 233), together with a motion to amend (Docket Entries 240). For the reasons that follow both motions are GRANTED.[1]

---

[1] Plaintiffs seek through their first motion (Docket Entry 240) to amend their fee request in light of the fact that Elizabeth Daniel Vasquez, Esq. worked on Plaintiffs' case as a paralegal, a law clerk, and an attorney. She therefore submitted a revised declaration and fee request which takes her hourly rate at these different levels into account. (See Mot. to Amend, Docket Entry 240.) Plaintiff's' motion to amend is GRANTED and the Court will consider Plaintiffs' revised fee request.

BACKGROUND

The Court assumes familiarity with the facts and procedural history of this case. Thus, only those facts relevant to NSB's motions will be discussed.

Plaintiffs John Restivo and Dennis Halstead ("Plaintiffs") brought this § 1983 suit seeking to prove that Nassau County Police Detective Joseph Volpe ("Volpe") caused their wrongful convictions for the death of Theresa Fusco.[2] The case was vigorously litigated for eight years (Benvenutti Decl., Docket Entry 234, ¶ 7.) Discovery included thirty-five depositions, spanning over fifty-four deposition days, and twenty-three separate discovery requests. (Benvenutti Decl. ¶ 7.) The case was tried twice. The first trial lasted thirty-one trial days over eleven weeks and included the presentation of forty-two witnesses. The second trial spanned seventeen trial days over five weeks and included the presentation of forty witnesses. (Benvenutti Decl. ¶ 8.) Both trials were technically complex, involving extensive expert testimony about DNA evidence and forensic hair comparison. (Benvenutti Decl. ¶ 9.) Plaintiffs offered nine separate expert witnesses and Defendants offered

---

[2] Plaintiffs originally commenced this case against Defendants Volpe, Nassau County, and Charlie Fraas (collectively "Defendants"), and others.

four. (Benvenutti Decl. ¶ 9.) There was litigation over the admissibility of the opinion testimony of eight of these experts, and the parties conducted a five-day Daubert hearing at which Plaintiffs largely prevailed. (Benvenutti Decl. ¶ 9.) Throughout most of discovery and the first trial, Plaintiffs' case was joined with that of a third man, John Kogut, who also claimed he was wrongfully convicted of the Theresa Fusco murder. (Benvenutti Decl. ¶ 10.) This joinder substantially complicated the legal and factual issues in the case, given that Kogut had confessed to the crime, while Plaintiffs had not. (Benvenutti Decl. ¶ 10.) At the conclusion of the second trial, the jury found Volpe liable to Plaintiffs for unconstitutionally depriving them of their right to a fair trial and for malicious prosecution. (See Verdict Sheet, Docket Entry 198.) The jury awarded Plaintiffs $18 million each in damages, which amounts to $1 million for each year Plaintiffs were imprisoned. (Judgment, Docket Entry 228.) The parties also endured several rounds of substantial legal briefing, including a motion for judgment on the pleadings; a motion for reconsideration of the Court's ruling; a motion for summary judgment; post-trial briefing after the first trial; another motion for reconsideration; and post-trial briefing after the second trial. (Benvenutti Decl. ¶ 11.)

Over the eight years this case was litigated, ten different NSB attorneys and four paralegals worked on the matter.

(See Benvenutti Decl. ¶¶ 18, 24.) The case was staffed by anywhere from two to eight attorneys during the various phases of the litigation. (Defs.' Opp. Br., Docket Entry 241, at 10-11.) NSB now seeks attorney fees and costs for their work on this case. (Docket Entry 233, at 1-2.)

DISCUSSION

I. Attorney Fees in 1983 Cases

Section 1988(b) empowers the Court to award reasonable attorney fees to the prevailing party in a § 1983 action. See 42 U.S.C. § 1988. After the court finds that a party has prevailed, it must determine a reasonable fee to award to prevailing party's attorneys. Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992). The lodestar approach is generally used to calculate reasonable attorney fees. "Under this approach, the number of hours reasonably expended on the litigation is multiplied by a reasonable hourly rate for attorneys and paraprofessionals." Id.; DiFilippo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985) ("where . . . the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly rate, i.e., the lodestar figure, is presumptively appropriate").[3] Thus, the Court must arrive at a reasonable hourly rate for the attorneys who worked on the case

---

[3] The prevailing party is also entitled to attorney fees for bringing its § 1988 application. Valley Disposal, Inc. v. Cent. Vt. Solid Waste Mgmt. Dist., 71 F.3d 1053, 1060 (2d Cir. 1995)

5

and "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998) (quoting DiFilippo v. Morizio, 759 F.2d 231, 235-36 (2d Cir. 1985)).

II. Reasonable Hourly Rate

The prevailing party in a § 1983 action should be compensated at "market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Gierlinger, 160 F.3d at 882 (quoting Blum v. Stenson, 465 U.S. 885, 895 n.11, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984)). NSB argues that to arrive at reasonable billing rates, the Court should use hourly rates prevailing in the Southern District of New York, rather than the Eastern District. (Pls.' Br. at 15.) Specifically, NSB seeks reimbursement for time expended at hourly rates of $700 for Barry Scheck and Peter Neufeld; $600 for Nick Brustin; $500 for Anna Benvenutti Hoffmann, Deborah Cornell, and Josh Dubin; $400 for Monica Shah; $350 for Sonam Henderson; $300 for Alexandra Lampert; and $250 for Elizabeth Daniel Vasquez. (Pls.' Br. at 13.) "[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." Simmons v. New York City Transit Auth., 575 F.3d 170, 175-76 (2d Cir. 2009). To overcome the presumption, "a litigant must persuasively establish that a reasonable client would have

selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Id. The Second Circuit explained in Simmons that "[t]he party seeking the award must make a particularized showing, not only that the selection of out-of-district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." Id. "Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise." Id.

With these rules in mind, the Court finds that NSB has overcome the presumption that forum district rates should apply. NSB has particular expertise litigating § 1983 wrongful conviction suits and has successfully litigated dozens of such cases around the country. (See Pls.' Br. at 17.) Even Defendants admit that "at one time [NSB] might have held a monopoly on 'DNA law.'" (Defs.' Opp. Br., at 25.) Moreover, this case was exceedingly arduous and complex, involving extensive expert analysis and presentation of DNA evidence, spanning eight years and two trials. And Defendants do not dispute that no lawyers with primary offices in the Eastern District of New York have obtained a successful jury verdict in a § 1983 wrongful conviction suit, as NSB did here. Likewise, there is no dispute that NSB achieved excellent results

7

on behalf of both of their clients. Therefore, it is appropriate to apply Southern District, rather than Eastern District rates in this case.

The Court must set a fee, which is "adequate to attract competent counsel but which do not produce windfalls." Blum v. Stenson, 465 U.S. 886, 893-94, 104 S. Ct. 1541, 1546, 79 L. Ed. 2d 891 (1984) (quoting S. REP. NO. 94-1011, at 6, as reprinted in 1976 U.S.C.C.A.N. 5908, 5913). Although the $700 an hour rate requested for Messrs. Scheck and Neufeld is high, the Court find that it is a reasonable rate in light of the complexity of the issues involved in this dispute; the forty years of experience litigating civil rights that both attorneys brought to the case; and the market for legal services in the Southern District of New York, which supports a $700 per hour rate for senior partners. While the highest hourly rate awarded for a successful § 1983 cited by NSB is $650 per hour, most of the cited cases are from 2011 and involved significantly simpler disputes. See, e.g., Mawere v. Citco Fund Servs., (USA) Inc., No. 09-CV-1342, 2011 WL 6779319, at *5 (S.D.N.Y. Sept. 16, 2011) report and recommendation adopted, No. 09-CV-1342, 2011 WL 6780909 (S.D.N.Y. Dec. 27, 2011) (awarding $650 dollars an hour to an attorney with 32 years of experience in an employment discrimination case); Kim v. Kum Gang, Inc., No. 12-CV-6344, 2014 WL 2514705, at *2 (S.D.N.Y. June 2, 2014) (awarding an "experienced" litigator $600 per hour in a wage and hour case).

Therefore, Messrs. Scheck and Neufeld should be compensated at an hourly rate of $700 per hour, in line with rates charged for similar complex federal work in the Southern District. Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd., No. 10-CV-1853, 2011 WL 1002439, at *5 (S.D.N.Y. Mar. 16, 2011) aff'd, 483 F. App'x 634 (2d Cir. 2012) (approving an hourly rate of $761 for a senior partner in a case about compelling arbitration). In addition, the Court finds that the requested hourly rates for all other NSB attorneys are in line with court-approved rates in successful § 1983 cases in the Southern District. See, e.g., Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding slightly lesser rates in an employment discrimination case in 2008).

III. Hours Expended

NSB seeks compensation for 11,222.6 hours of total attorney time during the eight years this case was litigated. (Pls.' Reply Br., Docket Entry 256, at 2.) Defendants claim that the number of hours NSB billed was excessive and attack NSB's time expenditures and billing practices in an effort to reduce their proposed fee. (Defs.' Opp. Br. at 1-2.)

A. Time Spent on Dismissed, Withdrawn or Abandoned Claims

Defendants first argue that the Court should reduce NSB's hours across-the-board to account for time spent on dismissed, withdrawn, and abandoned claims. (Defs.' Opp. Br. at 2.) Defendants specifically assert that Plaintiffs' state law

9

claims seeking to hold Defendants liable for alleged misconduct during the murder investigation is not compensable. (See Defs.' Opp. Br. at 2-7.) Generally, "[i]n determining the number of hours reasonably expended for purposes of calculating the lodestar, the district court should exclude excessive, redundant or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999). However, the Supreme Court made it clear in Hensley v. Eckerhart, 461 U.S. 424, 434-35, 103 S. Ct. 1933, 1940, 76 L. Ed. 2d 40 (1983), that the critical factor in determining whether to reduce counsel's hours because of unsuccessful claims is the degree to which counsel achieved success in the lawsuit as a whole. As the Court explained:

> Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation, and indeed in some cases of exceptional success an enhanced award may be justified. In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit. Litigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee. The result is what matters.

Id. (internal citation omitted). In addition, when claims that were not meritorious "involve a common core of facts or [are] based on related legal theories," they are compensable. Hensley v.

10

Eckerhart, 461 U.S. at 435, 103 S. Ct. at 1940; Green v. Torres, 361 F.3d 96, 98 (2d Cir. 2004). Here, NSB achieved excellent results for their clients after eight years of litigation.[4] Moreover, it cannot be legitimately argued that Plaintiffs' claims related to the conduct of the murder investigation do not contain "a common core of facts" with the Sixth Amendment and Malicious prosecution claims Plaintiffs ultimately prevailed on. Both sets of allegations are firmly tethered to the theory that Plaintiffs were wrongfully imprisoned for a murder they did not commit. Especially in a complex case, competent counsel is entitled to raise "alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." Id. at 100.

B. Time Entry Issues

Defendants also raise certain deficiencies they claim exist in NSB's time entries. (Defs.' Opp. Br. at 8.) The principal issues Defendants point to are: (1) the staffing of the case, (2) the practice of block billing, (3) travel time being billed as

---

[4] The only relevant case cited by Defendants is inapplicable because it deals with a situation in which counsel's hours were reduced because they achieved limited success in the underlying litigation. See Zhiwen Chen v. Cnty. of Suffolk, 927 F. Supp. 2d 58, 74-76 (E.D.N.Y. 2013), appeal withdrawn (July 2, 2013) (reducing the total number of hours billed by fifteen percent to account for time spent on unsuccessful claims and noting that only "partial success [was] achieved on the sole issue that went to the jury")

11

attorney time, and (4) the excessive amount of time spent on meetings and phone calls.[5]  (See Defs.' Opp. Br. at 8-21.)

    1. Staffing

Without citing to any specific law, Defendants claim that NSB staffed too many attorneys on the case.  According to Defendants, between two and five NSB attorneys represented Plaintiffs from 2006 and 2011 during the discovery phase of the case; eight attorneys were staffed during the first trial; and six attorneys and one law clerk worked on the case during the second trial.  (Defs.' Opp. Br. at 10.)  Defendants assert that Plaintiffs' staffing choices were unreasonable.  However, tallying the number of attorneys who worked on a case is not enough to prove the case was overstaffed.  See Lochren v. Cty. of Suffolk, No. 01-CV-3925, 2010 WL 1207418, at *3 (E.D.N.Y. Mar. 23, 2010) (awarding attorney fees to thirteen lawyers who worked on a discrimination case spanning five years); In re Nassau Cty. Strip Search Cases, 12 F. Supp. 3d 485, 500 (E.D.N.Y. 2014) (awarding attorney fees to twenty-seven attorneys and twenty-three paralegals).  Moreover, Defendants do not present any persuasive evidence that a particular

---

[5] Defendants also complain that certain of NSB's attorney time records reflect that work completed by attorneys was secretarial in nature.  However, Defendants do not point to any specific time entries in support of their claim, and the Court will not parse through NSB's time records in an effort find support for it.  (See Freeman Decl., Docket Entry 242, at 12.)

phase of the case was overstaffed. The balance of Defendants' argument on staffing consists of abstract references to specific attorneys' hours during various time periods, which the Court will not parse through.

2. Block Billing and Generic Entries

Defendants argue that NSB's hours should be reduced because of the "numerous block billing" entries they submitted. (Defs.' Opp. Br. at 15.) The Court disagrees. Although "block billing makes it more difficult for the Court to determine with precision exactly how much time was spent on each task, the practice of block billing is not prohibited in this Circuit." Rodriguez v. McLoughlin, 84 F. Supp. 2d 417, 425 (S.D.N.Y. 1999). The Court will not penalize NSB for the work it completed based upon such a trivial issue as block billing, which is pervasive in the legal industry.

3. Travel Time Billed as Attorney time

One legitimate concern Defendants point to are instances in which NSB lawyers billed travel time as attorney time. (Defs.' Opp. Br. at 15.) NSB acknowledges that a number of NSB's entries for legal work include travel time, which should be billed at one-half the attorneys regular rate. (Pls.' Br. at 10.) In response to Defendants' concern, NSB submitted a chart detailing these specific entries and asks the Court to omit these entries

completely from its time request. Therefore, the Court will strike these problematic entries from NSB's fee request.

   4. Excessive Time Spent on Meetings and Phone Calls

Finally, Defendants argue that the length of NSB attorneys' phone calls and meetings was excessive. (Defs.' Opp. Br. at 20-21.) If Defendants actually hired NSB as their attorneys and had the privilege of receiving monthly bills, perhaps lengthy meetings and phone calls would be a relevant line of inquiry. But at the conclusion of this litigation saga, rendering an opinion on how long a strategy meeting should take in a complicated case does not seem productive. Therefore, the Court will not endeavor to do so.[6]

IV. Calculating NSB's Fee

The below chart uses NSB's amended hourly figures in their reply brief, which accounts for the revision to the fee calculation due to travel time being billed as attorney time.[7]

---

[6] The Court also declines to address Defendants' argument that the number of hours billed on the fee application were excessive. Defendants' brief does not cite to any relevant precedent and makes only conclusory arguments. (See Defs.' Opp. Br. at 27-29.) It is apparent that compiling attorney billing records from eight years of litigation and responding to Defendants' pedantic arguments took a fair amount of time.

[7] NSB's chart setting forth their fee request is found on the first two pages of NSB's reply brief. The hours subtracted from NSB's original figures because of travel time improperly reported as attorney time are found within Exhibit A to NSB's reply brief. The Court notes that the sum of the dollar figures

| NAME | HOURLY RATE | HOURS | TOTAL |
| --- | --- | --- | --- |
| Barry Scheck | $ 700.00 | 633.2 | $ 443,240.00 |
| Barry Scheck (Travel) | $ 350.00 | 41 | $ 14,350.00 |
| Peter Neufeld | $ 700.00 | 48.2 | $ 33,740.00 |
| Nick Brustin | $ 600.00 | 744.6 | $ 446,760.00 |
| Anna Benvenutti Hoffman | $ 500.00 | 2161.1 | $ 1,080,550.00 |
| Anna Benvenutti Hoffman (Travel) | $ 250.00 | 53.7 | $ 13,425.00 |
| Deborah Cornwall | $ 500.00 | 2938 | $ 1,469,000.00 |
| Deborah Cornwall (Travel) | $ 250.00 | 228 | $ 57,000.00 |
| Monica Shah | $ 400.00 | 329 | $ 131,600.00 |
| Monica Shah (Travel) | $ 200.00 | 8 | $ 1,600.00 |
| Sonom "Sandy" Henderson | $ 350.00 | 999.2 | $ 349,720.00 |
| Sonom "Sandy" Henderson (travel) | $ 175.00 | 20 | $ 3,500.00 |
| Alexandra Lampert | $ 300.00 | 333.4 | $ 100,020.00 |
| Alexandra Lampert | $ 150.00 | 17.3 | $ 2,595.00 |
| Elizabeth Daniel Vasquez | $ 250.00 | 55.3 | $ 13,825.00 |
| Elizabeth Daniel Vasquez (Law Clerk) | $ 175.00 | 533.3 | $ 93,327.50 |
| Elizabeth Daniel Vasquez (Paralegal) | $ 125.00 | 231.9 | $ 28,987.50 |
| Josh Dubin | $ 500.00 | 177.6 | $ 88,800.00 |
| Rachel Shur (Paralegal) | $ 125.00 | 688.3 | $ 86,037.50 |
| James Earl | $ 125.00 | 114.2 | $ 14,275.00 |
| Sophie Glickstein | $ 125.00 | 128 | $ 16,000.00 |
| Ashley Lewis (Paralegal) | $ 125.00 | 739.3 | $ 92,412.50 |
|  |  |  | $ 4,580,765.00 |

Based upon the Court's calculations, NSB is entitled to recover $4,580,765 in attorney fees, plus $320,017.05 in costs,[8] plus $97,132.50 for the cost of the fee petition,[9] for a total of $4,997,914.55 in attorney fees and costs.

---

for attorney time contained on page two of NSB's reply brief is incorrect.

[8] (See Brustin Decl., Docket Entry 235, ¶ 29.)

[9] (See Pl.'s Br. at 5.)

CONCLUSION

The Court awards attorney fees in the amount of $4,677,897.50 (which includes the cost of the fee petition) plus $320,017.05 in costs for a total of $4,997,914.55 in attorney fees and costs. The Clerk of the Court is directed to amend the judgment to include attorney fees and costs. Post-judgment interest, calculated pursuant to 28 U.S.C. § 1961(a), shall run on the award of attorney fees and costs from the date of this Memorandum & Order until the date the fees and costs are paid. In addition, NSB's motion to amend (Docket Entry 240) is GRANTED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

DATED:  November   30  , 2015
        Central Islip, New York