UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JOHN RESTIVO and DENNIS HALSTEAD,
ET AL.,

                    Plaintiffs,

        -against-

NASSAU COUNTY, CAROLANN HESSEMANN,
AS EXECUTRIX FOR THE ESTATE OF
JOSEPH VOLPE, ET AL.,

                    Defendants.
----------------------------------X

MEMORANDUM & ORDER
06-CV-6720(JS)(SIL)

FILED
CLERK

8/28/2017 12:18 pm

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

APPEARANCES
For Plaintiffs:         Barry C. Scheck, Esq.
                        Monica R. Shah, Esq.
                        Nick Joel Brustin, Esq.
                        Anna B. Hoffmann, Esq.
                        Peter Jon Neufeld, Esq.
                        Richard W. Sawyer, Esq.
                        Neufeld Scheck & Brustin LLP
                        99 Hudson Street, 8th Floor
                        New York, New York 10013

                        Joshua Evan Dubin, Esq.
                        Joshua E. Dubin, Esq., P.A.
                        212 NE 16th Terrace
                        Fort Lauderdale, FL 33301

                        David Graff, Esq.
                        Rachael Ann Kierych, Esq.
                        Anderson Kill P.C.
                        1251 Avenue of The Americas, 42nd Floor
                        New York, NY 10020

                        Leon Friedman, Esq.
                        148 E. 78th St.
                        New York, NY 10075

For Defendants:
Nassau County           Daniel A. Bartoldus, Esq.
                        Amy E. Bedell, Esq.
                        Annemarie Susan Jones, Esq.
                        Lewis Johs Avallone Aviles & Kaufman, LLP

One CA Plaza, Suite 225
Islandia, NY 11749

Liora M. Ben-Sorek, Esq.
Dennis J. Saffran, Esq.
Sondra Meryl Toscano, Esq.
Office of the Nassau County Attorney
One West Street
Mineola, New York 11501

Carolann Hessemann,
as executrix of
the Estate of
Joseph Volpe

Peter J. Tomao, Esq.
Richard M. Langone, Esq.
Law Office of Peter J. Tomao
600 Old Country Rd, Suite 328
Garden City, NY 11530

Thomas J. McNamara, Esq.
Certilman, Balin, Adler & Hyman, LLP
90 Merrick Avenue
East Meadow, NY 11554

SEYBERT, District Judge:

Currently pending before the Court is Neufeld Scheck & Brustin LLP's ("NSB") supplemental motion for attorneys' fees (Docket Entry 300). For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART. NSB is awarded $594,130.79 in fees and costs for its post-judgment work on this matter.

<u>BACKGROUND</u>

The Court assumes familiarity with the facts and procedural history of this case, particularly its November 30, 2015 Order awarding NSB $4,997,914.55 in attorneys' fees and costs. See Restivo v. Nassau Cty., No. 06-CV-6720, 2015 WL 7734100 (E.D.N.Y. Nov. 30, 2015). That award encompassed NSB's work from

2

the filing of the case in 2006 to the entry of judgment in 2014. Restivo, 2015 WL 7734100, at *1-2. NSB now seeks an additional award of fees and costs for its work since 2014 on the Second Circuit appeal and various post-judgment proceedings. (Supp. Fee Motion, Docket Entry 300, at 1.) In light of this matter's long history, the Court summarizes only the facts relevant to the instant motion.

I.  Pre-Trial Proceedings and Trial

Plaintiffs John Restivo and Dennis Halstead ("Plaintiffs") brought this Section 1983 suit seeking to prove that Nassau County Police Detective Joseph Volpe ("Volpe") caused their wrongful convictions for the death of Theresa Fusco.[1] Discovery included thirty-five depositions, spanning over fifty-four deposition days, and twenty-three separate discovery requests. (Hoffmann 2014 Decl., Docket Entry 234, ¶ 7.) The case was tried twice. The first trial lasted thirty-one trial days over eleven weeks and included the presentation of forty-two witnesses. The second trial spanned seventeen trial days over five weeks and included the presentation of forty witnesses. (Hoffmann 2014 Decl. ¶ 8.) Both trials were technically complex, involving extensive expert testimony about DNA evidence and forensic hair comparison. (Hoffmann 2014 Decl. ¶ 9.) Plaintiffs

---

[1] Plaintiffs originally commenced this case against Volpe, Nassau County, and others.

offered nine separate expert witnesses and Defendants offered four. (Hoffmann 2014 Decl. ¶ 9.) There was litigation over the admissibility of the opinion testimony of eight of these experts, and the parties conducted a five-day Daubert hearing at which Plaintiffs largely prevailed. (Hoffmann 2014 Decl. ¶ 9.) Throughout most of discovery and the first trial, Plaintiffs' case was joined with that of a third man, John Kogut, who also claimed he was wrongfully convicted of the Theresa Fusco murder. (Hoffmann 2014 Decl. ¶ 10.) This joinder substantially complicated the legal and factual issues in the case, given that Kogut had confessed to the crime, while Plaintiffs had not. (Hoffmann 2014 Decl. ¶ 10.)

At the conclusion of the second trial, the jury found Volpe liable for unconstitutionally depriving Plaintiffs of their right to a fair trial and for malicious prosecution. (See Verdict Sheet, Docket Entry 198.) The jury awarded Plaintiffs $18 million each in damages, which amounts to $1 million for each year Plaintiffs were imprisoned. Between 2006 and 2014, the parties endured several rounds of substantial legal briefing, including a motion for judgment on the pleadings, a motion for reconsideration, a motion for summary judgment, post-trial briefing after the first trial, another motion for reconsideration, and post-trial briefing after the second trial. (Hoffmann 2014 Decl. ¶ 11.)

II.  The Appeal

Because Volpe died while the case was pending, judgment was entered against Carolann Hessemann as executrix for the estate of Volpe ("Defendant" or "the Estate") on November 14, 2014 (the "Judgment"). (See Stip. and Order, Docket Entry 122; J., Docket Entry 228.) Subsequently, the Estate timely filed a notice of appeal. (See Notice of Appeal, Docket Entry 232.) Plaintiffs also filed a notice of cross appeal related to the dismissal of certain claims against Nassau County; however, the cross-appeal was later voluntarily withdrawn. (See Notice of Cross Appeal, Docket Entry 237; Mandate, Docket Entry 281.)

The Estate's appeal included two rounds of briefing and related motion practice. During the initial round of briefing, the Estate requested permission to file a brief approximately twice the length permitted under the Second Circuit's rules and ultimately raised eight issues on appeal. (Hoffmann 2017 Decl., Docket Entry 300-1, ¶ 8.) After this Court issued its November 30, 2015 Order awarding attorneys' fees, the Estate filed an Amended Notice of Appeal, and the Second Circuit allowed supplemental briefing on the reasonableness of the fee award. (See Amended Notice of Appeal, Docket Entry 286; Restivo v. Nassau Cty., No. 14-4662, 2d Circuit Docket Entry 177.) During the appeal, the parties engaged in additional motion practice, including a motion to strike, a motion for sanctions and a motion to dismiss. (See

Restivo v. Nassau Cty., No. 14-4662, 2d Cir. Docket Entries 73, 133, 210.)  On January 19, 2017, the Second Circuit issued an 112-page opinion affirming the Judgment in all respects.  See Restivo v. Hessemann, 846 F.3d 547 (2d Cir. 2017).

III. Post-Judgment Proceedings

　　　　In 2015, while litigating the appeal, the parties briefed a series of complex motions and appeared for several hearings in this Court.  The Estate sought to stay enforcement of the Judgment pending appeal, and for the first time, suggested that it was unclear whether the County was obligated to indemnify the Estate.  (See Estate Mot. to Stay, Docket Entry 243.)  At that time, the County and the Estate were represented by the same firm, and because their interests appeared to be adverse to each other, Plaintiffs moved to disqualify counsel from representing both entities.  (See Conflict Mot., Docket Entry 244.)  Additionally, Plaintiffs filed a petition pursuant to New York C.P.L.R. Section 5227 for a special proceeding and entry of judgment against the County for the full amount of the Judgment against the Estate.  (See Pls.' Pet., Docket Entry 253.)  Counsel for the Estate and the County subsequently withdrew, and both entities were ordered to retain new counsel.  (See Mar. 17, 2015 Minute Order, Docket Entry 259.)

　　　　After another round of briefing regarding the County's obligation to indemnify, the parties negotiated a Stipulation and

Consent Decree.  It provided that the County would indemnify the Estate and that enforcement of the Judgment would be stayed while the appeal was pending.  (Stip. and Consent Decree, Docket Entry 278, § II, ¶¶ 4-5.)  Additionally, the County agreed to prepare "a draft ordinance seeking authority to bond forty five million dollars ($45,000,000.00) to cover its indemnification obligations . . . [and] present the draft ordinance to the Nassau County Legislature for consideration at the next regularly scheduled meeting of the Legislature following the execution of this stipulation."  (Stip. and Consent Decree, § II, ¶ 6.)  The Court so-ordered the Stipulation and Consent Decree on July 1, 2015.

After discovering that the County had failed to draft and present the bond ordinance to the Nassau County Legislature until July 11, 2016, Plaintiffs filed a motion to hold the County in contempt and lift the stay of enforcement of the Judgment on July 20, 2016.  (See Contempt Mot., Docket Entry 295.)  At a hearing on February 23, 2017, the Court granted that motion in part and ordered the County to obtain a bond or otherwise demonstrate why a stay of enforcement was warranted given its non-compliance with the Stipulation and Consent Decree.  (See Feb. 23, 2017 Minute Order, Docket Entry 304.)  Thereafter, the County Treasurer deposited $45 million in a special account designated to satisfy the Judgment should the appeal fail, and the parties negotiated an Order renewing the stay, which the Court so-ordered

on March 29, 2017. (<u>See</u> Letter Mot. to Stay, Docket Entry 310; Order Renewing Stay, Docket Entry 315.) Pursuant to that Order, the County agreed to "pay the Judgment in full within thirty (30) days after it becomes final," and to seek court approval before removing any funds from the account. (<u>See</u> Order Renewing Stay.)

IV. <u>NSB's Supplemental Fee Request</u>

As discussed, the Court previously awarded NSB $4,997,914.55 in attorneys' fees and costs. <u>See</u> <u>Restivo</u>, 2015 WL 7734100, at *5. For the work on the appeal and various post-judgment proceedings, NSB requests an additional $615,804.13 in attorneys' fees and $21,410.01 in costs. (Supp. Fee Motion at 3-4.) During this period, fourteen different lawyers from NSB and outside counsel Anderson Kill P.C. and two paralegals worked on the matter. (Hoffmann 2017 Decl. ¶ 5.)

DISCUSSION

I. <u>Attorneys' Fees in Section 1983 Cases</u>

Section 1988(b) empowers the Court to award reasonable attorney fees to the prevailing party in a section 1983 action. <u>See</u> 42 U.S.C. § 1988. After the court finds that a party has prevailed, it must determine a reasonable fee to award to the prevailing party's attorneys. <u>Grant v. Martinez</u>, 973 F.2d 96, 99 (2d Cir. 1992). The lodestar approach is generally used to calculate reasonable attorney fees. "Under this approach, the number of hours reasonably expended on the litigation is multiplied

8

by a reasonable hourly rate for attorneys and paraprofessionals." Id.; DiFilippo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985) ("where . . . the party achieves success on the merits, an award of all reasonable hours at a reasonable hourly rate, i.e., the lodestar figure, is presumptively appropriate"). Thus, the Court must arrive at a reasonable hourly rate for the attorneys who worked on the case and "examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case." Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998) (quoting DiFilippo v. Morizio, 759 F.2d 231, 235–36 (2d Cir. 1985)).

## II. Reasonable Hourly Rate

The Court previously held that, based on its experience and unique expertise in wrongful conviction cases, NSB was entitled to hourly rates prevailing in the Southern District of New York rather than the Eastern District of New York. Restivo, 2015 WL 7734100, at *3. Specifically, the Court approved the following hourly rates: $700 for Barry Scheck and Peter Neufeld; $600 for Nick Brustin; $500 for Anna Benvenutti Hoffmann, Deborah Cornwall, and Josh Dubin; $400 for Monica Shah; $350 for Sonam Henderson; $300 for Alexandra Lampert; and $250 for Elizabeth Daniel Vasquez. Id. at *5, n.7. The Court also approved Professor Leon Friedman's ("Professor Friedman") hourly rate of $500. Id. at *5 & n.9.

Finally, the Court awarded $125 per hour for paralegals.  Id. at
*5, n.7.

In the supplemental motion, NSB requests the same hourly
rates for Peter Neufeld, Nick Brustin, Anna Benvenutti Hoffmann,
Alexandra Lampert, Elizabeth Daniel Vasquez, and Professor
Friedman. (Supp. Fee Mot. at 3.)  Additionally, NSB requests the
same hourly rate for two paralegals who worked on the case between
2014 and 2017.  (Supp. Fee Mot. at 3.)

Defendant suggests that NSB is not entitled to Southern
District rates for this phase of the case because they are not
experts in appellate litigation or enforcement of judgments.
(Def.'s Opp., Docket Entry 306-1, at 14-15.)  In fact, Defendant
contends, NSB retained outside attorneys to assist it in these
areas.  (Def.'s Opp. at 15.)  Defendant argues that the factors
that led to the application of Southern District rates in the
Court's prior order--that NSB has expertise litigating wrongful
conviction suits, the trials were extensive and complex, and NSB
achieved an excellent result--do not apply to their supplemental
request for fees.  (Def.'s Opp. at 14-15.)  The Court disagrees.

As an initial matter, Defendant has not cited any case
law to support applying rates from different districts in the same
litigation, and the Court is not aware of any.  Moreover, NSB
undoubtedly relied on its expertise in wrongful conviction suits
to prevail on the appeal and during the enforcement proceedings.

The fact that NSB sought assistance from outside experts in order to achieve the best result for their clients should not lead to the application of lower rates. Finally, Plaintiffs were successful on the Estate's appeal and during the enforcement proceedings. Because the Court previously approved these rates, and there is no reason to revisit the appropriate hourly rates for these attorneys and paralegals, the Court will use these rates to calculate the fee award.[2]

NSB requests an hourly rate of $250 for Julia Torti ("Torti"), a former associate at NSB who graduated from law school in 2013. (Torti Decl., Docket Entry 300-6, ¶¶ 5, 9.) This is the same hourly rate approved for Elizabeth Daniel Vasquez ("Vasquez"), a former NSB associate who also graduated in 2013. (Vasquez Decl., Docket Entry 300-5, at ¶¶ 5, 9.) Because the two attorneys have similar levels of experience, and the Court previously approved an hourly rate of $250 for Vasquez, the Court finds that the requested rate of $250 for Torti is reasonable. Defendant argues that this rate is excessive because Torti handled "rudimentary" tasks such as cite checking, editing documents, and

---

[2] Likewise, the Court declines to reduce the requested (and previously approved) rate of $500 per hour for Professor Friedman. (See Def.'s Opp. at 19-20.) Considering Professor Friedman's considerable experience and expertise, (see Friedman 2014 Decl., Docket Entry 233-9), and the fact that $500 per hour falls within the range of hourly rates for experienced civil rights attorneys in the Southern District, the Court sees no reason to reconsider its prior determination.

preparing exhibits. (Def.'s Opp. at 18-19.) However, as discussed infra, such tasks occasionally require the attention of an attorney and are routinely assigned to a junior associate such as Torti. Additionally, this rate is consistent with rates awarded to junior associates in cases in the Southern District. See, e.g., Rozell v. Ross-Holst, 576 F. Supp. 2d 527, 546 (S.D.N.Y. 2008) (awarding $250 per hour for junior associates in employment discrimination case).

NSB requests an hourly rate of $650 for David Goldberg ("Goldberg"), a "nationally recognized appellate expert" who consulted on the Second Circuit appeal. (Hoffmann 2017 Decl. ¶ 5; Goldberg Decl., Docket Entry 300-7, ¶ 2.) Goldberg, a former Law Clerk at the Court of Appeals for the D.C. Circuit and the Supreme Court, specializes in "public law and civil rights litigation, primarily before the U.S. Supreme Court and federal appellate courts." (Goldberg Decl. ¶¶ 5-6.) He also co-founded Donahue & Goldberg, LLP, a public interest law firm, and has been involved in more than 120 cases before the Supreme Court and served as counsel to a party in approximately twenty Supreme Court cases. (Goldberg Decl. ¶¶ 8, 13.) Goldberg's experience and expertise in appellate practice is undisputed, and the Court finds that an hourly rate of $650 is reasonable for his work on the case. See, e.g., Abdell v. City of N.Y., No. 05-CV-8453, 2015 WL 898974, at *3 (S.D.N.Y. Mar. 2, 2015) (awarding $600-650 an hour for

experienced counsel in civil rights action); <u>Powell v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY), Inc.</u>, No. 12-CV-4221, 2015 WL 9287121, at *3 (S.D.N.Y. Feb. 5, 2015), <u>R&R adopted</u>, 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015) (awarding $650 per hour for partner with thirty-five years of experience); <u>Rozell</u>, 576 F. Supp. 2d at 546 (awarding $600 per hour for partners and counsel in employment discrimination case). <u>See also</u> <u>De Curtis v. Upward Bound Int'l, Inc.</u>, No. 09-CV-5378, 2011 WL 4549412, at *8 (S.D.N.Y. Sept. 27, 2011) ("Consistent precedent in the Southern District reveals that rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600 . . . with average awards increasing over time.") (internal quotation marks, citation, and alterations omitted).

III. <u>Hours Expended</u>

Excluding the hours expended by outside counsel Anderson Kill P.C., NSB seeks $574,715.00 for 1,503.2 hours of total attorney and paralegal time for its work between 2014 and 2017.[3] (Supp. Fee Mot. at 3.) Defendants object to the hours expended on several grounds, including that certain hours were redundant, excessive, and unnecessary. (Def.'s Opp. at 9-13.) They further object to the hours related to enforcement of the Judgment. (Def.'s Opp. at 12.)

---

[3] The Court will address the work performed by Anderson Kill P.C. in a separate section.

A.  Redundant Hours

Defendant argues that NSB "assigned an inordinate number of attorneys to litigate the action" and assigned multiple attorneys and paralegals, as well as outside counsel, to certain tasks.  (Def.'s Opp. at 9-10.)  As an example, Defendant points out that three NSB attorneys--two partners (Hoffmann and Brustin) and one associate (Torti)--attended the Second Circuit oral argument.  (Def.'s Opp. at 10.)  Further, it argues that while NSB was working on various enforcement issues, as well as drafting the appellate brief, the attorneys and paralegals were duplicating work.  (Langone Decl., Docket Entry 306, ¶¶ 14, 16.)  The Court disagrees.  The fact that more than one attorney worked on the same project does not necessarily establish that work was duplicated.  It is common for several attorneys and paralegals to collaborate on the same project, especially, for example, drafting an appellate brief in a case of this size and complexity.

Regarding the time billed for the Second Circuit oral argument, the Court declines to deduct the 2.5 hours billed by Brustin and Torti.  (Langone Decl. ¶ 12.)  It is not unusual to have more than one attorney attend significant court appearances such as oral argument, and the Court finds that having three attorneys present is not excessive.  See N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1146 (2d Cir. 1983) ("Under section 1988, prevailing parties are not barred as

a matter of law from receiving fees for sending a second attorney to depositions or an extra lawyer into court to observe and assist.").

Additionally, Defendant contends that the Court should "reduce the claim by any fees unnecessarily assigned to senior staff which could have been performed by a more junior attorney or paralegal." (Def.'s Opp. at 10.) Specifically, it argues that one NSB associate—-Torti—-performed tasks that could have been assigned to a paralegal, such as "cite-checking cases, compiling prior briefing, preparing exhibits, making phone calls, speaking with printers on preparing appendix, and editing documents." (Langone Decl. ¶ 17.) The Court does not share Defendant's concern in this regard. Some of the tasks listed are ones that require the attention of an attorney, and, in light of the fact that Torti was a junior associate, the time spent on these activities was not unreasonable. In the absence of other specific examples, the Court declines to reduce the fee award on this basis.

Finally, Defendant argues that NSB has not offered any justification for the hours requested for outside lawyers Goldberg and Friedman. (Def.'s Opp. at 10.) For example, Defendant points out that while Friedman was working on Plaintiffs' reply brief, attorneys from NSB spent an excessive number of hours working on the same reply brief. (Def.'s Opp. at 10.) The Court is not convinced that a reduction is warranted for this reason. Because

Friedman was collaborating with NSB attorneys on this project, it
is not surprising that both Friedman and NSB attorneys were working
on the brief at the same time.

B.  Excessive Hours

Defendant argues that the 136 hours spent on oral
argument preparation was excessive.[4]  (Def.'s Opp. at 11; Langone
Decl. ¶ 11.)  According to Defendant's analysis, Hoffmann spent
87.3 hours preparing for oral argument, including moot sessions,
while the remaining hours were split between Torti, Brustin,
Lampert, Neufeld, and outside attorney Goldberg.  (Coded Fee Chart,
Docket Entry 307-1, at 1.)  Further, the time records show that
Hoffmann, who argued the appeal, spent approximately three weeks
preparing and received minor assistance from the other attorneys.
Defendant concludes that "spending that much time in preparation
for what was scheduled to be an eight-minute oral argument was
clearly excessive."  (Langone Decl. ¶ 11.)  The Court disagrees.
Defendant cannot have it both ways; it chose to file an oversize

---

[4] Defendant reviewed NSB's time entries and assigned an activity
code to each entry in order to determine the number of hours
spent by NSB and outside attorneys on particular tasks.  (See
Langone Decl. ¶¶ 8-9.)  They organized the time entries into
thirteen categories, including tasks such as meetings, various
motions, and preparation for oral argument on the appeal.  (See
Langone Decl. ¶ 9.)  While the Court has concerns about the
accuracy of Defendant's analysis, see infra n.6, for the purpose
of responding to Defendant's arguments, the Court will assume
that the figures calculated by Defendant are accurate unless
otherwise stated.

brief with eight separate grounds for the appeal, and as a result, NSB had to expend the time necessary to prepare for an oral argument that might involve any combination of those issues. In light of the complexity of this case and the breadth of the appeal, the Court does not find these hours to be unreasonable.

Defendant also contends that the 107 hours sought in connection with work on the fee applications should be reduced.[5] (Def.'s Opp. at 11; Langone Decl. ¶¶ 20-22.) Defendant does not dispute that NSB is entitled to attorneys' fees for this work; rather, it argues that the request is unreasonable because "NSB assigned a senior associate, a junior associate, and two paralegals to these tasks" and also engaged Friedman, an outside attorney, to assist in the fee litigation. (Langone Decl. ¶ 20.) Defendant also suggests that the hours expended "strongly suggests that its billing was not contemporaneous with the work that was done." (Langone Decl. ¶ 21.) The Court disagrees. In connection with the attorneys' fees motions, NSB had to compile and review its time entries for the relevant periods, draft affidavits and respond to Defendant's objections to the requested fees. Unsurprisingly, Defendant made a variety of objections to the initial fee application, which led to additional work for NSB. (<u>See</u> Def.'s

_____

[5] Defendant represents that this figure includes work on the reply brief in further support of NSB's initial fee application and preparing the supplemental fee application under consideration here. (Def.'s Opp. at 11.)

2015 Opp., Docket Entry 241.)   For these reasons, the Court declines to reduce the hours spent on the attorneys' fee applications.

C.   Hours Spent on NSB Retainer

Defendant argues that the eight hours spent on NSB's retainer should be disallowed because this time is non-compensable administrative work.  (Langone Decl. ¶ 19.)  The Court disagrees. A retainer agreement is a binding and enforceable contract, and accordingly, drafting or editing such an agreement constitutes legal work.   See Revson v. Cinque & Cinque, P.C., 221 F.3d 59, 67 (2d Cir. 2000) ("Fee arrangements between an attorney and client are scrutinized with particular care, and an attorney who has drafted a retainer agreement ordinarily has the burden of showing that the contract was fair, reasonable, and fully known and understood by the client.").  Moreover, Defendant fails to point to any authority to support this reduction.  There is no basis to exclude these hours from the fee award.

D.   Hours Spent on Enforcement Efforts

As detailed above, this case involved complex enforcement issues and substantial post-judgment motion practice. (See supra 5-8.)  Defendant argues that the Court should not award fees for the hours expended on enforcing the Judgment, including the hours related to the contempt proceedings, because these enforcement efforts were directed at the County, not the Estate.

(Def.'s Opp. at 12-13.) Defendant points out that the Court granted Plaintiffs leave to file a separate motion for attorneys' fees in connection with the contempt proceedings, which further supports the notion that fees should be separately awarded against the County for those hours. (Def.'s Opp. at 12-13.) As such, Defendant requests that the Court "reserve ruling on the fees relating to the indemnity issue until a later time to allow Nassau County to respond." (Def.'s Opp. at 13.)

According to Defendant's analysis, NSB spent 309 hours on these efforts. (Langone Decl. ¶ 14.) It is not clear what tasks are included in this estimate.[6] Nonetheless, based on the Court's review of the time records, it appears that Defendant is requesting that the Court strike the hours spent on the following tasks: (1) Plaintiffs' opposition to Defendant's motion to stay enforcement of the Judgment filed in 2015, (2) Plaintiffs' Order to Show Cause for entry of judgment directly against the County, and (3) Plaintiffs' contempt motion, which sought to remove the stay of enforcement of the Judgment. (See Coded Time Entries at 9-12.)

---

[6] The estimate is also inaccurate. For example, Defendant's analysis shows that Hoffmann spent 99.5 hours on the contempt motion and related efforts. (Coded Fee Chart at 1.) However, Hoffmann's time entries for this activity code total approximately 60.9 hours. (Coded Time Entries, Docket Entry 306-2, at 9.)

Plaintiffs respond that the Court should award fees for this work because: (1) "the contempt motion was brought as part of the present action to enforce the judgment against the [E]state," and (2) "because Nassau County will be paying any judgment against Volpe's estate--including attorneys' fees--there is no meaningful difference in interest between the parties with respect to Plaintiffs' contempt motion." (Pls.' Reply, Docket Entry 311, at 5, n.2 (emphasis omitted).)

The Court has been unable to locate cases involving similar facts, and the parties have cited none. However, for the reasons that follow, the Court will award attorneys' fees for the hours spent enforcing the Judgment, including the proceedings primarily involving the County. First, under Section 1988, Plaintiffs "'may recover fees in connection with enforcement of a judgment.'" De Curtis v. Upward Bound Int'l Inc., No. 09-CV-5378, 2015 WL 5254767, at *2 (S.D.N.Y. Aug. 28, 2015) (quoting Diaz v. Paragon Motors of Woodside, Inc., No. 03-CV-6466, 2008 WL 2004001, at *7 (E.D.N.Y. May 7, 2008)); see also Hines v. City of Albany, No. 06-CV-1517, 2015 WL 12828107, at * 1 (N.D.N.Y. May 13, 2015). Further, the Court may award fees incurred in connection with a contempt motion under section 1988.[7] See Joel, 1997 WL 543091, at

_____

[7] Defendant's argument that the Court should address the fees incurred during the enforcement proceedings at a later time is unavailing. At the hearing on the contempt motion, the Court granted Plaintiffs leave to file a motion for attorneys' fees

*2 (awarding attorneys' fees pursuant to Section 1988 for contempt motion regarding a settlement agreement). Second, because the County is indemnifying the Estate for the full amount of the Judgment, including attorneys' fees, the enforcement proceedings against the County were necessary to enforce the Judgment against the Estate. After the Judgment was entered, the County indicated that despite its prior representations, it was re-examining whether it was required to indemnify the Estate, prompting the first round of post-judgment motions and petitions. (See Estate Mot. to Stay, Docket Entry 243.) Later, after the County agreed to indemnify the Estate, Plaintiffs discovered that the County had violated a Stipulation and Consent Decree and filed the contempt motion. (See Contempt Mot., Docket Entry 295.) Having presided over this matter since its inception, including during the post-judgment proceedings, the Court finds that the work performed by NSB during this phase of the case was undoubtedly necessary to enforce the Judgment against the Estate, particularly in light of the County's intransigence. To the extent that the County's litigation strategy resulted in additional litigation and fees,

_____

incurred in connection with the contempt motion, along with the necessary documentation. (See Feb. 23, 2017 Minute Order, Docket Entry 304.) At that time, the Court was unaware that NSB requested those fees in this motion. Because the Court may properly award such fees under Section 1988, there is no reason to separately address them or further delay resolution of this matter. See Joel v. Vill. of Kiryas Joel, No. 95-CV-8378, 1997 WL 543091, at *2 (S.D.N.Y. Sept. 4, 1997).

the County will shoulder that burden.  Third, the Court sees no reason to prolong this matter to allow the County to respond to this application.  The County would likely raise similar objections to NSB's requested fee, and the County has not requested leave to file a response.  Therefore, the Court will not deduct the hours spent on enforcement proceedings.

IV.  Percentage Reduction

Nevertheless, based on the Court's review of all of NSB's time entries, the Court agrees with Defendant that there is a small amount of duplicative and excessive hours.  Therefore, the Court will exercise its discretion and reduce the requested fee by five percent, or $28,735.75, to account for those hours.  See Mary Jo C. v. Dinapoli, No. 09-CV-5635, 2014 WL 7334863, at *10 (E.D.N.Y. Dec. 18, 2014) ("In reducing the amount of attorney's fees, the court may exclude the excessive and unreasonable hours from its calculation by making an across-the-board reduction, or percentage cut, in the amount of hours.").

V.  Costs Incurred by NSB

NSB also requests $21,410.01 in costs for copying and duplication, printing, transcripts, and research expenses.  (Supp. Fee Mot. at 3-4; Brustin Decl., Docket Entry 300-2, ¶¶ 7-18.) Defendant has not objected to these expenses, and the Court finds them to be reasonable.  Accordingly, the Court will award NSB $21,410.01 in costs.

VI.  Fees and Costs Incurred by Anderson Kill P.C.

Defendant objects to the $40,692.60 billed to NSB by Anderson Kill P.C. ("Anderson Kill") in connection with Anderson Kill's work during the enforcement proceedings.  (Def.'s Opp. at 20-21.)  Defendant argues that NSB has not justified the hourly rates sought by Anderson Kill or provided sufficient background information about several Anderson Kill attorneys.  (Def.'s Opp. at 20.)  Plaintiffs respond that because Anderson Kill "billed at its customary rates . . . these rates are presumptively reasonable."  (Pls.' Reply at 4.)

When determining reasonable hourly rates, the Court looks to "market rates 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'"  Gierlinger, 160 F.3d at 882 (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11, 104 S. Ct. 1541, 1547, 79 L. Ed. 2d 891 (1984)).  For work performed in 2015, NSB seeks the following rates for Anderson Kill attorneys: (1) $695.00 for Partner Jeffrey Glen; (2) $725.00 for Partner David Graff; (3) $415.00 for Associate Rachael Kierych; (4) $295.00 for Associate Christopher Paolino; (5) $295.00 for Associate Ethan W. Middlebrooks; and (6) $495.00 for Associate Christopher Ayers.  (Graff Decl., Docket Entry 300-8, at 11.)  For work performed in 2016, NSB seeks the following rates for Anderson Kill attorneys: (1) $695.00 for Partner Jeffrey Glen; (2) $750.00 for Partner David

Graff; (3) $450.00 for Associate Rachael Kierych; (4) $295.00 for Associate Christopher Paolino; (5) $295.00 for Associate Ethan W. Middlebrooks; (6) $520.00 for Associate Christopher Ayers; and (7) $245.00 for Law Clerk Alexander Haberman. (Graff Decl. at 11.) According to Anderson Kill, "[t]hese are 'market rates'-- rates that lawyers at Anderson Kill P.C. regularly charge to paying clients." (Graff Decl. ¶ 12.) They represent that these rates are "regularly paid by our clients and are equivalent to or less than the going market rate for attorneys practicing in New York City." (Graff Decl. ¶ 12.) Based on these representations, and the fact that Anderson Kill is located in the Southern District of New York, it appears that NSB is requesting that the Court award hourly rates prevailing in the Southern District for the work performed by Anderson Kill.

"[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule." Simmons v. N.Y. City Transit Auth., 575 F.3d 170, 175-76 (2d Cir. 2009). To overcome the presumption, "a litigant must persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." Id. at 175. The Second Circuit explained in Simmons that "[t]he party seeking the award must make a particularized showing, not only that the selection of out-of-

24

district counsel was predicated on experience-based, objective factors, but also of the likelihood that use of in-district counsel would produce a substantially inferior result." Id. at 176. "Among the objective factors that may be pertinent is counsel's special expertise in litigating the particular type of case, if the case is of such nature as to benefit from special expertise." Id. at 175-76.

The Court finds that NSB has failed to demonstrate that Anderson Kill should be compensated at Southern District rates. Although David Graff ("Graff"), a partner at Anderson Kill, has expertise in enforcing judgments, NSB and Anderson Kill have not shown that retaining Anderson Kill led to a substantially better result or that retaining counsel in this district would have led to diminished success. The Court recognizes that Anderson Kill's work was necessary and that Anderson Kill assisted in achieving a favorable result for Plaintiffs. However, the Court finds that awarding hourly rates prevailing in this district is appropriate here.

In this district, courts typically award hourly rates of $300.00 to $450.00 for partners, $200.00 to $325.00 for senior and mid-level associates and $100.00 to $200.00 for junior associates. Dinapoli, 2014 WL 7334863, at *5; Small v. N.Y.C. Transit Auth., No. 03-CV-2139, 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014); Struthers v. City of N.Y., No. 12-CV-0242, 2013 WL 5407221, at *7

(E.D.N.Y. Sept. 25, 2013). Despite the fact that the attorneys' qualifications and experience are important considerations, NSB and Anderson Kill have only provided information on Graff's experience. (See Graff Decl. ¶¶ 1-6; Graff Decl. Ex. A.) The Court has not been provided with any information about the six other attorneys involved in the case.

However, the Court has located a recent decision from the Southern District in which Anderson Kill was awarded attorneys' fees in connection with a commercial dispute. See Euro Pac. Capital, Inc. v. U.S. China Mining Grp., Inc., No. 15-CV-4636, 2017 WL 89023 (S.D.N.Y. Dec. 15, 2016), R&R adopted, Euro Pac. Capital, Inc. v. U.S. China Mining Grp., Inc., 15-CV-4636, Docket Entry 50 (S.D.N.Y. Jan. 10, 2017). In that case, Anderson Kill requested and was awarded the following hourly rates: (1) $375.00 for David Graff; (2) $250.00 for Associate Christopher Ayers; (3) $250.00 for Associate Christopher Paolino; and (4) $250.00 for Associate Rachael Kierych. Euro Pacific, 2017 WL 89023, at *6. The Court finds this case to be instructive.[8]  While this is a civil rights matter, Anderson Kill's work focused exclusively on enforcing the Judgment, and the work performed is similar to what

_____

[8] Although these rates were awarded based on the prevailing rates in the Southern District, they also fall within the permissible range of hourly rates in this district.

would be required to enforce any judgment—whether it arose out of a commercial dispute or otherwise.

Therefore, the Court finds that the following rates are reasonable: (1) $375.00 for Partner Jeffrey Glen; (2) $375.00 for Partner David Graff; (3) $250.00 for Associate Rachael Kierych; (4) $250.00 for Associate Christopher Paolino; (5) $250.00 for Associate Ethan W. Middlebrooks; and (6) $250.00 for Associate Christopher Ayers. The Court further finds that $125.00 is a reasonable hourly rate for Anderson Kill's law clerk. See D'Annunzio v. Ayken, Inc., No. 11-CV-3303, 2015 WL 5308094, at *5 (E.D.N.Y. Sept. 10, 2015) (awarding $125 for law clerk). Applying these hourly rates, NSB is awarded the following for work performed by Anderson Kill[9]:

| NAME | HOURLY RATE | HOURS WORKED | TOTAL |
|------|-------------|--------------|-------|
| Jeffrey Glen | $375.00 | 3.00 | $1,125.00 |
| David Graff | $375.00 | 16.6 | $6,225.00 |
| Rachael Kierych | $250.00 | 4.2 | $1,050.00 |
| Christopher Paolino | $250.00 | 10.78 | $2,695.00 |
| Ethan W. Middlebrooks | $250.00 | 44.6 | $11,150.00 |
| Christopher Ayers | $250.00 | 15.9 | $3,975.00 |

---

[9] Defendant has not objected to the hours expended by Anderson Kill. Based on the Court's review of the time entries, there is no basis for a reduction. As a result, the Court will multiply the hours requested by the reduced hourly rates to compute the final award. (See Graff Decl. at 11.)

| | | | |
|---|---|---|---|
| Alexander Haberman | $125.00 | 1.00 | $125.00 |
| | | **TOTAL FEES:** | **$26,345.00** |

Because there has been no objection to Anderson Kill's request for legal research costs, the Court awards an additional $396.53 in costs.[10]  (<u>See</u> Graff Decl. at 11.)  Therefore, the total award for Anderson Kill's work is $26,741.53.

[BOTTOM OF PAGE INTENTIONALLY LEFT BLANK]

---

[10] Anderson Kill provided a breakdown of the research costs to support this request.  (<u>See</u> Graff Decl. at 21.)

<u>CONCLUSION</u>

For the foregoing reasons, NSB's supplemental motion for attorneys' fees (Docket Entry 300) is GRANTED IN PART and DENIED IN PART.  The Court awards attorney fees in the amount of $572,324.25[11] plus $21,806.54[12] in costs for a total of $594,130.79 in attorney fees and costs.  The Clerk of the Court is directed to enter judgment for $594,130.79 in attorneys' fees and costs.  Post-judgment interest, calculated pursuant to 28 U.S.C. § 1961(a), shall run on the award of attorney fees and costs from the date of this Memorandum & Order until the date the fees and costs are paid.

SO ORDERED.

/s/ JOANNA SEYBERT____   _
Joanna Seybert, U.S.D.J.

DATED:     August  28  , 2017
           Central Islip, New York

---

[11] This includes $545,979.25 for NSB's work and $26,345.00 for Anderson Kill's work.

[12] This includes $21,410.01 in costs incurred by NSB and $396.53 incurred by Anderson Kill.